**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY COMPANY** | § § § § | |
| *Plaintiff,* | § § § | |
| **v.** | § § § | **CAUSE NO. 4:08-cv-00021** |
| **ACADEMY DEVELOPMENT, INC., CHELSEA HARBOUR, LTD., LEGEND CLASSIC HOMES, LTD., AND LEGEND HOME CORPORATION** | § § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING BRIEF ON THE DUTY TO DEFEND

Lee H. Shidlofsky
Texas Bar No. 24002937
Southern District No. 22026
Melissa L. Kelly
Texas Bar No. 24055766
Southern District No. 685892

VISSER SHIDLOFSKY LLP
7200 N. Mopac Expressway
Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 (fax)
Lee@vsfirm.com

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ..............................................................1

II.     FACTUAL BACKGROUND ...................................................................................2

III.    STATEMENT OF ISSUES ....................................................................................4

IV.     SUMMARY JUDGMENT EVIDENCE .......................................................................4

V.      SUMMARY OF THE ARGUMENT ..........................................................................4

VI.     STANDARD OF REVIEW .....................................................................................6

VII.    ARGUMENTS AND AUTHORITIES .......................................................................7

    A.  Mid-Continent's Duty to Defend the Underlying Lawsuit Continued beyond the
        Filing of the Ninth Amended Petition. ...................................................................7

        1.  Texas Law on the Duty to Defend and Contract Interpretation Principles ............7

            a.  Texas Law on the Duty to Defend ...............................................................7

            b.  Texas Law on Contract Interpretation ........................................................9

        2.  The Ninth, Tenth, and Eleventh Amended Petitions Contain Allegations of
            Potentially Covered "Property Damage" and thus Trigger a Duty to Defend. ......10

    B.  Mid-Continent owes a Complete Defense under each of the Consecutively Triggered
        Policies. ........................................................................................................14

        1.  Damage within the Applicable Policy Periods .....................................................14

        2.  Allocation of Defense Costs ...........................................................................16

VIII.   CONCLUSION.................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Admiral Insurance Co. v. Little Big Inch Pipeline Co.*,
    523 F. Supp. 2d 524 (W.D. Tex. 2007)..................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................6

*Balandran v. Safeco Insurance Co.*,
    972 S.W.2d 738 (Tex. 1998) .....................................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 327 (1986) ..........................................................................................6

*CNA Lloyd's of Texas v. St. Paul Insurance Co.*,
    902 S.W.2d 657 (Tex. App.–Austin 1995, writ dism'd).........................................17

*Don's Building Supply, Inc. v. OneBeacon Insurance Co.*,
    267 S.W.3d 20 (Tex. 2008) .....................................................................................15

*Gehan Homes, Ltd. v. Employers Mutual Casualty Co.*,
    146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied) ........................................16

*Guaranty National Insurance Co. v. Azrock*,
    211 F.3d 239 (5th Cir. 2000)...................................................................................19

*GuideOne Elite Insurance Co. v. Fielder Road Baptist Church*,
    197 S.W.3d 305 (Tex. 2006) .....................................................................................7

*Hartford Casualty Co. v. Cruse*,
    938 F.2d 601 (5th Cir. 1991)...................................................................................12

*Heyden Newport Chemical Corp. v. Southern General Insurance Co.*,
    387 S.W.2d 22 (Tex. 1965) .......................................................................................8

*Houston Petroleum Co. v. Highlands Insurance Co.*,
    830 S.W.2d 153 (Tex. App.—Houston [1st Dist.] 1990, writ denied) .....................9

*Indian Harbor Insurance Co. v. Valley Forge Insurance Group*,
    525 F.3d 359 (5th Cir. 2008)...................................................................................18

*Keene Corp. v. Insurance Co. of North America*,
    667 F.2d 1034 (D.C. Cir. 1981).........................................................................16, 17

*King v. Dallas Fire Insurance Co.*,
    85 S.W.3d 185 (Tex. 2002) ................................................................................................. 8

*LaFarge Corp. v. Hartford Casualty. Insurance Co.*,
    61 F.3d 389 (5th Cir. 1995) ............................................................................................... 5

*Lennar Corp. v. Great American Insurance Co.*,
    200 S.W.3d 651, 682 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ........................... 19

*Lubbock County Hospital District v. National Union Fire Insurance Co.*,
    143 F.3d 239 (5th Cir. 1998) ............................................................................................. 9

*Maryland Casualty Co. v. South Texas Medical Clinics*,
    2008 WL 98375 (Tex. App.—Corpus Christi 2008, pet. denied) ........................................... 18

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................................... 6

*Mid-Continent Casualty Co. v. JHP Development, Inc.*,
    2009 WL 189886, (5th Cir. 2009) .................................................................................. 7, 8

*Nat'l Union Fire Ins. Co. v. Crocker*,
    246 S.W.3d 603 (Tex. 2008) ............................................................................................ 12

*National Union Fire Insurance Co. v. CBI Industries*,
    907 S.W.2d 517 (Tex. 1995). ........................................................................................... 9

*National Union Fire Insurance Co. v. Merchants Fast Motor Lines, Inc.*,
    939 S.W.2d 139 (Tex. 1997) ............................................................................................. 8

*Nautilus Insurance Co. v. ABN-AMRO Mortgage Group, Inc.*,
    2006 WL 3545034 (S.D. Tex. Dec. 8, 2006) ...................................................................... 12

