IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MID-CONTINENT CASUALTY COMPANY    §
                                             §

v.                                                §
                                             §    CIVIL ACTION NO. 4:08-cv-00021

ACADEMY     DEVELOPMENT,     INC.,   §
CHELSEA HARBOUR, LTD., LEGEND   §
CLASSIC HOMES, LTD., and LEGEND   §
HOME CORPORATION                          §

**MID-CONTINENT CASUALTY COMPANY'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE GRAY H. MILLER:

Mid-Continent Casualty Company ("Mid-Continent"), files its Motion for Partial

Summary Judgment and would show the Court as follows:

**I.**

1.     Mid-Continent seeks a declaration it owes no duty to pay for certain

defense costs incurred by Academy Development, Inc., Chelsea Harbour, Ltd., Legend

Classic Homes, Ltd., and Legend Home Corporation (collectively "Legend Defendants")

in a lawsuit styled *Linda Budiman, et al. v. Academy Development, Inc., et al.;* Cause No.

05-cv-142846, in the 268th Judicial District Court of Fort Bend, County, Texas

(hereinafter referred to as the "Budiman Lawsuit"). Mid-Continent seeks the following

specific relief:

- Mid-Continent has no duty to pay the defense costs and expenses incurred
  in defending the Legend Defendants in the Budiman Lawsuit after July 24,
  2007, the date that the Ninth Amended Petition was filed in the Budiman
  Lawsuit.

- As to those Mid-Continent policies which contain a per claim deductible, a
  declaration that each Budiman Plaintiff that is alleged to have suffered
  covered property damage during that policy constituted a separate claim

for which a separate $5,000 deductible should be applied to the defense costs attributable to that policy.

- As to those Mid-Continent policies which contain a per occurrence deductible, a declaration that each Budiman Plaintiff that is alleged to have suffered covered property damage during that policy constituted a separate occurrence for which a separate per occurrence deductible would be applied to the defense costs attributable to that policy.

- A determination by the Court that due to the lack of any allegations in the petitions filed in the Budiman Lawsuit as to when any of the individual Budiman Plaintiffs are alleged to have suffered damage to their homes and property and lack of any evidence to establish the date of any such alleged damage having been offered at trial, the Court consider extrinsic evidence pertaining to the date each of the Budiman Plaintiffs closed on the purchase of their home, establish the earliest possible date the Budiman Plaintiffs could have suffered alleged property damage for purposes of establishing the deductible that should be applied per the deductible provisions in the various policies' per claim and per occurrence deductible endorsements. The parties have agreed to the use of that date to establish the dates of loss.

- A determination that the defense costs should be apportioned across all triggered policies.

## II.
## SUMMARY OF THE ARGUMENTS

2.     Mid-Continent is entitled to a declaration that its duty to defend the Legend Defendants in the Budiman Lawsuit ended on July 24, 2007, the date the Plaintiffs in the Budiman Lawsuit filed the Ninth Amended Petition. As more fully set forth in its Brief in Support of Motion for Partial Summary Judgment, Mid-Continent will show the Ninth Amended Petition and the subsequent petitions that were in effect through the date of judgment in the Budiman Lawsuit did not allege the Budiman Plaintiffs suffered property damage as required for there to be coverage and a duty to defend under the Mid-Continent policies.

3.      Mid-Continent is entitled to a declaration that each person asserting a claim in the Budiman Lawsuit was a separate claim for purposes of the per claim deductible.  The Mid-Continent policy issued to the Legend Defendants for the policy period beginning August 1, 2002 and ending on August 1, 2003, had a $5,000 per claim deductible which applied to both the indemnity obligation and the defense obligation under the policy.  Each Budiman Lawsuit Plaintiff that asserted a claim individually for property damage which was alleged to have occurred during the August 1, 2002 to August 1, 2003 time period constituted a separate claim subject to a separate deductible under that policy.  For the reasons more fully set forth in the Brief in Support of Mid-Continent's Motion for Partial Summary Judgment, the Court should apply a separate deductible to the defense cost for each of the claims asserted during the August 1, 2002 through August 1, 2003 time period.

