IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:08-cv-00021 |
| ACADEMY DEVELOPMENT, INC., | § | |
| CHELSEA HARBOUR, LTD., LEGEND | § | |
| CLASSIC HOMES, LTD., and LEGEND | § | |
| HOME CORPORATION | § | |

---

## BRIEF IN SUPPORT OF MID-CONTINENT CASUALTY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Christopher W. Martin
Texas State Bar No. 13057620
Federal I.D. 13515
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile
ATTORNEY-IN-CHARGE FOR PLAINTIFF,
MID-CONTINENT CASUALTY COMPANY

OF COUNSEL:
Robert G. Dees
Texas State Bar No. 05716430
Federal I.D. 13899
Todd Lonergan
Texas State Bar No. 12513700
Federal I.D. 7769
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

# TABLE OF CONTENTS

BRIEF IN SUPPORT OF MID-CONTINENT CASUALTY COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT..........................................................................1

    I.  STATEMENT OF NATURE AND STAGE OF PROCEEDING……….............1

    II.  BACKGROUND.................................................................................................1

    III.  STATEMENT OF ISSUES TO BE RULED ON ..............................................4

    IV.  ARGUMENT AND AUTHORITIES................................................................5

        A.    Mid-Continent's Duty To Defend Ended On July 24, 2007
             With The Filing Of The Plaintiff's Ninth Amended Petition. ............5

        B.    Each Plaintiff Asserting a Claim in the Budiman Lawsuit Was
             a Separate Claim for Purposes of the Per Claim Deductible in
             One of the Mid-Continent Policies. ................................................12

        C.    Each Plaintiff Asserting a Claim in the Budiman Lawsuit Was
             a Separate Occurrence for Purposes of the Per Occurrence
             Deductible in Two of the Mid-Continent Policies...........................13

        D.    Use of Extrinsic Evidence to Establish Date of Loss and
             Application of Deductibles under Policies .......................................14

        E.    Defense Costs Should Be Apportioned Equally Across All
             Policies in Which a Claim Occurred................................................16

        F.    Equal Apportionment Across Policies ..............................................19

        G.    Apportionment Based on Number of Closings During the
             Policy ...............................................................................................20

        H.    Conclusion and Relief Sought .......................................................21

CERTIFICATE OF SERVICE ..............................................................................22

# TABLE OF AUTHORITIES

<u>PAGE</u>

**Cases**

*Consolidated Edison Co. of New York v. FYN Paint & Lacquer Co., Inc.,*
   2005 WL 139170 (E.D.N.Y) ........................................................................ 17

*Dahlke v. John F. Zimmer Insurance Agency,* 252 Neb. 596 N.W.2d 548 (Neb. 1997) ..... 12

*Don's Building Supply, Inc. v. OneBeacon Insurance Co.,*
   267 S.W.3d 20 (Tex. 2008)...................................................................... 9, 11

*EEOC v. Southern Publishing Co.,*
   894 F.2d 785 (5th Cir. 1990) ..................................................................... 17

*Essex Insurance Co. v. Chemical Formula, LLP,*
   2006 WL 5720284 (M.D. Pa.) .................................................................. 12

*GuideOne Elite Insurance Company v. Fielder Road Baptist Church,*
   197 S.W.3d 305 (Tex. 2006)................................................................. 5, 15

*Gulf Chemical & Metallurgical Corp. v. Associated Metals & Mineral Corp.,*

   1 F.3d 365 (5th Cir. 1993) ........................................................... 16, 17, 19

*Katerndahl v. State Farm Fire and Casualty Company,*
   961 S.W.2d 518 (Tex. App. – San Antonio 1997, no petition) ........................... 5, 12

*Lamar Homes, Inc. v. Mid-Continent Casualty Co.,*
   242 S.W.3d 1 (Tex. 2007)......................................................................... 11

*Lennar Corporation v. Great American Ins. Co.,*
   200 S.W.3d 651 (Tex. App.-Houston [14th] pet. denied)........................... 13, 14

*Linda Budiman, et al. v. Academy Development, Inc., et al.*

   Cause No. 05-cv-142846, in the 268th Judicial District Court of

   Fort Bend County, Texas ..................................................................... passim

*Maurice Pincoff Co. v. St. Paul Fire and Marine Ins. Co.,*
   447 F.2d 204 (5th Cir.) .......................................................................... 13

*Mitchell v. LaFlamme,*
   60 S.W.3d 123 (Tex. App.- Houston [14th] 2000, no pet.) ................................. 9

*Myers v. Cuevas,*
    119 S.W.3d 830 (Tex. App.-San Antonio 2003, no petition) ......................................... 10

*Nautilus Insurance Co. v. ABN-AMRO Mortgage Group, Inc.,*
    2006 WL 3545034 (S.D. Tex.) ...................................................................................... 17