*North American Specialty Insurance Co. v. Royal Surplus Lines Insurance Co.*,
    541 F.3d 552 (5th Cir. 2008) ........................................................................................... 18

*Northfield Insurance Co. v. Loving Home Care, Inc.*,
    363 F.3d 523 (5th Cir. 2004) ......................................................................................... 7, 8

*Physicians Insurance Exchange v. Garcia*,
    876 S.W.2d 842 (Tex. 1994) ...................................................................................... 16, 17

*RLI Insurance Co. v. Philadelphia Indemnity Insurance Co.*,
    421 F. Supp. 2d 956 (N.D. Tex. 2006) .............................................................................. 19

*St. Paul Fire & Marine Insurance Co. v. Green Tree Financial Corp.*,
    249 F.3d 389 (5th Cir. 2001) ............................................................................................ 9

*State Farm Fire & Casualty. Co. v. Reed*,
   873 S.W.2d 698, 699 (Tex. 1993) ........................................................................... 9

*State Farm General Insurance Co. v. White*,
   955 S.W.2d 474 (Tex. App.—Austin 1997, no writ) ............................................... 8

*State Farm Lloyds v. Kessler*,
   932 S.W.2d 732 (Tex. App.—Fort Worth 1996, writ denied) ................................. 8

*Texas Property & Casualty Insurance Guaranty Ass'n v. Southwest Aggregates, Inc.*,
   982 S.W.2d 600 (Tex. App.—Austin 1998, no pet.) ........................................ 17, 18

*Thos. S. Byrne, Ltd. v. Trinity Universal Insurance Co.*,
   2008 WL 5095161 (Tex. App.—Dallas Dec. 4, 2008, no pet. h.) .................... 15, 16

*Trinity Universal Insurance Co. v. Cowan*,
   945 S.W.2d 819 (Tex. 1997) .................................................................................... 8

*Union Ins. Co. v. Don's Building Supply, Inc.*,
   266 S.W.3d 592 (Tex. App.—Dallas 2008, pet. filed) ........................................... 16

*Zurich American Insurance Co. v. Nokia, Inc.*,
   268 S.W.3d 487 (Tex. 2008) .............................................................................. 7, 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY** | § | |
| **COMPANY** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:08-cv-00021** |
| | § | |
| **ACADEMY DEVELOPMENT, INC.,** | § | |
| **CHELSEA HARBOUR, LTD., LEGEND** | § | |
| **CLASSIC HOMES, LTD., AND** | § | |
| **LEGEND HOME CORPORATION** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING BRIEF ON THE DUTY TO DEFEND**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendants, Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation (collectively, "Academy"), file this Motion for Partial Summary Judgment and Supporting Brief on the Duty to Defend and would respectfully show the following:

**I.
NATURE AND STAGE OF PROCEEDINGS**

On January 3, 2008, Mid-Continent Casualty Company ("Mid-Continent") instituted this declaratory judgment action that seeks a ruling that it does not have a duty to defend or indemnify Academy against allegations asserted against it in Cause No. 05-CV-142846; *Linda Budiman, et al. v. Legend Classic Homes, Ltd., et al.*; in the 268th Judicial District Court of Fort

Bend County, Texas (the "Underlying Lawsuit").[1] Academy filed a counterclaim that seeks a ruling that Mid-Continent has a duty to defend the Underlying Lawsuit and that, in failing to provide a defense, Mid-Continent breached its contract and violated the Prompt Payment of Claims Act, codified at Article 542.051 *et seq.* of the Texas Insurance Code (f/k/a Article 21.55). This is a partial summary judgment because the parties, in order to streamline the process, have agreed to table certain issues for consideration following the Court's ruling on the two key legal issues.[2]

## II.
## FACTUAL BACKGROUND

The following facts are undisputed and establish Academy's claims against Mid-Continent:

1.     Legend Classic Homes, Ltd. is a named insured under five consecutive Commercial General Liability insurance policies issued by Mid-Continent and effective from August 1, 2000 through August 1, 2005. Academy Development, Inc., Chelsea Harbour, Ltd., and Legend Home Corporation are listed as additional named insureds to these policies via endorsement.

2.     The Mid-Continent policies, which were filed as **Joint Exhibits 13–17**, are detailed as follows:

---

[1] Mid-Continent's First Amended Complaint (Dkt. 15) sought a declaration on its duty to indemnify. The Underlying Lawsuit was tried in April 2008 and the jury's verdict was in favor of Academy on all issues. Because of various post-trial motions, which ultimately were decided in favor of Academy, the appellate deadline has been extended until April 9, 2009. Thus, at least for now and for purposes of this motion, the duty to indemnify is not at issue.

[2] The Parties have agreed to table the issue as to the amount of reasonable and necessary attorneys' fees incurred in defending the Underlying Lawsuit. In addition, the Parties have agreed to table the amount of any penalty owed under the "Prompt Payment of Claims" Act until after the Court first rules on: (i) whether a duty to defend was owed after filing of the Ninth Amended Petition; and (ii) how the various deductibles in the multiple policies should be applied to the claims asserted in the Underlying Lawsuit. *See* **Joint Exhibit 18.**

| Policy Effective Dates | Policy Number | Deductible |
|---|---|---|
| August 1, 2000 through August 1, 2001 | 04-GL-000037547 | $1,000 per claim[3] |
| August 1, 2001 through August 1, 2002 | 04-GL-000060196 | $5,000 per claim[4] |
| August 1, 2002 through August 1, 2003 | 04-GL-000088658 | $5,000 per claim[5] |
| August 1, 2003 through August 1, 2004 | 04-GL-000123869 | $50,000 per occurrence[6] |
| August 1, 2004 through August 1, 2005 | 04-GL-000557144 | $100,000 per occurrence[7] |

3.     The Original Petition in the Underlying Lawsuit was tendered to Mid-Continent by Academy on December 19, 2005. *See* **Joint Exhibit 18 at ¶2**.