4.      Each Plaintiff asserting a claim in the Budiman Lawsuit constitutes a separate occurrence for purposes of the per occurrence deductible in the Mid-Continent policies issued for the period beginning August 1, 2003 through August 1, 2004 and August 1, 2004 to August 1, 2005.  The Mid-Continent policy issued for the period August 1, 2003 to August 1, 2004 contained an endorsement with a $50,000 per occurrence deductible that applied to both the indemnity and defense obligation under the policy.  The Mid-Continent policy issued for the time period August 1, 2004 to August 1, 2005 contained an endorsement that provided for a $100,000 per occurrence deductible that applied to both the indemnity obligation and the defense obligation.  Each Plaintiff that asserted a claim for property damage occurring during the above policy periods was a separate occurrence subject to a separate deductible.  The damage, if any, to the

3

Budiman Lawsuit Plaintiffs occurred when the sale of the property to that Plaintiff took place which was a distinct and separate event for each of the Plaintiffs in the Budiman Lawsuit. For the reasons more fully set forth in the Brief in Support of Mid-Continent's Motion for Partial Summary Judgment, the Court should apply a separate deductible to each Budiman Lawsuit Plaintiff whose claim potentially triggered coverage under the above Mid-Continent policies. For those Plaintiffs that triggered coverage under the August 1, 2003 to August 1, 2004 policy, the Court should apply a separate $50,000 per occurrence deductible defense costs incurred in defending the Budiman lawsuit. For each Budiman Lawsuit Plaintiff who suffered a loss that potentially triggered coverage under the August 1, 2004 to August 1, 2005 policy, the Court should apply a separate $100,000 per occurrence deductible to defense costs incurred in defense of the Budiman Lawsuit.

5.      Because the petitions in the Budiman Lawsuit do not set forth any dates to identify when the losses occurred, the Court should establish the date of loss applicable to each claim by a Budiman Lawsuit Plaintiff as being the date the sale of the property to that Plaintiff was closed. Although Texas law does not ordinarily allow use of extrinsic evidence to determine whether there is a duty to defend, the controlling cases hold the use of extrinsic evidence may be allowed for the limited purpose of establishing the date of loss as long as the use of that evidence would not also affect liability issues in the underlying lawsuit. As more fully argued in the Brief in Support of this Motion for Partial Summary Judgment, the use of extrinsic evidence to determine the date each individual Budiman Lawsuit Plaintiff closed on the sale of the property should be allowed to establish dates of loss for the purpose of determining which of the Mid-

4

Continent policies was triggered and which deductible should be applied as the result of the claim asserted by the various Budiman Lawsuit Plaintiffs.

6. Defense costs incurred by the Legend Defendants in the Budiman Lawsuit should be spread across all Mid-Continent policies where the extrinsic evidence establishes that a Budiman Lawsuit Plaintiff closed on the sale of property. Texas courts have consistently recognized it would be unfair and unreasonable to attribute losses to one policy when there is clear evidence of losses occurring outside of that policy period and there is a reasonable means to distribute the losses across all potentially triggered policies. In this instance, by using the date that the Budiman Lawsuit Plaintiffs closed on their homes as the potential date of loss, there is a clear and reasonable means to identify the policy that should be triggered and should be responsible for the defense cost associated with that loss. The need to distribute the cost across all potentially triggered policies becomes more compelling due to the existence of different deductibles ranging from $5,000 to $100,000 in the potentially triggered policies.

WHEREFORE, Mid-Continent prays that upon the hearing of this matter the Court enter an order declaring Mid-Continent had no duty to pay the defense costs and expenses incurred in defending the Legend Defendants in the Budiman Lawsuit after July 24, 2007, and applying an appropriate deductible to each claim asserted by Budiman Lawsuit Plaintiffs in an amount determined by the date each Budiman Lawsuit Plaintiff closed on the purchase of the property resulting in the claims in the underlying lawsuit.

Respectfully submitted,

**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

_____
Christopher W. Martin
Texas State Bar No. 13057620
Federal I.D. 13515
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
MID-CONTINENT CASUALTY COMPANY

OF COUNSEL:
Robert G. Dees
Texas State Bar No. 05716430
Federal I.D. 13899
Todd Lonergan
Texas State Bar No. 12513700
Federal I.D. 7769
808 Travis, Suite 1800
Houston, Texas  77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been served by certified mail, on this the 27 day of March, 2009 to:

Mr. Lee H. Shidlofsky
Visser Shidlofsky, LLP
7200 N. Mopac Expressway, Suite 430
Austin, Texas  78731

_____
Todd Lonergan

5760-0011
00347792

6