*Olin Corp. v. Insurance Co. of North America,*
    221 F.3d 307 (2nd Cir. 2000) ........................................................................................ 18

*Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co.,*
    2009 WL 353526 (Tex.) ................................................................................................ 15

*Primrose Operating Company v. National American Insurance Company,*
    382 F.3d 546 (5th Cir. 2004) .......................................................................................... 5

*Prudential Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.,*
    158 F3d 65 (2nd Cir. 1998) ............................................................................................ 18

*Robert Trotter Gift Fund v. Trinity Universal Insurance Company,*
    2007 WL 2682247 (Tex. App.-Austin) .......................................................................... 10

*State Farm Lloyds v. Kessler,*
    932 S.W.2d 732 (Tex. App.-Ft. Worth 1996, writ denied) ............................................ 11

| MID-CONTINENT CASUALTY COMPANY | § | |
| | § | |
| v. | § | |
| | § | |
| | § | CIVIL ACTION NO. 4:08-cv-00021 |
| ACADEMY    DEVELOPMENT,    INC., | § | |
| CHELSEA  HARBOUR,  LTD.,  LEGEND | § | |
| CLASSIC HOMES, LTD., and LEGEND | § | |
| HOME CORPORATION | § | |
| | § | |

## BRIEF IN SUPPORT OF MID-CONTINENT CASUALTY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE GRAY H. MILLER:

Mid-Continent Casualty Company ("Mid-Continent") files its Brief in Support of

Motion for Partial Summary Judgment and would show the Court as follows:

**I.**
## STATEMENT OF NATURE AND STAGE OF PROCEEDING

1.    This is a Declaratory Judgment Action to determine the extent of Mid-

Continent's liability for defense costs incurred by Academy Development, Inc., Chelsea

Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation in a lawsuit

styled *Linda Budiman, et al. v. Academy Development, Inc., et al.;* Cause No. 05-cv-

142846, in the 268th Judicial District Court of Fort Bend, County, Texas.  Pursuant to the

Order of this Court dated February 26, 2009 (Court Doc. No. 32), Mid-Continent submits

it Motion for Partial Summary Judgment.  The Court has abated all other Docket Control

dates pending ruling on the Cross-Motions to be filed by the parties.

**II.**
## BACKGROUND

2.    Mid-Continent  seeks  a  declaration  it  owes  no  duty  to  pay  for  certain

defense costs incurred by Academy Development, Inc., Chelsea Harbour, Ltd., Legend

Classic Homes, Ltd., and Legend Home Corporation (collectively "Legend Defendants")

in a lawsuit styled *Linda Budiman, et al. v. Academy Development, Inc., et al.;* Cause No. 05-cv-142846, in the 268th Judicial District Court of Fort Bend, County, Texas (hereinafter referred to as the "Budiman Lawsuit"). The Budiman Lawsuit concluded when the Legend Defendants obtained a defense verdict in their favor. As a result, there is currently no question before this Court concerning the duty to indemnify for damages in the Budiman Lawsuit, since no damages were awarded against the Legend Defendants in that matter. The sole question remaining for this Court is whether there was a duty to defend the Legend Defendants against the allegations in the petitions filed in the Budiman Lawsuit. Copies of the Plaintiff's Original through Eleventh Amended Petitions are attached as Joint Exhibits 1 through 12, respectively.

3.      The Budiman Lawsuit was filed on or about May 23, 2005. In the Petitions filed by the Budiman Lawsuit Plaintiffs, it was alleged the Legend Defendants were the developers of the subdivision and the entities that constructed and sold the individual homes to the Budiman Plaintiffs. It was alleged that prior to the sales, the Legend Defendants became aware the lake which was the centerpiece of the development was not constructed properly and the lake was losing water at an alarmingly high rate. (See Joint Exhibit 8, pg. 8 to 10 for typical allegation of knowledge about defects). It was further alleged this was not initially disclosed to the Budiman Plaintiffs at the time of the sale of the homes to those Plaintiffs despite the Legend Defendants having full knowledge about the problems being experienced with the lake. (See Joint Exhibit 8, pg. 10 to 12 for typical allegation of failure to disclose).

4.      In the Original Petition through the Eighth Amended Petition in the Budiman Lawsuit, it was alleged the conduct of the Legend Defendants caused the

2

Budiman Plaintiffs to suffer economic damage in the form of loss of value to their property caused by the defective conditions in the lake and also resulting from structural damage to their homes and property caused by the water from the lake escaping and seeping under their homes causing a shifting in the foundations.  (See Joint Exhibit 9, pg. 14 to 15 for typical allegation of damages caused by problems with construction and repair of the lakes).

5.      In the Ninth Amended Petition filed by the Budiman Plaintiffs on July 24, 2007, the allegations of economic loss continued but the allegation that the Budiman Plaintiffs had suffered actual physical damage to their individual home was deleted. (See Joint Exhibit 10, ¶'s 27, 33, 34, 44, and 55).