4.     In the Underlying Lawsuit, the plaintiffs sought damages from Academy for property damage and resulting economic losses allegedly sustained by them as a result of Academy's alleged negligence with regard to the construction, repair and maintenance of lakes adjacent to the Plaintiffs' homes. *See* **Joint Exhibits 1–12**.

5.     Mid-Continent does not dispute that it owed a duty to defend from the tender of the Original Petition on December 19, 2005 up through the filing of the Ninth Amended Petition on July 24, 2007. *See* **Joint Exhibit 18 at ¶2**.

---

[3] The deductible under this policy is written on a "per claim" basis and *does not* apply to defense costs. **Joint Exhibit 13 at 00005**.

[4] The deductible under this policy is written on a "per claim" basis and *does not* apply to defense costs. **Joint Exhibit 14 at 00006**.

[5] The deductible under this policy is written on a "per claim" basis and *does* include defense costs through the definition of Allocated Loss Expense. **Joint Exhibit 15 at 00005**.

[6] The deductible under this policy is written on a "per occurrence" basis and *does* include defense costs through the definition of Allocated Loss Expense. **Joint Exhibit 16 at 00007**.

[7] The deductible under this policy is written on a "per occurrence" basis and *does* include defense costs through the definition of Allocated Loss Expense. **Joint Exhibit 17 at 00007 & 00009**.

---

## III.
## STATEMENT OF ISSUES

Academy seeks a ruling as a matter of law on the following issues:

1.      Mid-Continent's duty to defend the Underlying Lawsuit continued beyond the filing of the Ninth Amended Petition; and

2.      Mid-Continent owes Academy a complete defense under each of the consecutively triggered policies and Academy is entitled to select which policy provides the complete defense.

3.      Once Academy selects which policy provides a complete defense, Academy only is required to pay the applicable deductible under that single policy.

## IV.
## SUMMARY JUDGMENT EVIDENCE

All of the summary judgment evidence has been filed by the parties as Joint Exhibits. The Joint Exhibits consist of: (i) the underlying pleadings (**Joint Exhibits 1–12**); (ii) the relevant insurance policies (**Joint Exhibits 13–17**); and (iii) stipulations (**Joint Exhibit 18**).

## V.
## SUMMARY OF THE ARGUMENT

This insurance coverage dispute centers on three main issues.

The first issue is whether Mid-Continent owed a duty to defend under the Ninth, Tenth, and Eleventh Amended Petitions in the Underlying Lawsuit. Mid-Continent contends that the removal of any specific allegations of damages to the homes removes any obligation on its part to defend. Under the "eight corners" rule, however, Mid-Continent's contention that its duty to defend ceased upon the filing of the Ninth Amended Petition in the Underlying Lawsuit cannot withstand scrutiny. The Ninth, Tenth and Eleventh Amended Petitions in the Underlying Lawsuit

all contain allegations that seek "damages because of . . . 'property damage' to which this insurance applies" pursuant to the terms of the insuring agreement within the Mid-Continent policies. More specifically, the damages sought by the underlying plaintiffs for repairs and diminution in value to their homes are consequential economic damages that flow directly from physical injury to tangible property (i.e., the leaking lakes). Accordingly, the allegations in the Ninth, Tenth, and Eleventh Amended Petitions trigger a potential for coverage and thus a duty to defend.

The second issue centers on whether Mid-Continent is entitled to prorate its defense obligation among the consecutively triggered policies. Mid-Continent, in contravention of Texas law, has taken the position that the defense costs incurred in the Underlying Lawsuit should be allocated among the consecutively triggered policies either on a pro-rata basis based on the number of homes sold during each policy period or on an equal basis among the consecutively triggered policies. Academy, on the other hand, contends that Texas law provides that each consecutively triggered policy owes a complete defense and that Academy is entitled to choose a single policy under which the complete defense should be provided.

The third issue, which deals with the application of deductibles, is dependent on the outcome of the second issue. If the Court adopts Mid-Continent's pro-rata allocation method, Mid-Continent contends that it can charge the applicable deductible under each triggered policy. Under Mid-Continent's approach, Mid-Continent can charge multiple deductibles and thus greatly reduce its defense obligation.[8] If the Court adopts Academy's joint and several allocation

---

[8] Even if this Court were to agree that a pro-rata allocation applies, Academy disagrees with Mid-Continent's contention that it can charge multiple deductibles. *See, e.g.*, *LaFarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 401 (5th Cir. 1995) (pro-rating the deductible when applying a pro-rata method of allocation). Additionally, Mid-Continent essentially treats the underlying lawsuit as if it were seventy separate lawsuits. In doing so, however, Mid-

method, Academy contends that it can pick any of the consecutively triggered policies to provide a complete defense. Under Academy's approach, only the deductible under the single policy that provides the complete defense would be applied according to its terms.