6.      Mid-Continent agreed to provide a defense to the Legend Defendants in the Budiman Lawsuit under a reservation of rights.  The Legend Defendants demanded and were allowed to utilize the services of their own designated attorneys.   In fact, because there were multiple defendants with potential conflicts, two law firms were retained.  The law firms included Hoover Slovacek and Rusty Hardin & Associates.

7.      Reasonably soon after learning the Ninth Amended Petition had been filed in the Budiman Lawsuit withdrawing any allegation of physical damage to the individual Budiman Plaintiffs' homes, Mid-Continent advised the Legend Defendants it would no longer pay for defense costs incurred after the date of the filing of the Ninth Amended Petition, July 24, 2007.

8.      Mid-Continent issued five general liability policies to the Legend Defendants.  The policies are attached as Joint Exhibits 13 to 17.  The first policy had an effective date of August 1, 2000 through August 1, 2001. (Joint Exhibit 13, pg. 1). The

final policy provided coverage to the Legend Defendants for the period of August 1, 2004 to August 1, 2005. (Joint Exhibit 17, pg.1).  The first two policies with policy periods of August 1, 2000 to August 1, 2001 and August 1, 2001 to August 1, 2002, respectively, did not have deductibles that applied to defense costs. (Joint Exhibits 13 and 14). Beginning with the policy providing coverage for the time period August 1, 2002 through August 1, 2003, the policies contained deductibles.  The August 1, 2002 through August 1, 2003, policy contained a $5,000 per claim deductible that applied to both the defense costs and any indemnity obligation that might arise. (Joint Exhibit 15, pg. 5).  The August 1, 2003 through August 1, 2004 policy contained a $50,000 per occurrence deductible that applied to the defense costs and the indemnity obligation. (Joint Exhibit 16, pg. 7). The August 1, 2004 to August 1, 2005 policy contained a $100,000 per occurrence deductible that applied to both the defense costs and the indemnity obligation. (Joint Exhibit 17, pg. 7 to 11).

### III.
### STATEMENT OF ISSUES TO BE RULED ON

9.      In this motion, Mid-Continent seeks declarations that:

- Mid-Continent has no duty to pay the defense costs and expenses incurred in defending the Legend Defendants in the Budiman Lawsuit after July 24, 2007, the date that the Ninth Amended Petition was filed in the Budiman Lawsuit.

- In those policies which contain a per claim deductible, each Budiman Plaintiff that is alleged to have suffered damages during that policy constituted a separate claim for which a separate $5,000 deductible should be applied to the defense costs attributable to that policy.

- In those policies which contain a per occurrence deductible, each Budiman Plaintiff that is alleged to have suffered damage during that policy constituted a separate occurrence for which a separate per occurrence deductible would be applied to the defense costs attributable to that policy.

4

- Due to the lack of any allegations in the Petitions filed in the Budiman Lawsuit as to when any of the individual Budiman Plaintiffs are alleged to have suffered damage to their homes and property and lack of any evidence to establish the date of any such alleged damage having been offered at trial, the Court consider extrinsic evidence pertaining to the date each of the Budiman Plaintiffs closed on the purchase of their home and thereby establish the earliest possible date the Budiman Plaintiffs could have suffered alleged property damage for purposes of establishing the deductible that should be applied per the provisions in the various policies' per claim and per occurrence deductible endorsements. The parties have agreed to the use of that date to establish the dates of loss.

- The defense costs should be apportioned across all policies triggered by the allegations in the petitions filed the Budiman Lawsuit.

## IV.
## ARGUMENT AND AUTHORITIES

**A.     Mid-Continent's Duty To Defend Ended On July 24, 2007 With The Filing Of The Plaintiff's Ninth Amended Petition.**

10.     In Texas, the duty to defend is determined solely by the allegations in the underlying complaint and the provisions of the insurance policy without regard to the truth or falsity of the allegations contained in the underlying complaint. *GuideOne Elite Insurance Company v. Fielder Road Baptist Church,* 197 S.W.3d 305, 308 (Tex. 2006). In deciding the duty to defend, the Court must look at the most current petition filed in the cause of action. *Primrose Operating Company v. National American Insurance Company,* 382 F.3d 546, 552 (5th Cir. 2004). If the review of an amended petition makes it clear that there is no longer an obligation to provide a defense under the policy, the insurer is allowed to withdraw the defense being provided to its insured. *Katerndahl v. State Farm Fire and Casualty Company,* 961 S.W.2d 518 (Tex. App. – San Antonio 1997, no petition).

11.     Each of the insurance policies issued by Mid-Continent contained the following insuring agreement:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        (1)    The amount we pay for damages if limited as described in Section **III** – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(3)    The "bodily injury" or "property damage" occurs during the policy period; and**

(See Joint Exhibit 15, pg. 9 to 10 for typical insuring agreement).