## VI.
## STANDARD OF REVIEW

"The Federal Rules of Civil Procedure have . . . authorized motions for summary judgment upon proper showing of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

To avoid summary judgment, the burden placed upon the respondent to a motion for summary judgment is to produce evidence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The substantive law determines which facts are "material" and a material fact is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that an issue of material fact is genuine, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric,* 475 U.S. at 586–87.

---

Continent ignores the fact that all of the underlying plaintiffs were part of a single lawsuit.

**VII.**
**ARGUMENTS AND AUTHORITIES**

**A.    Mid-Continent's Duty to Defend the Underlying Lawsuit Continued beyond the Filing of the Ninth Amended Petition.**

Mid-Continent contends that its duty to defend ceased upon the filing of the Ninth Amended Petition in the Underlying Lawsuit because there was no allegation that the plaintiffs sought damages for covered "property damage" as that term is defined in the Mid-Continent policies.[9] Mid-Continent's contentions, however, cannot withstand scrutiny when applied to the "eight corners" rule and to the well-established rules of insurance contract interpretation. A review of the following authority conclusively shows that Academy is entitled to judgment as a matter of law.

**1.    Texas Law on the Duty to Defend and Contract Interpretation Principles**

**a.    Texas Law on the Duty to Defend**

Texas courts apply the "eight corners" rule to determine whether an insurer has a duty to defend its insured. *See Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 2009 WL 189886, *4 (5th Cir. 2009); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–35 (5th Cir. 2004); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). In undertaking the "eight corners" analysis, a court must compare the allegations in the live pleading to the insurance

---

[9] Academy understands that Mid-Continent does not intend to invoke any exclusions or other defenses to coverage and, instead, that Mid-Continent relies solely on the definition of "property damage" in denying a duty to defend following the filing of the Ninth Amended Petition. Based on this understanding, and since the burden of proof would fall on Mid-Continent with respect to the application of any exclusions or other defenses, this motion focuses on the "property damage" requirement. Any other defenses raised by Mid-Continent will be handled by responsive briefing. Even so, it is Academy's position that the Underlying Lawsuit contains allegations of "property damage" caused by an "occurrence" during the relevant policy periods and that none of the exclusions in the Mid-Continent policies negate the duty to defend. It also is Academy's position that no other defenses apply to defeat the duty to defend.

---

policy without regard to the truth, falsity, or veracity of the allegations. *See JHP Dev.*, 2009 WL 189886, at *4; *Northfield*, 363 F.3d at 528; *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191 (Tex. 2002). Thus, only two documents are relevant to the duty to defend analysis: (i) the insurance policy; and (ii) the pleadings from the underlying lawsuit. *See King*, 85 S.W.3d at 187; *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Facts ascertained before suit, developed in the process of litigation, or determined by the ultimate outcome of the suit do not affect the duty to defend. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997); *Northfield*, 363 F.3d at 528. Accordingly, except in very limited circumstances, the duty to defend is a question of law. *See State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474, 475 (Tex. App.—Austin 1997, no writ); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 736 (Tex. App.—Fort Worth 1996, writ denied).

> The Supreme Court of Texas has explained the "eight corners" rule in the following way:

> Where the [complaint] does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

*Merchants*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). The above quote from the Supreme Court of Texas and the case law (both state and federal) that has followed reveals the following important contours of the duty to defend: (i) an insurer is required to defend its insured if the allegations state a potential claim for coverage under the policy; (ii) the truth or veracity of the allegations is irrelevant—all factual allegations must be taken as true; (iii) the allegations should be interpreted liberally with any reasonable doubts being resolved in favor of the duty to defend; (iv) when a petition alleges

multiple or alternative causes of action, the insurer must examine each separate allegation to determine whether it has a duty to defend. If one alternative cause of action or allegation is within the terms of the policy, the insurer has a duty to defend the entire lawsuit. *See St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.*, 249 F.3d 389, 391 (5th Cir. 2001).

### b.      Texas Law on Contract Interpretation

Insurance policies are contracts and are interpreted according to the same principles that govern contract interpretation. *See Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 740 (Tex. 1998). The primary goal of contract interpretation is to "ascertain the intent of the parties as expressed in the instrument." *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Moreover, in undertaking contract interpretation analysis, a court must read all parts of the instrument together in order to give meaning to every sentence and to avoid rendering any portion inoperative. *Id.*

"Under Texas law, the maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured." *Lubbock County Hosp. Dist. v. National Union Fire Ins. Co.*, 143 F.3d 239, 242 (5th Cir. 1998). Accordingly, if a contract of insurance is susceptible to more than one reasonable interpretation, the court must adopt the construction most favorable to the insured. *See State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993); *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Moreover, according to the Supreme Court of Texas, the insurance contract interpretation rules dictate that a court "must adopt the construction urged by the insured so long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Balandran*, 972 S.W.2d at 741.