12. Each of the policies issued by Mid-Continent also contained the following definition of "property damage":

> 17. "Property damage" means:
>     a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>     b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(See Joint Exhibit 15, pg. 24 for typical property damage definition).

13. In Plaintiffs' Original Petition through the Plaintiff's Eighth Amended Petition in the Budiman Lawsuit, it is alleged the Legend Defendants defectively designed or constructed the lake which was considered to be the centerpiece of the development. (See Joint Exhibit 8, pg. 8 to 10 for typical allegation of defects in the construction of the lakes). There are also allegations of physical injury to the property of the individual property owners caused by water getting under the homes causing distress to the foundations. (See Joint Exhibit 9, ¶'s 33 and 34). Starting with the Plaintiff's Ninth Amended Petition filed in the Budiman Lawsuit on July 24, 2007, all allegations that the property of the individual property owners suffered physical damage are deleted. There is no allegation the alleged damage caused by the defective initial construction and subsequent faulty repair of the lake resulted in a loss of use of the property owned by the individual property owners in the Plaintiffs Ninth through Eleventh Amended Petitions. (See Joint Exhibit 10, ¶'s 27, 33, 34, 44, and 55).

14. In the Ninth Amended Petition filed in the Budiman Lawsuit on July 24, 2007, the Budiman Plaintiffs allege:

- The water seepage from the lake *may* cause structural damage;

- The defective condition of the lakes will diminish the value of the individual Plaintiffs' homes;

- They are entitled to recover the cost of repair and diminution in value to their homes;

- They are entitled to recover for their loss of the benefit of the bargain.

(See Joint Exhibit 10, ¶'s 27, 33, 34, 44, and 55)

15.    In the Tenth Amended Petition filed in the Budiman Lawsuit on August 21, 2007, the Budiman Plaintiffs allege:

- The condition of the lakes has and continues to cause damage to the value of the individual Plaintiffs' property;

- Water seepage from the lake *may* cause damage to the homes of the individual Plaintiffs' homes;

- They have suffered diminished or reduced market value to the property of the individual Plaintiffs as a result of the condition of the lakes;

- The individual Plaintiffs have suffered a loss of the benefit of the bargain.

(See Joint Exhibit 11, ¶'s 27, 33, 34, 44, 47 and 55).

16.    In the Eleventh Amended Petition in the Budiman Lawsuit filed on        , the Budiman Plaintiffs allege:

- The condition of the lakes has affected and continues to affect the value of the individual Plaintiffs' property;
- Water seepage from the lake *may* cause damage to the homes of the individual Plaintiffs' homes;
- They have suffered diminished or reduced market value to the property of the individual Plaintiffs;
- The individual Plaintiffs have suffered a loss of the benefit of the bargain.

(See Joint Exhibit 12, ¶'s 27, 33, 34, 44, 47 and 55).

17.    For there to be a duty to defend the Legend Defendants in the Budiman Lawsuit, the Legend Defendants must show the petition in place at the time the defense is

8

being sought contains allegations of "property damage" caused by an "occurrence" and the "property damage" is alleged to have occurred during the policy period. *Don's Building Supply, Inc. v. OneBeacon Insurance Co.,* 267 S.W.3d 20 (Tex. 2008). The policy that is triggered is the policy during which actual physical damage occurred regardless of whether it is not discovered or does not manifest until later. *Id at* 33. The Budiman Plaintiffs have not alleged in the Ninth through Eleventh Amended Petitions they have suffered "property damage" and have therefore not met the first requirement for coverage under the Mid-Continent policies. The Legend Defendants are therefore not entitled to be reimbursed for the defense costs incurred after July 24, 2007.

18.     Allegations of damage to the lakes do not allege damage to the property of the individual Plaintiffs and do not raise a duty to provide a defense. In *Myers v. Cuevas,* 119 S.W.3d 830, 832-33 (Tex. App.-San Antonio 2003, no petition) an owner of an individual unit in a condominium was held to have no right to sue in his individual capacity for damage to the common areas owned by the condominium association since that right belonged exclusively to the association. Likewise, in *Mitchell v. LaFlamme,* 60 S.W.3d 123, 128-129 (Tex. App.- Houston [14th] 2000, no pet.) an individual townhome owner had no right to sue for damage to the common areas because that right belonged exclusively to the townhome association that owned the common areas.