**2.      The Ninth, Tenth, and Eleventh Amended Petitions Contain Allegations of Potentially Covered "Property Damage" and thus Trigger a Duty to Defend.**

Under the insuring agreement of the Mid-Continent policies, the insurer contracted to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." *See* **Joint Exhibit 13 at 00007**.[10] The insuring agreement applies as long as the "property damage" is caused by an "occurrence" and as long as the "property damage" occurs during the policy period. *Id.* Also under the insuring agreement of the Mid-Continent policies, the insurer "will have the right and duty to defend [the Academy] against any 'suit' seeking those damages." *Id.*

Mid-Continent does not dispute that it had a duty to defend the Underlying Lawsuit up to the filing of the Ninth Amended Petition on July 24, 2007. *See* **Joint Exhibit 18 at ¶2.** Mid-Continent contends, however, that its duty to defend the Underlying Lawsuit ceased upon the date the Ninth Amended Petition was filed "because there was no allegation that the Plaintiffs in the [Underlying] Lawsuit were seeking damages for covered 'property damage' as that term is defined in the Mid-Continent policies." PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 33) at ¶35. In particular, Mid-Continent focuses on the fact that the following allegation was removed from the prior petitions with the filing of the Ninth Amended Petition: "Plaintiffs' homes are experiencing an unreasonable amount of drywall cracks, joint separations in trim and windows, tiles breaking, mortar cracks, and windows cracking without impact." *See* **Joint Exhibit 9 at ¶34**. While Academy acknowledges that the specified allegation was removed with the filing of

---

[10] This provision is the same in all of the Mid-Continent policies. In fact, unless otherwise specified, the terms of the Mid-Continent policies are identical or any differences are immaterial to the issues before this Court. Accordingly, all references to the same policy language will be to **Joint Exhibit 13**.

the Ninth Amended Petition, Academy disputes that the removal of that single allegation defeats the duty to defend.

"Property damage" is defined by the Mid-Continent policies, in part, as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." *See* **Joint Exhibit 13 at 00019**. Accordingly, by its express terms, all that is required to satisfy the "property damage" requirement is to allege some physical injury to or loss of use of tangible property. Here, the Ninth, Tenth and Eleventh Amended Petitions contain allegations of damage to the lakes and walls of the lakes—"physical injury to tangible property." Likewise, there are numerous allegations of diminution to the underlying plaintiffs' properties as a result of the leaking lakes.

The Ninth Amended Petition in the Underlying Lawsuit, by way of example, alleges that "Defendants knew the walls of the Lakes were breaking apart and that water was leaking from the Lakes into the adjacent properties upon with Plaintiffs' homes were located." **Joint Exhibit 10 at ¶20**. The Ninth Amended Petition also contain allegations that "the Lakes leak and the wall is breaking apart," "the walls had excessive cracks and displacements," "water was escaping under and around the sloped paving, between the sloped paving, between the sloped paving and the wall, at the outfall structure . . . through cracks in the wall," and "continuous and excessive water leakage from the Lakes that flow laterally and under the Plaintiffs' homes and properties." **Joint Exhibit 10 at ¶¶ 20–22**. These are all allegations of "property damage"—physical injury to tangible property.[11] Moreover, the Ninth Amended Petition also alleges that "Plaintiffs would show that all Defendants breached the above described duties and that such acts and/or omissions

---

[11] These same allegations appear in the Tenth Amended Petition (**Joint Exhibit 11 at ¶¶20–22**) and the Eleventh Amended Petition (**Joint Exhibit 12 at ¶¶20–22**).

constitute the proximate cause of Plaintiffs' damages, including cost of repair and diminution of value to their homes." **Joint Exhibit 10 at ¶¶47.**[12]

A plain reading of the Mid-Continent policies invokes its duty to defend the Underlying Lawsuit beyond the filing of the Ninth Amended Petition. "We must give the policy's words their plain meaning, without inserting additional provisions into the contract." *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). In the Underlying Lawsuit, the Plaintiffs sought recovery for repair costs *and* diminution in value to their property. **Joint Exhibits 10–12 at ¶47.** The repair costs are directly tied to allegations of physical injury to tangible property. Moreover, while diminution in value—in and of itself—may be a purely economic loss, it nevertheless constitutes damages *because of* "property damage" when it is tied to physical injury or loss of use of tangible property.

The policies' insuring agreement states: "We will pay those sums that the insured becomes legally obligated to pay as damages *because of* . . . 'property damage.'" **Joint Exhibit 13 at 00007 (emphasis added)**. The words "because of" indicate that all that matters is that the legal liability have as its source, or arise from, physical injury to or loss of use of tangible property. *See, e.g., Nautilus Ins. Co. v. ABN-AMRO Mortgage Group, Inc.*, 2006 WL 3545034 (S.D. Tex. Dec. 8, 2006) ("The plain meaning of the [because of] provision is that all damages caused by 'property damage' are covered by the policy . . . ."); *see also Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604 (5th Cir. 1991) (holding that home owners who alleged that the insured caused property damage could recover for the resulting diminution of the house's market value).

---

[12] Likewise, this allegation appears in the Tenth Amended Petition (**Joint Exhibit 11 at ¶47**) and the Eleventh Amended Petition (**Joint Exhibit 12 at ¶47**).