19.     The Budiman Plaintiffs do not allege they have suffered physical damage to their individual lots. They have complained about the defects caused to the lake during the construction and repair of the lake and have alleged that those defects have caused a reduction in the value of their property. The individual Plaintiffs have not sought damages for the defects in the lake and would not have standing to do so if they did seek

damages for defects in the lake. The individual property owners do not have a sufficient ownership interest to assert a claim for damages in their individual capacity for the lake and common areas which are owned by the property owners association. *Myers v. Cuevas, supra at 832-833.*

20.    The Budiman Plaintiffs do not allege they had an existing use in the lake and common areas sufficient to satisfy the requirement there be a loss of use of property that falls within the definition of "property damage" in the Mid-Continent policies.   The Plaintiffs allege they were promised a lake as part of the benefit of the bargain, and because the lake as delivered failed to comply with this promise, the Plaintiffs were damaged by a diminution in value of their property.   In order to have suffered "property damage" as defined in the policies, the individual property owners must show they lost use of property in which they had a previously established use. *Robert Trotter Gift Fund v. Trinity Universal Insurance Company,* 2007 WL 2682247 (Tex. App.-Austin).   In the *Trotter* case, Mr. Trotter was sued by homeowners who purchased lots in a subdivision he was developing. *Id.*   It was alleged the homeowners were induced to purchase lots based on representations they would be provided a common area with access to the lake as part of the development but the area as provided did not comply with what they were promised. *Id.*   Trotter requested a defense from Trinity Universal, his liability carrier, but was denied a defense because Trinity did not believe the above allegation alleged "property damage" as defined in the policy. *Id.*   The court agreed the loss of use of tangible property included in the definition of "property damage" in the policy required there be some pre-existing interest in the use of the property. *Id.*

21.     Loss of value to the property is an economic loss and is not "property damage" as defined in a general liability policy. *State Farm Lloyds v. Kessler,* 932 S.W.2d 732 (Tex. App.-Ft. Worth 1996, writ denied). (See also *Lamar Homes, Inc. v. Mid-Continent Casualty Co.,* 242 S.W.3d 1, 10 (Tex. 2007) (holding faulty work that only causes loss of value but does not cause physical damage does not constitute "property damage.")   The allegations by the Budiman Plaintiffs they have suffered diminished value do not allege "property damage" sufficient to have invoked the duty to defend.

22.     The Budiman Plaintiffs allege in the Ninth through Eleventh Amended Petitions in the Budiman Lawsuit that due to water seepage from the lakes, they *may* suffer property damage to their property. (See Joint Exhibits 9 to 11, ¶ 33).  In *Don's Building Supply v. OneBeacon Insurance Co.,* the Texas Supreme Court held that to trigger a policy for coverage their must have been actual damage during the policy. Mere exposure to the damaging event does not trigger the coverage without some allegation or evidence that the exposure caused damage or injury.

23.     Clearly, an allegation of possible damage at some unspecified time in the future is not sufficient to allege actual damage during any of the Mid-Continent policies, all of which had policy periods that terminated well before this allegation in the Ninth Amended Petition which was filed on July 24, 2007.  If the damage had not occurred by July 24, 2007, it could not have occurred prior to August 1, 2005, the termination date for the last Mid-Continent policy.  The foregoing allegation clearly did not invoke a duty to defend in the Budiman lawsuit.

24.     Even assuming Mid-Continent had a duty to defend prior to the filing of the Ninth Amended Petition, which Mid-Continent denies, any such duty ended with the filing of the Ninth Amended Petition which no longer contained allegations that even potentially invoked coverage.  Mid-Continent was entitled to withdraw the defense being provided when the current petition no longer alleged facts triggering the defense duty. See *Katerndahl v. State Farm Fire and Casualty Company, supra.*

**B.     Each Plaintiff Asserting a Claim in the Budiman Lawsuit Was a Separate Claim for Purposes of the Per Claim Deductible in One of the Mid-Continent Policies.**

25.     The Mid-Continent policy issued to the Legend Defendants for the policy period beginning August 1, 2002 and ending on August 1, 2003 had a $5000 per claim deductible.  This deductible applied to not only the indemnity obligation in the policy but the defense obligation as well.  (Joint Exhibit 15, pg. 5 to 6).

26.     Each Plaintiff could have asserted a claim individually for the alleged damages to their homes. They did not need to join with one hundred plus other homebuyers to have a viable claim or lawsuit. The fact they joined together and filed suit as a group does not convert their individual claims into one group claim. When a policy has a per claim deductible, the deductible is applied to each claimant.  *Essex Insurance Co. v. Chemical Formula, LLP,* 2006 WL 5720284 (M.D. Pa.); *Dahlke v. John F. Zimmer Insurance Agency,* 252 Neb. 596, 567 N.W.2d 548 (Neb. 1997).

27.     It is clearly stated the Plaintiffs are individually seeking separate awards and in the later petitions they seek separate awards of $200,000 per household. (Joint Exhibits 3 to 9, ¶13 and Joint Exhibits 10 to 12, ¶ 15). As such it is clearly intended that the claims are to be treated separately even though they are being asserted in one suit.