Accordingly, once "property damage" has been established, the Mid-Continent policies also cover economic losses that flow because of the "property damage." As discussed above, the repair cost and diminution in value claims are directly tied to and arise from the physically injured tangible property. *See Admiral Ins. Co. v. Little Big Inch Pipeline Co.*, 523 F. Supp. 2d 524, 538-40 (W.D. Tex. 2007) (rejecting argument that diminution in value claim tied to "property damage" was a purely an economic loss). Specifically, in *Little Big Inch*, it was asserted that the insured entered onto the underlying plaintiffs' land and caused property damage to that land by destroying concrete driveways, concrete slabs and foundations. *Id.* at 538. The underlying plaintiffs also alleged that the insured left debris behind on the underlying plaintiffs' surrounding property and "caused a diminution in value to the remainder of the property." *Id.* The court found that all the foregoing were sufficient allegations of "property damage" *Id.* at 538. More specifically, the court found that the diminution in value to the land caused by adjacent property damage was itself "property damage." *Id.* Importantly, the language of the policy evaluated in *Little Big Inch* is identical to the language of the Mid-Continent policies. Further, and equally important, the facts of *Little Big Inch* are analogous to the allegations in the Ninth, Tenth and Eleventh Amended Petitions in the Underlying Lawsuit. In other words, much like the cement debris and refuse left behind on the surrounding land in *Little Big Inch*, here the "continuous and excessive water leakage from the Lakes that flow laterally and under the Plaintiffs' homes and properties" is alleged to have diminished the value of the adjacent land owned by the Underlying Plaintiffs. *See* **Joint Exhibits 10–12 at ¶¶33–34.** Moreover, as noted, the underlying plaintiffs clearly seek "repair" costs in addition to any claim for diminution in value.[13] *See* **Joint Exhibits 10–12 at ¶47.**

---

[13] The fact that the underlying plaintiffs seek "repair" costs necessarily implies—at the very least—that an allegation

In sum, the breaking apart of the walls of the lakes—including "excessive cracks and displacements"—constitutes "physical injury to tangible property" and is therefore "property damage" as defined by the Mid-Continent policies. As a result of the physical damages to the lakes, which caused water to flow laterally and under the underlying plaintiffs' homes, the underlying plaintiffs claim to have suffered diminution in value to their homes and properties. *See* **Joint Exhibits 10–12 at ¶¶ 27 & 47**. The Ninth, Tenth and Eleventh Amended Petitions in the Underlying Lawsuit, therefore, allege "damages because of . . . 'property damage' to which this insurance applies" and thus satisfy the "property damage" requirement. Consequently, the filing of the Ninth Amended Petition (and subsequent petitions) does not alter the duty to defend that Mid-Continent acknowledges it owed under the prior petitions.

**B.    Mid-Continent owes a Complete Defense under each of the Consecutively Triggered Policies.**

The allegations in the underlying pleadings trigger Mid-Continent's duty to defend under the five consecutive commercial general liability policies it issued to Academy. Pursuant to the terms of each of these policies, and well-established Texas law, Mid-Continent owes a complete defense to Academy under each of the consecutively triggered policies. Accordingly, contrary to the desires of Mid-Continent, allocation of defense costs among the triggered policies is neither mandated nor permitted under Texas law.

**1.    Damage within the Applicable Policy Periods**

The term "trigger" is used to describe whether a particular insurance policy or multiple policies are potentially on the risk for a particular claim. Recently, the Supreme Court of Texas held that the "injury-in-fact" trigger is the appropriate trigger theory to apply to "property

---

of physical damage exists independent of any "diminution in value" claim.

damage" claims under a standard CGL policy like the Mid-Continent policies at issue here. *See Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008) (addressing the appropriate trigger theory for latent "property damage"). It is undisputed that the language in the insurance policies here is identical to the language interpreted by the Supreme Court in *Don's Building Supply*. In that case, a unanimous Supreme Court held that, under this language, "property damage" occurs when actual physical damage to the property occurs—not when the damage was or could have been discovered. *Id.* at 24.

The insurer's duty to defend, therefore, depends on whether the underlying pleadings potentially allege property damage that occurred during the policy term. *See Don's Building Supply*, 267 S.W.3d at 31; *Thos. S. Byrne, Ltd. v. Trinity Universal Ins. Co.*, 2008 WL 5095161 (Tex. App.—Dallas Dec. 4, 2008, no pet. h.). The pleadings in the Underlying Lawsuit allege:

> In particular, the Defendants knew that the walls of the Lakes were breaking apart and that the water was leaking from the Lakes into the adjacent properties upon which Plaintiffs' homes were located. Previously in 2002, Defendants Academy and Chelsea Harbour had filed a lawsuit in Harris County against the engineers and companies who constructed the original Lakes. . . . In the lawsuit and subsequent pleadings, Defendants alleged that "The Lakes leak and the wall is breaking apart" . . .

*See, e.g.*, **Joint Exhibit 10 at ¶20**.[14] The Underlying Lawsuit also alleges, in part, that Academy knew about the issues *prior* to selling the homes. *Id.* at ¶20. The homes in question were sold between May 15, 2002 and June 29, 2005. *See* **Joint Exhibit 18 at ¶5 (including attached chart)**. Additionally, the pleadings allege "that the condition of the Lakes has in the past, and continues, to cause damage . . . " (**Joint Exhibit 10 at ¶27**)[15] and references letters sent to the

---

[14] The same or similar allegation exists in all of the pleadings in the Underlying Lawsuit. And, in particular, the allegation existed in the "live" pleading at the time of trial *See* **Joint Exhibit 12 at ¶27**.

[15] The same or similar allegation exists in all of the pleadings in the Underlying Lawsuit. And, in particular, the allegation existed in the "live" pleading at the time of trial *See* **Joint Exhibit 12 at ¶27**.