28.    For the foregoing reasons, each claim by an individual Plaintiff in the Budiman Lawsuit that triggered coverage under the August 1, 2002 to August 1, 2003 Mid-Continent policy was subject to a separate $5,000 deductible which was applicable to both the defense costs and the indemnity obligations under the policy.

**C.    Each Plaintiff Asserting a Claim in the Budiman Lawsuit Was a Separate Occurrence for Purposes of the Per Occurrence Deductible in Two of the Mid-Continent Policies.**

29.    The Mid-Continent policy issued for the time period from August 1, 2003 to August 1, 2004 contained an endorsement providing for a $50,000 per occurrence deductible. (Joint Exhibit 16, pg. 7 to 8). The Mid-Continent policy issued for the time period from August 1, 2004 to August 1, 2005 contained an endorsement providing for a $100,000 per occurrence deductible. (Joint Exhibit 17, pg. 7 to11).

30.    Each individual Plaintiff's injury and resulting claim constitutes a separate occurrence subject to a separate deductible because it was the sale of the property to the Plaintiff in each instance that caused the damage to the Plaintiff. In *Maurice Pincoff Co. v. St. Paul Fire and Marine Ins. Co.,* 447 F.2d 204 (5th Cir.), the court held that Texas uses the "cause" analysis in determining whether a set of facts involves one or more occurrences. In that case, the insured purchased contaminated bird seed and then sold that seed to eight different persons. The court held there were eight separate occurrences because the "cause" of the losses was the sale of the contaminated bird seed to the individual claimants and not the purchase of the contaminated seed by the insured.

31.    In *Lennar Corporation v. Great American Ins. Co.,* 200 S.W.3d 651 (Tex. App.-Houston [14th] pet. denied), the court relied on the reasoning in the *Maurice Pincoff* case to find each homeowner that had been damaged by application of the defective EIFS

13

product to their home was a separate occurrence subject to a separate deductible. The EIFS product would not have damaged the homeowners but for its application to their home. Each homeowner had a separate claim that arose at a different time from the claims of the other homeowners and was therefore a completely separate event and occurrence.

32.    The same reasoning in *Lennar* applies to this case. The Plaintiffs in the Budiman Lawsuit would not have been injured by the alleged defective condition of the lake caused by its initial construction and subsequent repairs if they had not purchased their homes. The petitions in the Budiman Lawsuit are replete with allegations that the true cause of their damages was the failure to disclose the condition of the lake and thereby give the individual Plaintiffs the opportunity to decline to purchase their homes. (See Joint Exhibit 10, pg. 8 to 11 for typical allegation of knowledge about defects). If the Budiman Lawsuit Plaintiffs had never purchased the homes they would never have suffered their alleged economic damages and would never have suffered the alleged physical damage to their homes and property. But for the sale, the individual Plaintiffs would not have been allegedly damaged in any way by the condition of the lake. This Court should hold that each sale of a home to each individual Plaintiff constitutes a separate occurrence subject to a separate deductible under the August 1, 2003 to August 1, 2004 and the August 1, 2004 to August 1, 2005 policies.

**D.    Use of Extrinsic Evidence to Establish Date of Loss and Application of Deductibles under Policies**

33.    The Petitions filed in the Budiman Lawsuit are devoid of dates or any other information that would allow the Court to identify dates of loss on any of the claims for purposes of determining which policy was triggered for a claim and which deductible

14

should be applied to the claim.  In *GuideOne Elite Insurance Co. v. Fielder Road Baptist Church,* 197 S.W.3d 305 (Tex. 2006), the Texas Supreme Court refused to allow the insurance carrier to introduce extrinsic evidence to show the person accused of the wrongful acts was not employed during the GuideOne policy period and thus could not have committed those acts during the policy as required to trigger coverage.  This decision was reaffirmed recently in *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co.,* 2009 WL 353526 (Tex.).  In the *Pine Oak* case, the insured was not allowed to introduce evidence the work was performed by a subcontractor which would have allowed the insured to fit within the exception to the "your work" exclusion for work done by subcontractors.  In the opinion the court continues to refer to a possible exception to this rule when the extrinsic evidence only deals with a coverage issue but does not in any manner affect the truth or falsity of a fact that would go to liability.

34.    In the present case, the use of extrinsic evidence to show the date when the Budiman Plaintiffs purchased their homes would not in any manner apply to the liability issue in the case and in particular any liability issue pertaining to acts resulting in physical damage to the property of the Budiman Plaintiffs. As such, allowing use of the extrinsic evidence of date of purchase to establish the earliest possible date the Budiman Plaintiffs could have suffered damage would not run afoul of the rule in the *GuideOne* and *Pine Oak* cases.

35.    In addition to the above, the parties have agreed to the use of the extrinsic evidence of the date of purchase for the limited purpose of establishing potential dates of loss which should hopefully overcome any objection or other problems associated with its use.