---

underlying plaintiffs between February of 2004 and September of 2005. **Joint Exhibit 10 at ¶29.**[16] Accordingly, under a liberal interpretation of the allegations, the property damage could have occurred during any of the Mid-Continent policies. *See Thos. S. Byrne*, 2008 WL 5095161 at *6–*7; *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 845–46 (Tex. App.—Dallas 2004, pet. denied).[17]

### 2.    Allocation of Defense Costs

Contrary to Mid-Continent's contentions, the defense costs incurred in the Underlying Lawsuit need not be allocated among the consecutively triggered policy periods. In *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994), the Supreme Court of Texas adopted the reasoning in *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981). In *Keene*, the D.C. Circuit ruled that each triggered insurer was jointly and severally liable for the indemnity and defense costs of the underlying lawsuits and that the policyholder could seek indemnification from any of the triggered policies it chose, with the stipulation that only one policy's limits could apply to each injury. *Keene*, 667 F.2d 1049–50. The *Keene* court also held that because the duty to defend was broader than the duty to indemnify, "only the insurer that Keene selects will defend Keene." *Id.* at 1050.

In *Garcia*, the Supreme Court of Texas held:

> If a single occurrence triggers more than one policy, covering different policy periods, then different limits may have applied at different times. In such a case, the insured's indemnity limit should be whatever limit applied at the single point

---

[16] The specific reference to the letters started in the Fifth Amended Petition. **Joint Exhibit 6 at ¶28.**

[17] Ownership of the injured property during the policy period is not required to maintain a claim for damages to that property. *See Union Ins. Co. v. Don's Building Supply, Inc.*, 266 S.W.3d 592, 595–96 (Tex. App.—Dallas 2008, pet. filed). Likewise, the fact that a pleading contains over-inclusive allegations—including allegations that would take certain plaintiffs out of coverage under a particular policy—does not defeat the duty to defend. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 496 (Tex. 2008) ("Over-inclusive allegations do not negate the duty to defend; the duty applies if there is a possibility that *any* of the claims might be covered.").

in time during the coverage periods of the triggered policies when the insured's limit was highest. *The insured is generally in the best position to identify the policy or policies that would maximize coverage.* Once the applicable limit is identified, all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights.

*Id.* at 855 (emphasis added).

Relying on *Garcia*, the Austin Court of Appeals adopted this approach in a case involving the duty to indemnify, stating:

[T]he insurance policies in the instant case, like those analyzed in *Keene*, do not provide for a reduction of the insurer's liability limits if an injury only partially occurs during a policy period. Instead, both policies contract to pay the sums the insured becomes legally obligated to pay, not merely a pro rata portion of that amount.

*CNA Lloyd's of Tex. v. St. Paul Ins. Co.*, 902 S.W.2d 657 (Tex. App.–Austin 1995, writ dism'd).

In 1999, and more importantly for the instant case, the Austin Court of Appeals extended this holding to the duty to defend. *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 605 (Tex. App.—Austin 1998, no pet.). In doing so, the court observed that the Supreme Court of Texas had specifically adopted the *Keene* approach and had quoted *Keene* at length. *Id.* Rejecting the insurer's contention that the duty to defend may be reduced on a pro-rata basis, the Austin Court of Appeals noted:

*Keene* held that once coverage under an insurance policy is triggered, an insurer is liable up to its policy limits, subject to "other insurance" clauses. *See Keene,* 667 F.2d at 1047–48. As the *Keene* court explained: "There is nothing in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during a policy period." *Id.* at 1048. After determining that each insurer independently owed a duty to fully indemnify the insured, and noting that the duty to defend is broader than the duty to indemnify, the court held that each insurer was fully liable for defense costs. *See id.* at 1050.

*Id.* The principles announced in *Keene* "are fully consistent with the notion that each of several insurers on concurrently triggered policies is obligated to provide a full defense to the insured."

*Id.* "[T]he mechanism of pro rata apportionment among insurers does not affect the contractual relationship between insurer and insured that requires the insurer to provide full indemnification." *Id.* at 606. "[U]nder Texas law, an insurer's duty to defend its insured on a claim occurring partially within and partially outside of the policy period is not reduced pro rata by the insurer's 'time on the risk' or by any other formula." *Id.* at 607. Stated otherwise, the insurer has a duty to defend its insured, not a duty to provide a pro-rata defense. *Id.* at 606. The application of this reasoning to the allocation of defense costs was recently followed by another state appellate court. *See Maryland Casualty Co. v. South Texas Medical Clinics*, 2008 WL 98375 (Tex. App.—Corpus Christi 2008, pet. denied). In *South Texas Medical Clinics*, the court stated as follows:

> The Texas Supreme Court has adopted the *Keene* approach regarding the allocation of defense costs. Therefore, Texas law does not require a pro rata allocation of defense costs.

*Id.* at *7. The court went on to note that "[t]he insurance policies do not provide textual support for [the insurer's] assertion that it should only be liable for a prorated share of the defense costs." *Id.* at *8. The court ultimately held that the insurer was required to provide a full defense to its insured regardless of whether portions of the claim occurred outside of the policy period because the insurance policy provisions had been triggered. *Id.*

Federal courts also have recognized that Texas law follows the *Keene* approach. *See, e.g., N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 560 n.14 (5th Cir. 2008) (while discussing defense costs, the court noted that, under *Garcia*, the insured is entitled to select the policy that provides the most coverage); *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 525 F.3d 359, 363 (5th Cir. 2008) (citing *Sw. Aggregates* for the proposition that a complete defense is owed even when a claim falls partially within and partially outside of a

coverage period); *Guar. Nat'l Ins. Co. v. Azrock*, 211 F.3d 239, 252 n.55 (5th Cir. 2000) (noting that Texas law does not require pro-rata allocation of defense costs) (citation omitted); *RLI Ins. Co. v. Philadelphia Indem. Ins. Co.*, 421 F. Supp. 2d 956, 964–65 (N.D. Tex. 2006) (making an *Erie* guess that the Supreme Court of Texas would not adopt a pro-rata allocation rule to determine policy limits where policy periods overlapped since the court had already adopted the *Keene* approach where policy periods did not overlap in *Garcia*).[18]