**E.     Defense Costs Should Be Apportioned Equally Across All Policies in Which a Claim Occurred**

36.     Because the Legend Defendants elected to have deductibles in the policies that have been triggered, the defense costs should be apportioned across all of the policies to ensure the Legend Defendants are required to pay their appropriate share of the defense costs which they assumed by electing to partially self-insure under the deductible scheme in the policies.  Defense costs can be apportioned across multiple policies when there is a reasonable means to do so.  *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Mineral Corp.,* 1 F.3d. 365 (5th Cir. 1993) .  In Gulf Chemical, Gulf was a defendant in a suit by 5000 plaintiffs that were exposed to a variety of chemicals at the Lone Star Steel plant.  Gulf's exposure in the lawsuit was based on the delivery of molyoxide to the plant.  Prior to 1985 the chemical was delivered by Gulf's predecessor who agreed to indemnify Gulf for any claims arising out of the pre-1985 delivery of the product.  Between 1985 and 1989 Gulf was insured by four separate insurance carriers.  The Court held the defense costs should be apportioned between the four carriers, Gulf's predecessor and Gulf to the extent that Gulf had uninsured exposure as a successor corporation.  *Id.* at 373.  The amount each would pay was not decided but the following factors were provided for the trial court to use when performing the apportionment calculation:

*Id.* at 373.

- The number of persons that sued Gulf and not merely those who recover;

- The dates of their alleged exposure; and

- The amount of effort required to defend Gulf against the claims.

37.     As recently as 2006, the right to have defense costs apportioned was recognized in *Nautilus Insurance Co. v. ABN-AMROMortgage Group, Inc.,* 2006 WL 3545034 (S.D. Tex.).  In that case, claims were alleged to have occurred both during the Nautilus policy period and during times when the insured was self-insured.  The court pointed out that Nautilus agreed to insure against losses occurring during its policy period and it would be unfair to make Nautilus assume responsibility for indemnity and defense of losses that could be readily identified as occurring outside of their period of coverage. In support of its decision the court cited *EEOC v. Southern Publishing Co.,* 894 F.2d 785, 790 (5th Cir. 1990) and *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* supra.  Similar reasoning was used in *Consolidated Edison Co. of New York v. FYN Paint & Lacquer Co., Inc., 2005 WL 139170 (E.D.N.Y)* in which the exposures were alleged to have occurred over multiple policy periods insured by multiple carriers.  The Court determined it would be unfair to saddle one carrier with all of the defense costs when the allegations clearly triggered the other policies.

38.     In the present case, the petitions do not state when the property damage is alleged to have occurred.  The parties have provided the Court with Exhibit 18 which is a list showing the dates when the various Budiman Plaintiffs closed on the sale of their homes.  According to that list, the sales closed during a time period running from the middle of 2002 to the middle of 2005.  The Mid-Continent policies periods cover the time from August 1, 2001 through August 1, 2005.  Beginning with the policy that commenced on August 1, 2002, the policies have deductibles that range from $5,000 per claim to $100,000 per occurrence.

39.     The Legend Defendants would clearly prefer to have the Court find that they are entitled to have all defense costs paid under the August 1, 2001 to August 1, 2002 policy which had no deductible.  To do so, the Court would have to ignore the fact that a significant number of the Budiman Plaintiffs could not have been injured during that policy period because their houses were not built until well after that policy expired and they did not own them until well after that policy expired.  For the reasons expressed in the cases cited above, it would be inequitable to "shoehorn" all of the defense costs into one policy when a method exists to apportion them across multiple triggered policies and thereby place the cost of the loss where the contractually agreed coverage belongs.

40.     Some courts have said that apportionment may not be necessary when the same insurance carrier has coverage for all of the relevant policy periods.  That would be true but for the deductibles in the Mid-Continent policies which must be applied separately to each claim or occurrence.  The Legend Defendants agreed to effectively self-insure a portion of each claim or occurrence.  Regardless of how the Court decides to apply the deductibles to the various claims asserted by the Budiman Plaintiffs, the Court should not allow the Legend Defendants to avoid their agreement to pay the first $100,000 of defense and indemnity costs for each occurrence that could only have taken place during the August 1, 2004 to August 1, 2005 policy period by imposing the obligation to pay all defense costs on an earlier policy that has no relationship to the loss. This approach was rejected as being not only improper but unfair in both *Olin Corp. v. Insurance Co. of North America,* 221 F.3d 307 (2nd Cir. 2000) and *Prudential Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.,* 158 F3d 65 (2nd Cir. 1998).

41.    The Court should clearly apportion the losses by attributing the defense costs associated with the claims of each Budiman Plaintiff to the policy in force when the sale of that home occurred since that is the earliest possible date any particular Budiman Plaintiff could have suffered damage.  This is consistent with the ruling in the *Gulf Chemical* case which states that defense costs should be apportioned when there is a logical means to do so.  The Court could either apportion the costs equally to each of the triggered policies or could more appropriately apportion based on a percentage derived by dividing the number of claims during the policy period by the total number of claims in the Budiman Lawsuit.  The latter would be a more accurate reflection of the defense costs that should be attributable to a particular policy since it is logical that each claim should require approximately the same amount of time and expense to defend.