Here, pursuant to *Garcia* and its progeny, Mid-Continent owes a complete defense to the Underlying Lawsuit under each of the policies that are triggered by the allegations in the pleadings. As discussed above, the allegations pleaded in the Underlying Lawsuit potentially trigger coverage under *all* of the Mid-Continent policies. Accordingly, Academy can choose which policy is required to provide a complete defense against the allegations in the Underlying Lawsuit. Here, Academy designates Policy Number 04-GL-000037547 as responsible for providing a complete defense to the Underlying Lawsuit. That policy has a $1,000 per claim deductible. *See* **Joint Exhibit 13 at 00005**. Importantly, and in contrast to the policies that follow it, defense costs are *outside* of the deductible. *See id.* In other words, by its own terms, the Deductible Liability Insurance Endorsement in Policy Number 04-GL-000037547 applies only to the duty to indemnify.[19] Consequently, Mid-Continent owes a complete defense to Academy

---

[18] It is anticipated that Mid-Continent will argue that each home constitutes a separate occurrence. *See Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 682 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that damage to each home constitutes a separate occurrence). Academy disagrees with this view. In *Lennar Corp.*, the insured applied defective stucco to each home. Academy was not sued for faulty workmanship to each home or for applying a defective product to each home. Moreover, since Academy was exonerated from any liability in the Underlying Lawsuit, it is difficult to conclude that there were multiple *causes* of the insured's liability. *See Lennar Corp.*, 200 S.W.3d at 682 ("Under the 'cause' analysis, the proper focus in interpreting 'occurrence' under a liability policy is on the number of events that cause the injuries and give rise to the insured's liability, rather than the number of injurious effects."). Simply put, since there was no liability, there was no liability-triggering event.

[19] The same is true for the subsequent policy period (08/01/01 – 08/01/02). *See* **Joint Exhibit 14 at 00006**. Starting in 2003, in contrast, the Deductible Liability Insurance Endorsement applied to "Allocated Loss Expenses," which

---

without application of any deductibles. In the alternative, if the Court looks to the date of the first sale as a triggering point, then Academy elects a complete defense under Policy Number 04-GL-000060196. Although that policy has a $5,000 per claim deductible, the result is the same since the deductible under that policy also does not apply to defense costs.

## VIII.
## CONCLUSION

The allegations in the Underlying Lawsuit, when construed per the well-established rules for determining the duty to defend, demonstrate that Mid-Continent's duty to provide a defense continued through the Ninth, Tenth and Eleventh Amended Petitions.[20] The Underlying Lawsuit, which involved numerous plaintiffs, contains allegations of property damage that could have occurred during any of the five consecutive Mid-Continent policies. Accordingly, a duty to defend is owed by each of the five consecutively triggered Mid-Continent policies. Even so, and despite any arguments to the contrary, Texas law does not support a pro-rata allocation of defense costs among the consecutively triggered policy periods. This is so even if some of the damages within the Underlying Lawsuit occurred partially within and partially outside any particular policy period. Rather, Academy is entitled to pick any of the triggered policies to provide it with a complete defense. To this end, Academy designates Policy Number 04-GL-000037547 as the Mid-Continent policy to provide a defense. Since the $1,000 "per claim" deductible in that policy does not apply to defense costs, Mid-Continent owes Academy a full defense in the Underlying Lawsuit *without* application of any deductibles. In the alternative, Academy designates the subsequent policy year—the policy in which the first house was sold—

---

means that defense costs are subject to the deductible. *See, e.g.,* **Joint Exhibit 15 at 00005**.

[20] As noted, Mid-Continent does not contest that it owed a duty to defend prior to the filing of the Ninth Amended Petition. *See* **Joint Exhibit 18 at ¶2.**

---

to provide the complete defense. In any case, the result is the same as the $5,000 per claim deductible in the subsequent policy year does not apply to defense costs. Finally, this Court should reject any attempt by Mid-Continent to prorate its defense obligations over the consecutively triggered policy periods.

WHEREFORE, PREMISES CONSIDERED, Academy prays that, upon final hearing of the case, this Court declare and adjudge the contractual obligations of Mid-Continent, and that Academy recover all damages from and against Mid-Continent that may reasonably be established by a preponderance of the evidence, and that Academy be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Academy may show itself to be justly entitled.

Respectfully Submitted,

By:   /s/ Lee H. Shidlofsky
Lee H. Shidlofsky
Texas Bar No. 24002937
Southern District No. 22026
Melissa L. Kelly
Texas Bar No. 24055766
Southern District No. 685892

**COUNSEL FOR DEFENDANTS**

**OF COUNSEL:**
VISSER SHIDLOFSKY LLP
7200 N. Mopac Expwy., Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 FAX
Email: lee@vsfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of March, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to each counsel of record. To the extent any such counsel is not registered for such electronic delivery, the foregoing document will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Lee H. Shidlofsky
Lee H. Shidlofsky