**F.     Equal Apportionment Across Policies**

42.    Based on the dates in Joint Exhibit 18, the sales of the homes to the Budiman Plaintiffs closed during a time period that implicated coverage on four out of five of the Mid-Continent policies.  The closings occurred as follows:

| | |
|---|---|
| 8/01/01 to 8/01/02 Policy | 5 closings |
| 8/01/02 to 8/01/03 Policy | 22 closings |
| 8/01/03 to 8/01/04 Policy | 26 closings |
| 8/01/04 to 8/01/05 Policy | 17 closings. |

If the total fees that are eventually awarded to the Legend Defendants is $600,000[1], each of the above policies would be responsible for $150,000 of the fees before application of the deductibles for that policy period.  Because there is no deductible for the 8/01/01 to

---

[1] The $600,000 figure is hypothetical and not intended to represent the amount of fees that the Legend Plaintiffs are entitled to.

8/01/02 Policy, the Legend Plaintiffs would be entitled to the full $150,000. The 8/01/02

to 8/01/03 Policy contains a $5,000 per claim deductible and since there were 20 closings

during that policy period, 22 deductibles should be applied for a total deductible of

$110,000. The Legend Plaintiffs would be entitled to $40,000 for the fees incurred

($150,000 minus the $110,000 total deductible). Because there were 26 closings during

the 8/01/03 to 8/01/04 Policy, 26 separate deductibles should be applied which would

completely consume the $150,000 due for that policy period resulting in an award of $0

for that policy period. Finally the 17 closings during the 8/01/04 to 8/01/05 policy period

would result in 17 separate $100,000 deductibles and would once again result in complete

consumption of the $150,000 in fees for that policy period.

**G.     Apportionment Based on Number of Closings During the Policy**

43.     If the Court determines that defense costs should be apportioned to the

policies based on the number of closings during the respective policy period, the

percentages would be as follows:

| | | |
|---|---|---|
| 8/01/01 to 8/01/02 Policy | 5/70 of the closings | 7% |
| 8/01/02 to 8/01/03 Policy | 22/70 closings | 32% |
| 8/01/03 to 8/01/04 Policy | 26/70 closings | 37% |
| 8/01/04 to 8/01/05 Policy | 17/70 closings | 24% |

Assuming the hypothetical $600,000 in fees, 7% of that amount would be attributable to

the 8/01/01 to 8/01/02 Policy or $42,000. Since none of this figure would be subject to

deductibles, the Legend Plaintiffs would be entitled to that full amount. 32% of the total

fees ($192,000) would be attributed to the 8/01/02 to 8/01/03 Policy and the 22

deductibles in the amount of $5,000 (for a total of $110,000) would be subtracted from

that amount leaving $82,000 due to the Legend Plaintiffs.  The application of 26 deductibles in the amount of $50,000 and 17 deductibles in the amount $100,000 to the 8/01/03 to 8/01/04 and 8/01/04 to 8/01/05 Polices, respectively would once again consume the entire amount of fees attributable to those policies and nothing would be owed to the Legend Plaintiffs for those policy periods.

44.     The above examples are being provided to allow the Court to visualize how the deductibles would be applied if the Court determines that each claim by a Budiman Plaintiff is both a separate claim and a separate occurrence triggering a separate deductible under the policies for each Budiman Plaintiff.

**H.     Conclusion and Relief Sought**

45.     Mid-Continent Casualty Company asks the Court to enter an order granting its summary judgment and is so doing find that there was no duty to defend the Legend Defendants in the Budiman Lawsuit after July 24, 2007, the date that the Eighth Amended Petition was filed and further finding that each claim by the individual Budiman Plaintiffs constituted both a separate claim and a separate occurrence and is subject to a separate deductible as provided in the policy during which each such claim arose.

Respectfully submitted,
**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

_____
Christopher W. Martin
Texas State Bar No. 13057620
Federal I.D. 13515
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile
ATTORNEY-IN-CHARGE FOR PLAINTIFF,
MID-CONTINENT CASUALTY COMPANY

OF COUNSEL:
Robert G. Dees
Texas State Bar No. 05716430
Federal I.D. 13899
Todd Lonergan
Texas State Bar No. 12513700
Federal I.D. 7769
808 Travis, Suite 1800
Houston, Texas  77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been served by certified mail, on this the 27 day of March, 2009 to:

Mr. Lee H. Shidlofsky
Visser Shidlofsky, LLP
7200 N. Mopac Expressway, Suite 430
Austin, Texas  78731

_____
Todd Lonergan