**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY** | § | |
| **COMPANY** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:08-cv-00021** |
| | § | |
| | § | |
| **ACADEMY DEVELOPMENT, INC.,** | § | |
| **CHELSEA HARBOUR, LTD., LEGEND** | § | |
| **CLASSIC HOMES, LTD., AND** | § | |
| **LEGEND HOME CORPORATION** | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Lee H. Shidlofsky
Texas Bar No. 24002937
Southern District No. 22026
Melissa L. Kelly
Texas Bar No. 24055766
Southern District No. 685892

VISSER SHIDLOFSKY LLP
7200 N. Mopac Expressway
Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 (fax)
Lee@vsfirm.com

## TABLE OF CONTENTS

I.    **SUMMARY OF THE ARGUMENT** ...............................................................1

II.   **ARGUMENT AND AUTHORITIES** .........................................................2

    A.    **Allegations of Damages "Because of Property Damage" in the Ninth, Tenth and Eleventh Amended Petitions in the Budiman Lawsuit Invoke Mid-Continent's Defense Obligation.**..........................................................2

    B.    **Number of Claims and Occurrences.** ..............................................5

    C.    **Use of Extrinsic Evidence in the Determination of the Duty to Defend.**..........8

    D.    **Defense Costs Need Not Be Allocated Among the Consecutively Triggered Policies.**..........................................................................9

    E.    **If Defense Costs Are Pro Rated, Deductibles Should Be As Well.** .................14

III.  **CONCLUSION**..................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*American Physicians Insurance Exchange v. Garcia,*
876 S.W.2d 842 (Tex. 1994) ...........................................................................6

*Boss Management Services v. Acceptance Insurance Co.,*
2007 WL 2752700 (S.D. Tex. Sept. 19, 2007)...........................................8

*Clemtex, Inc. v. Southeastern Fidelity Insurance Co.,*
807 F.2d 1271 (5th Cir. 1987) ......................................................................14

*Consolidated Edison Co. of New York v. FYN Paint & Lacquer Co., Inc.,*
2005 WL 139170 (E.D. N.Y. 2005)...........................................................10

*Don's Building Supply, Inc. v. OneBeacon Insurance Co.,*
267 S.W.3d 20 (Tex. 2008) ...........................................................................5

*E.I. du Pont v. Admiral Insurance Co.,*
1995 WL 654020 (Del. Super. Ct. 1995) ...................................................14

*Gehan Homes, Ltd. v. Employers Mutual Casualty Co.,*
146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied) ........................9

*Goose Creek Consolidated I.S.D. v. Continental Casualty Co.,*
658 S.W.2d 338 (Tex. App.—Houston [1st Dist.] 1983, no writ) ...........7

*Guaranty National Insurance Co. v. Azrock,*
211 F.3d 239 (5th Cir. 2000) ......................................................................10

*H.E. Butt Grocery Co. v. National Union Fire Insurance Co.,*
150 F.3d 526 (5th Cir. 1998) ........................................................................7

*Hartford Casualty Co. v. Cruse,*
938 F.2d 601 (5th Cir. 1991) ........................................................................4

*Home Assurance Co. v. Libbey-Owens-Ford Co.,*
786 F.2d 22 (1st Cir. 1986) ...........................................................................4

*Insurance Corp. of Hannover v. Skanska USA Building, Inc.,*
2008 WL 2705654 (S.D. Tex. July 3, 2008) .............................................8

*Keene Corp. v. Insurance Co. of North America,*
667 F.2d 1034 (D.C. Cir. 1981)..................................................................10

*Lafarge Corp. v. Hartford Casualty Insurance Co.,*
61 F.3d 389 (5th Cir. 1995) ........................................................................14

*Lamar Homes v. Mid-Continent Casualty Co.*,
    242 S.W.3d 1 (Tex. 2007). ..................................................................................4

*Lennar Corp. v. Great American Insurance Co.*,
    200 S.W.3d 651 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ...................7

*Lincoln Electric Co. v. St. Paul Fire & Marine Insurance Co.*,
    210 F.3d 672 (6th Cir. 2000) ...............................................................................14

*Mid-Continent Casualty Company v. Hollimon Oil Corp., et al.*,
    Civil Action No. SA-05-CA-1164-WWJ, (W.D. Tex. June 25, 2007)......................3

*National Union Fire Insurance Co. v. Crocker*,
    246 S.W.3d 603, 606 (Tex. 2008)..........................................................................3

*Nationwide Mutual Insurance Co. v. Lafarge Corp.*,
    910 F. Supp. 1104 (D. Md. 1996)........................................................................14

*Nautilus Insurance Co. v. ABN-AMRO Mortgage Group, Inc.*,
    2006 WL 3545034 (S.D. Tex. Dec. 8, 2006) ....................................................4, 10

*Olin Corp. v. Insurance Co. of North America*,
    221 F.3d 307 (2nd Cir. 2000) ..............................................................................12

*Peco Energy Co. v. Boden*,
    64 F.3d 852 (3rd Cir. 1995).................................................................................14

*Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co.*,
    ---S.W.3d---, 2009 WL 353526, at *3–4 (Tex. 2009)...............................................8

*Prudential Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity
    Association, Inc.*, 158 F.3d 65 (2nd Cir. 1998) ....................................................12

*Riley Stoker Corp. v. Fidelity & Guaranty Insurance Underwriters, Inc.*,
    26 F.3d 581 (5th Cir. 1994)...................................................................................4

*RLI Insurance Co. v. Philadelphia Indemnity Insurance Co.*,
    421 F. Supp. 2d 956 (N.D. Tex. 2006)..................................................................10

*Texas Property & Casualty Insurance Guaranty Ass'n v. Southwest Aggregates, Inc.*,
    982 S.W.2d 600 (Tex. App.—Austin 1998, no pet.) ..........................................6, 10

*Travelers Insurance Co. v. Penda Corp.*,
    974 F.2d 823 (7th Cir. 1992)..................................................................................4

*Union Insurance Co. v. Don's Building Supply, Inc.*,
    266 S.W.3d 592 (Tex. App.—Dallas 2008, pet. filed) ............................................9

*Zurich American Insurance Co. v. Nokia, Inc.*,
   268 S.W.3d 487, 496 (Tex. 2008)..................................................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY COMPANY** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **CAUSE NO. 4:08-cv-00021** |
| **ACADEMY DEVELOPMENT, INC., CHELSEA HARBOUR, LTD., LEGEND CLASSIC HOMES, LTD., AND LEGEND HOME CORPORATION** | § § § § § | |
| *Defendants.* | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation (collectively, "Academy"), Defendants herein, file this Response to Mid-Continent Casualty Company's Motion for Partial Summary Judgment ("Mid-Continent's Motion") and would respectfully show the following:

## I.
## SUMMARY OF THE ARGUMENT

Mid-Continent's Motion is premised on two grounds: (i) no duty to defend exists after the filing of the Ninth Amended Petition; and (ii) the defense costs incurred by Academy in the Underlying Lawsuit must be allocated—either on a pro-rata or equal shares basis—among its consecutively issued policies.[1] Both arguments fail as a matter of law.

---

[1] The "Underlying Lawsuit" refers to: Cause No. 05-CV-142846; *Linda Budiman, et al. v. Legend Classic Homes, Ltd., et al.*; in the 268th Judicial District Court of Fort Bend County, Texas. Academy prevailed in the Underlying Lawsuit; however, a notice of appeal was filed on April 9, 2009. Still, only the duty to defend is before the Court.

Mid-Continent's first argument entirely is premised on the fact that, starting with the Ninth Amended Petition, the Budiman Plaintiffs removed any specific allegations of damage to their individual homes. Even so, the Ninth Amended Petition and subsequent petitions still sought damages for "repair" costs and continued to allege physical damages to the lakes. The CGL policy *does not* require that the claimants own the allegedly damaged property. Rather, all that is required is that an insured be sued for damages *because of* "property damage." Since allegations of physical injury to tangible property remained in the pleadings through the time of trial, Mid-Continent had a continuing duty to defend.[2]

Mid-Continent's second argument requires this Court to create new law. In particular, contrary to existing case law, this Court would have to conclude that Texas permits pro-rata allocation of defense costs among consecutively triggered policies. Moreover, in requesting that this Court adopt a pro-rata allocation method for the *duty to defend*, Mid-Continent asks this Court to ignore the fact that *each* triggered policy owes a complete defense. Mid-Continent's request is fueled by its desire to charge Academy multiple deductibles that would, in effect, make its defense obligation negligible. Further, even if pro-rata allocation was appropriate, Mid-Continent ignores the fact that the same principle should apply to the application of deductibles.

## II.
## ARGUMENTS AND AUTHORITIES

**A.**   **Allegations of Damages "Because of Property Damage" in the Ninth, Tenth and Eleventh Amended Petitions in the Budiman Lawsuit Invoke Mid-Continent's Defense Obligation.**

In its Motion for Partial Summary Judgment, Mid-Continent Casualty Company ("Mid-Continent") contends that "[t]he Budiman Plaintiff's have not alleged in the Ninth through

---

[2] Mid-Continent does not dispute that it owed a duty to defend from the Original Petition through the Eighth Amended Petition.

Eleventh Amended Petitions they have suffered 'property damage' and have therefore not met the first requirement for coverage under the Mid-Continent policies."[3] Mid-Continent's interpretation, however, injects a requirement that *the claimant* own the physically damaged property when no such requirement exists under the terms of the policy. The policy language must be given its plain meaning—without inserting terms or requirements that simply do not exist.[4]

Under the insuring agreement of the Mid-Continent policies, the insurer contracted to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[5] The insuring agreement is satisfied as long as the "property damage" is caused by an "occurrence" and as long as the "property damage" occurs during the policy period.[6] "Property damage" is defined by the Mid-Continent policies, in part, as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured."[7]

Accordingly, by its express terms, all that is required to satisfy the "property damage" requirement of the Mid-Continent policies is to allege some physical injury to or loss of use of tangible property. In *Mid-Continent Casualty Co. v. Hollimon Oil Corp., et al.*, the district court interpreted the identical definition of "property damage" and held that it did not make Mid-Continent's duty to defend contingent on ownership of the property alleged to be damaged.[8] Here, as in *Hollimon*, there is no requirement that the Budiman Plaintiffs allege that their homes

---

[3] *See* Pl.'s Mot. for Partial Summ. J., at para. 17 (Dkt. 37).
[4] *See Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008).
[5] *See* **Joint Exhibit 13 at 00007**. This provision is the same in all of the Mid-Continent policies. In fact, unless otherwise specified, the terms of the Mid-Continent policies are identical or any differences are immaterial to the issues before this Court. Accordingly, all references to the same policy language will be to **Joint Exhibit 13**.
[6] *Id.*
[7] *See* **Joint Exhibit 13 at 00019**.
[8] *See Mid-Continent Casualty Company v. Hollimon Oil Corp., et al.*,Civil Action No. SA-05-CA-1164-WWJ, slip op. at 6 (W.D. Tex. June 25, 2007) (attached hereto as **Exhibit A**).

actually suffer physical injury. Rather, all that is required is that the Budiman Plaintiffs allege damages *because of* "property damage."[9] And, in fact, the Supreme Court of Texas has specifically held that it is improper to read in requirements to the "property damage" definition that simply do not exist.[10]

Here, the Ninth, Tenth and Eleventh Amended Petitions contain allegations of damage to the walls of the lake—"physical injury to tangible property."[11] Likewise, there are numerous allegations of diminution to the Budiman Plaintiffs' properties as a result of the leaking lake.[12] Further, the Budiman Plaintiffs sought recovery for repair costs *and* diminution in value to their property.[13] Under the terms of the policies, once "property damage" has been established, the Mid-Continent policies also cover economic losses that flow because of the "property damage."[14] The repair costs are directly tied to allegations of physical injury to tangible property. Moreover, while diminution in value—in and of itself—may be a purely economic loss, it nevertheless constitutes damages *because of* "property damage" when it is tied to physical injury

---

[9] *Id.* at 6–7; *See also Travelers Ins. Co. v. Penda Corp.*, 974 F.2d 823, 830 (7th Cir. 1992) (rejecting an insurer's attempt to deny coverage because the damaged property was not owned by the underlying claimant where "[t]he policy in question . . . does not state that it applies only to damage to property owned by the plaintiff in the underlying action.")

[10] *See Lamar Homes v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 15 (Tex. 2007).

[11] In its Motion for Partial Summary Judgment, Mid-Continent makes an argument that there was no loss of use of the lake and thus no "property damage" under the terms of the policies. *See* Pl.'s Mot. for Partial Summ. J., at para. 20 (Dkt. 37). Academy has never asserted that the "property damage" in this case arises from allegations by the Budiman Plaintiffs regarding loss of use. Rather, Academy contends that the underlying pleadings allege physical damages (i.e., breaking apart of lake walls). Likewise, contrary to Mid-Continent's contention, Academy does not contend that allegations of potential future harm constitute "property damage." It is clear that the Budiman Plaintiffs allege ongoing physical damages.

[12] *See* **Joint Exhibits 10–12 at ¶¶ 27 & 47.**

[13] *See* **Joint Exhibits 10–12 at ¶ 47.**

[14] *Riley Stoker Corp. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 26 F.3d 581 (5th Cir. 1994) (finding coverage for consequential economic losses arising from property damage); *Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604 (5th Cir. 1991) (holding that home owners who alleged that the insured caused property damage could recover for the resulting diminution of the house's market value); *Home Assurance Co. v. Libbey-Owens-Ford Co.*, 786 F.2d 22 (1st Cir. 1986) (finding coverage for consequential losses stemming from physical injury to windows even though no coverage existed for the repair and replacement of the windows themselves); *see also Nautilus Ins. Co. v. ABN-AMRO Mortgage Group, Inc.*, 2006 WL 3545034 (S.D. Tex. Dec. 8, 2006) ("The plain meaning of the [because of] provision is that all damages caused by 'property damage' are covered by the policy . . . .")

to tangible property. The Ninth, Tenth and Eleventh Amended Petitions in the Underlying Lawsuit, therefore, allege "damages because of . . . 'property damage' to which this insurance applies" and thus satisfy the "property damage" requirement of the Mid-Continent policies. Consequently, the filing of the Ninth Amended Petition (and the subsequent petitions) did not alter Mid-Continent's defense obligation under the terms of the Mid-Continent policies.

Besides incorrectly arguing that the Budiman Plaintiffs must *own* the allegedly damaged property, Mid-Continent relies on a series of cases in which courts have considered the ownership rights of condominium and townhome associations.[15] In doing so, Mid-Continent confuses *liability* defenses with *coverage* defenses. The cases that Mid-Continent cite may very well be accurate, but they have nothing at all to do with insurance coverage and certainly do not even purport to construe the term "property damage" in the context of a CGL policy. Mid-Continent unsuccessfully tried this exact tactic in *Lamar Homes* by contending that "economic loss rule" cases were applicable in determining what constitutes "property damage" under a CGL policy. The Supreme Court of Texas correctly recognized the distinction between *liability* defenses and *coverage* defenses and applied the "property damage" definition as written.[16]

## B.     Number of Claims and Occurrences.

Mid-Continent alleges that each Budiman Plaintiff asserting a claim in the Underlying Lawsuit constitutes a separate "claim" for purposes of the per-claim deductible applicable under the 2002–2003 Mid-Continent Policy.[17] Mid-Continent further asserts that each Budiman Plaintiff asserting a claim constitutes a separate occurrence for purposes of the per-occurrence

---

[15] *See* Pl.'s Mot. for Partial Summ. J. at para. 18 (Dkt. 37).
[16] *See Lamar Homes*, 242 S.W.3d at 12; *see also Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 32 (Tex. 2008) (rejecting application of a statute of limitations defense in the trigger of coverage analysis).
[17] *See* Pl.'s Mot. for Partial Summ. J., at para. 25-28 (Dkt. 37).

deductible applicable under the 2003–2004 and 2004–2005 Mid-Continent policies.[18] At the outset, it should be noted that any inquiry into the number of claims or occurrences is irrelevant *unless* this Court first concludes that Mid-Continent is entitled to some form of pro-rata allocation of defense costs. Stated otherwise, if the Court agrees with Academy's view—as well as with the established precedent—that each policy owes a complete defense and that Academy can choose from among the triggered policies to provide a defense, the whole "number of occurrences / number of claims" issue becomes moot.[19] As discussed *infra*, no support exists for a pro-rata allocation of defense costs and, even if it did, a pro-rata allocation theory should not apply when there is only one insurer on the risk for the entire period and the only basis for allocation is to charge deductibles.[20] Accordingly, this Court should deny Mid-Continent's Motion for Partial Summary Judgment on these issues.

Academy agrees that, should the Court find that Academy is not owed a complete defense under the policy of its choice, each household constitutes a claim in those policies that have a "per claim" deductible. It is not clear in the briefing whether Mid-Continent is taking the position that each household constitutes a claim or each individual constitutes a claim (i.e., that is a husband and wife owning one house have <u>two</u> claims instead of one). Mid-Continent—throughout this litigation—has treated each household as a unit, which is consistent with the fact that the Budiman Plaintiffs sought damages on a per household basis.[21] Further, in its example calculations, Mid-Continent uses the number of households to calculate apportionment.[22]

---

[18] *See* Pl.'s Mot. for Partial Summ. J., at para. 29–32 (Dkt. 37).

[19] The first two Mid-Continent policies have "per claim" deductibles that *do not* apply to defense costs. *See* Def.'s Mot for Partial Summ. J., at para. 2 (Dkt. 35) (the arguments and authority contained in Academy's Motion for Partial Summary Judgment are incorporated herein for all purposes).

[20] *See Am. Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994); *Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600 (Tex. App.—Austin 1998, no pet.).

[21] *See, e.g.,* **Joint Exhibit 9 at 00004.**

[22] *See* Pl.'s Mot. for Partial Summ. J., at para. 42–44 (Dkt. 37).

Likewise, and again assuming that this analysis even is necessary, Mid-Continent is correct that Texas applies a form of the "cause" theory to determine the number of occurrences.[23] Under the "cause" theory, there is only one occurrence where there was but one proximate, uninterrupted, and continuing cause that resulted in all of the injuries and damage even though several discrete items of damage resulted.[24] The proper focus is on the events that caused the injuries that give rise to the insured's liability rather than the number of injurious effects.[25] Mid-Continent asserts that the Budiman Plaintiffs "would not have been injured by the alleged defective condition of the lake caused by its initial construction and subsequent repairs if they had not purchased their homes."[26] Mid-Continent misconstrues the Budiman Plaintiff's allegations and fails to recognize the true "cause" of the "property damage" for which Academy was allegedly responsible.[27]

Unlike in *Lennar*, a case relied on by Mid-Continent, Academy was not sued by the Budiman Plaintiffs because Academy performed some act of faulty workmanship on each of the individual homes.[28] Rather, the breaking apart of the lake walls and subsequent leaching of water onto the Budiman Plaintiffs' properties gave rise to the injuries alleged in the Underlying Lawsuit. Stated otherwise, the alleged <u>damage</u> to all of the homes was caused by the <u>continued and repeated exposure</u> to the water seeping from the lake walls. Nothing was applied to each home as in *Lennar* and the same water seepage from the lake walls caused the alleged damages

---

[23] Academy notes that the Fifth Circuit oftentimes describes the test as a "liability-triggering event" test. *See H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co.*, 150 F.3d 526, 535 (5th Cir. 1998) (Benavides, J., concurring).

[24] *See Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 682 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Goose Creek Consol. I.S.D. v. Continental Cas. Co.*, 658 S.W.2d 338 (Tex. App.—Houston [1st Dist.] 1983, no writ).

[25] *H.E. Butt*, 150 F.3d at 530.

[26] *See* Pl.'s Mot. for Partial Summ. J., at para. 32 (Dkt. 37).

[27] Moreover, since Academy was exonerated in the Underlying Lawsuit, it is difficult to comprehend how there could be multiple "causes" or "liability-triggering events."

[28] *See generally Lennar Corp.*, 200 S.W.3d 651.

to each of the Budiman Plaintiffs. The court in *Lennar* was careful to note that "Lennar was not the designer or the manufacturer of the EIFS."[29] Accordingly, in the event the Court deems it necessary to even undertake a number of occurrences analysis, Academy contends that all of the alleged damages stem from a single cause—water seepage from the lake walls. Even Mid-Continent points out that the lake was alleged to be the "centerpiece" of the development.[30]

## C.     Use of Extrinsic Evidence in the Determination of the Duty to Defend.

In its Motion for Partial Summary Judgment, Mid-Continent seeks to introduce extrinsic evidence to show the dates the Budiman Plaintiffs purchased their homes. At the outset, it should be noted that Academy disputes Mid-Continent's contention that "the parties have agreed to the use of extrinsic evidence of the date of purchase for the limited purpose of establishing potential dates of loss . . . ."[31] While it is true that Academy agreed that the chart attached to **Joint Exhibit 18** reflects the actual sale dates of the homes, Academy only agreed that the chart "can be used by the Court, *if it so chooses*, in determining the date of loss for application of deductibles.[32] To date, the Supreme Court of Texas has not recognized an exception to the "eight-corners" rule.[33] Apparently, Mid-Continent resorts to extrinsic evidence because of its contention that Academy must demonstrate *ownership* of the homes in order to establish "property damage." As discussed, however, ownership of the injured property during the policy period is not required in order to

---

[29] *Id.* at 682.  Here, Academy's liability is more akin to that of a manufacturer or designer.

[30] *See* Pl.'s Mot. for Partial Summ. J., at para. 3 (Dkt. 37).

[31] *See* Pl.'s Mot. for Partial Summ. J., at para. 35 (Dkt. 37).

[32] **Joint Exhibit 18 at ¶ 5 (emphasis added).**

[33] *See Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co.*, ---S.W.3d---, 2009 WL 353526, at *3–4 (Tex. 2009). Even so, should this Court determine that extrinsic evidence is necessary to determine the duty to defend, Academy agrees that the closing dates in the chart are undisputed "coverage only" facts that do not overlap with the underlying facts. As such, and again assuming the Court deems it necessary to review extrinsic evidence, the chart represents the very type of extrinsic evidence that the Court has hinted may be permissible. *See Boss Mgmt. Servs. v. Acceptance Ins. Co.*, 2007 WL 2752700, *11–*12 (S.D. Tex. Sept. 19, 2007); *see also Insurance Corp. of Hannover v. Skanska USA Building, Inc.,* 2008 WL 2705654 (S.D. Tex. July 3, 2008).

satisfy the "property damage" definition.[34] It is enough that Academy was being sued for damages *because of* "property damage."

Moreover, contrary to Mid-Continent's position, the underlying pleadings are not date-deprived.[35] Accordingly, Academy does not believe that resorting to extrinsic evidence is *necessary* in order for the Court to conclude that all of the consecutively issued Mid-Continent policies are potentially triggered.[36] More specifically, while pinpoint dates are not contained within every pleading, there are sufficient date allegations in each pleading to create a *potential* for coverage and thus a duty to defend in each of the consecutively-issued Mid-Continent policies.[37]

## D.   Defense Costs Need Not Be Allocated Among the Consecutively Triggered Policies.

Contrary to Mid-Continent's contention, the costs incurred by Academy to defend the Underlying Lawsuit need not be allocated or apportioned among the consecutively triggered policy periods—regardless of the number of claims or occurrences. Simply put, Texas law does not support a pro-rata allocation theory. In addition, even the cases cited by Mid-Continent do not support pro-rata allocation or apportionment when the *same* insurer is on the risk for the

---

[34] *Compare*  Pl.'s Mot. for Partial Summ. J., at para. 34 (Dkt. 37), *with Union Ins. Co. v. Don's Building Supply, Inc.*, 266 S.W.3d 592, 595–96 (Tex. App.—Dallas 2008, pet. denied). Likewise, the fact that a pleading contains over-inclusive allegations—including allegations that would take certain plaintiffs out of coverage under a particular policy—does not defeat the duty to defend. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 496 (Tex. 2008) ("Over-inclusive allegations do not negate the duty to defend; the duty applies if there is a possibility that *any* of the claims might be covered.").

[35] Some of the pleadings contain specific allegations as to the sale dates. *See* **Joint Exhibits 3 – 5 at ¶ 11.**  Other pleadings reference an earlier lawsuit in 2002. *See* **Joint Exhibits 6 – 12 at ¶¶ 19 or 20.** And, although the earliest sale date set forth in a pleading is June 21, 2002, the pleadings also allege that Academy knew about the issues *prior* to the sale of the homes. *See, e.g.,* **Joint Exhibit 10 at ¶ 20.**  Likewise, the pleadings allege "that the condition of the Lakes has in the past, and continues, to cause damage . . . ." **Joint Exhibits  10–12 at ¶ 27.**

[36] *See* Academy's Mot. for Partial Summ. J., at 14–16 (Dkt. 35) (incorporated herein for all purposes).

[37] *See Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 845-46 (Tex. App.—Dallas 2004, pet. denied) (holding an allegation of "past" damages was sufficient to trigger multiple policies). The burden should not be on the insured to conclusively show that the underlying allegations claimed damage that conclusively occurred within the policy period. *See Boss Mgmt. Servs., Inc. v. Acceptance Ins. Co.*, 2007 WL 2752700 at *12 n.68.

entire period of time. Here, it is wholly undisputed that Mid-Continent insured Academy for the entirety of the relevant period without any lapse of coverage.

Mid-Continent principally relies on *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Mineral Corp.* to support its assertion that the defense costs should be apportioned among the policies.[38] *Gulf Chemical* is easily distinguishable from the instant case because it involved four separate insurance carriers, Gulf's indemnification by its predecessor, and self-insured periods. Further, *Gulf Chemical* was decided before *Southwest Aggregates*,[39] a fact that was recognized by the Fifth Circuit in *Azrock*.[40] Courts applying Texas law subsequent to *Gulf Chemical* have recognized that Texas does not follow pro-rata allocation.[41] Importantly, just one year after *Gulf Chemical* was issued, the Supreme Court of Texas specifically rejected the *Forty-Eight Insulations* case upon which the *Gulf Chemical* Court relied on in making its decision and instead adopted *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981).[42]

Mid-Continent also cites to *Nautilus Insurance Co. v. ABN-AMRO Mortgage Group, Inc.,* which relied on *Forty-Eight Insulations*, *Gulf Chemical*, and some earlier decisions from the Fifth Circuit.[43] Notably, the *Nautilus* court never concluded that allocation was in fact proper.[44] Mid-Continent next relies upon *Consolidated Edison Co. of New York v. FYN Paint & Lacquer*

---

[38] 1 F.3d 365 (5th Cir. 1993).
[39] *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 605 (Tex. App.—Austin 1998, no pet.).
[40] *Guar. Nat'l Ins. Co. v. Azrock*, 211 F.3d 239, 252 n.55 (5th Cir. 2000) (noting that Texas law does not require pro-rata allocation of defense costs)
[41] *See, e.g. id.*; *RLI Ins. Co. v. Philadelphia Indem. Ins. Co.*, 421 F. Supp. 2d 956, 964–65 (N.D. Tex. 2006) (making an *Erie* guess that the Supreme Court of Texas would not adopt a pro-rata allocation rule to determine policy limits where policy periods overlapped since the court had already adopted the *Keene* approach where policy periods did not overlap in *Garcia*).
[42] *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994)
[43] *Nautilus Ins. Co.*, 2006 WL 3545034 at *11.
[44] *Id.*

*Co., Inc.*, a New York case where multiple insurers were on the risk.[45] As Mid-Continent points out, the court's opinion rested on the fact that it would be unfair for one insurer to bear all of the defense costs when more than one policy *and more than one carrier* is triggered by the allegations. That is not the case here as no question exists that Mid-Continent is the only insurer obligated to bear the defense costs of the Underlying Lawsuit.

Mid-Continent attempts to curb Academy's invocation of a complete defense as provided for by the terms of the policies by asserting that "a significant number of the Budiman Plaintiffs could not have been injured during [the 2001–2002] policy period because their houses were not built until well after that policy expired and they did not own them until well after that policy expired."[46] There is no allegation in the pleadings with regard to the date the homes were actually built, nor any indication that the homes were not pre-constructed at the time of the closings. In fact, the Budiman Plaintiffs allege that they were attracted to the "beautiful lakes and homes" at Chelsea Harbour when they visited the subdivision prior to purchase.[47]

Further, Mid-Continent's argument that "it would be inequitable to 'shoehorn' all of the defense costs into one policy" that is unrelated to the loss for those "occurrences" that could only have taken place after the earlier 2001–2002 policy period misstates the circumstances of the instant case.[48] First, as discussed, there was only one occurrence. Second, given the allegations that the lake leaked from the time of its initial construction, the 2001–2002 policy period (or 2000–2001 policy period for that matter) cannot be deemed to have "no relationship to the loss." Finally, as discussed *supra*, ownership of the injured property during the policy period is not required to maintain a claim for damages under the Mid-Continent policies. The allegations in

---

[45] 2005 WL 139170 (E.D. N.Y. 2005).
[46] *See* Pl.'s Mot. for Partial Summ. J., at para. 39 (Dkt. 37).
[47] *See, e.g.*, **Joint Exhibits 6 – 11 at ¶17 or ¶18.**
[48] *See* Pl.'s Mot. for Partial Summ. J., at para. 39–40 (Dkt. 37).

the Underlying Pleadings triggered all of the consecutively triggered Mid-Continent policies and, under *Southwest Aggregates* and the cases that follow it, each policy owes a complete defense even if the claim partially falls within and partially outside of the particular policy period.[49]

Mid-Continent contends that Academy's approach was rejected as improper and unfair by *Olin Corp. v. Insurance Co. of North America*, 221 F.3d 307 (2nd Cir. 2000) and *Prudential Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.*, 158 F.3d 65 (2nd Cir. 1998).[50] Mid-Continent's reliance on these Second Circuit cases, however, is misplaced. In *Olin*, the court's reasoning rested on the large number of insurers, stating "where the policies triggered are provided by multiple insurers, allocation avoids saddling one insurer with the full loss . . ."[51] The *Olin* court also was concerned about the insured receiving a windfall for periods of self-insurance where the insured paid no premiums.[52] The court went on to note:

> Where the triggered policies were obtained from a single insurer and there is no period of self-insurance with which to deal, the joint and several approach may be appropriate because there is little or no threat of future litigation seeking contribution. . . . The concern that one insurer may wind up incurring all of the loss while it in fact only underwrote a small portion of the risk is also absent. The joint and several approach can be applied in these situations without concern that the insured will in effect obtain coverage for a period for which it paid no premium. And applying the joint and several approach avoids the (probably unintended) effect of multiplying the deductibles applicable to each claim. Because under the joint and several approach, the insured collects under only one policy, it need worry only about paying the deductible for the single policy on which it elects to collect.[53]

---

[49] *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600 (Tex. App.—Austin 1998, no pet.). The recent opinion in *Nokia*—although not an allocation case—also supports this view. *See Nokia*, 268 S.W.3d at 496.
[50] *See* Pl.'s Mot. for Partial Summ. J., at para. 40 (Dkt. 37) (relying also on *Consolidated Edison Co.*). It is wholly unclear as to how two 2nd Circuit cases and a New York District Court case have any bearing on Texas law.
[51] *Olin*, 221 F.3d at 323.
[52] *Id.* at 324.
[53] *Id.* (internal citations and quotations omitted).

Here, the facts fall squarely within the *Olin* court's discussion quoted above since the triggered policies were only obtained from Mid-Continent and Academy was never self-insured during the relevant period.

In *Prudential Lines*, the insured had insurance coverage from American Club in each of the policy periods implicated by the claims and had no self-insured periods.[54] And, for virtually the entire span of years, American Club was the only insurer.[55] The *Prudential Lines* Court concluded that:

> [T]he policy does not demonstrate a clear intent to allocate a policyholder's claim among policies in the first instance and that no contract or equitable consideration militates in favor of such allocation under the circumstances of this case. The chief effect of such allocation in this case would be a multiplication of the deductibles applicable to each claim. We conclude that Prudential is within its contractual rights to designate one policy to pay all of any claim covered by that policy subject of course to exhaustion of the policy limits.[56]

The *Prudential Lines* Court also specifically declined to allocate liability among the American Club policies when the only consequence of such allocation would be to multiply the deductibles applicable to each claim.[57]

Simply put, Mid-Continent has not cited to a single case in which a court applied a pro-rata allocation of defense costs when only one insurer provided continuous coverage during the relevant time period. And, in fact, Mid-Continent admits that "[s]ome courts have said that apportionment may not be necessary when the same insurance carrier has coverage for all of the relevant policy periods."[58] Instead, while wholly ignoring the fact that Texas law rejects pro-rata

---

[54] 158 F.3d at 85.
[55] *Id.* at 85. The *Prudential Lines* Court noted that during the 1971–1974 period, there was another insurer on the risk, but that there was an understanding among the insureds and insurers providing for the allocation of loss among themselves.
[56] *Id.* at 83.
[57] *Id.* at 86.
[58] Pl.'s Mot. for Partial Summ. J., at para. 40 (Dkt. 37).

allocation, Mid-Continent cites to two opinions from the Second Circuit that do not even support the very position that Mid-Continent proffers in the instant case. And, in doing so, Mid-Continent falsely equates "deductibles" to self-insured periods.[59]

**E.      If Defense Costs Are Pro Rated, Deductibles Should Be As Well.**

Should this Court determine that pro-rata allocation of defense costs is appropriate, the same should hold true with respect to the deductibles that Mid-Continent seeks to apply against Academy. In other words, if Mid-Continent is only required to pay a pro-rata portion of defense costs in each policy period, Academy only should be required to pay a portion of the deductible in each policy period.[60] In *Lafarge Corp.*, the Fifth Circuit concluded that the deductible provisions of the insurance policy were ambiguous because they did not address a situation in which defense costs were apportioned.[61] The *Lafarge* court held, "[t]he policy provides that the deductible will apply to each occurrence; it is at best ambiguous as to what happens when the insurer is held liable for only part of a continuous occurrence."[62] The Fifth Circuit further decided that a district court "does not have to rely on equitable principles in order to reduce the deductible obligation; its decision is supported simply as a valid choice of one of at least two reasonable interpretations of the policy."[63] Here, any applicable deductible should be

---

[59] The Deductible Liability Insurance Endorsement in each of the policies contains a statement that "The terms of this insurance, including those with respect to: 1. Our right and duty to defend the insured against any "suits" seeking those damages . . . apply irrespective of the application of the deductible amount." *See, e.g.*, **Joint Exhibit 15 at 00006.**

[60] *See, e.g., Clemtex, Inc. v. Southeastern Fidelity Insurance Co.*, 807 F.2d 1271 (5th Cir. 1987); *Lafarge Corp. v. Hartford Casualty Insurance Co.*, 61 F.3d 389 (5th Cir. 1995); *Nationwide Mut. Ins. Co. v. Lafarge Corp.*, 910 F. Supp. 1104 (D. Md. 1996); *E.I. du Pont v. Admiral Ins. Co.*, 1995 WL 654020 (Del. Super. Ct. 1995); *Lincoln Electric Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672 (6th Cir. 2000); *Peco Energy Co. v. Boden*, 64 F.3d 852 (3rd Cir. 1995).

[61] 61 F.3d at 401.

[62] *Id.*

[63] *Id.*

proportionately reduced in the same manner that the defense costs are allocated among the policy periods.[64]

### III.
### CONCLUSION

Academy respectfully requests that this Court DENY Mid-Continent's Motion for Partial Summary Judgment in its entirety.

WHEREFORE, PREMISES CONSIDERED, Academy prays that, upon final hearing of the case, this Court declare and adjudge the contractual obligations of Mid-Continent, and that Academy recover all damages from and against Mid-Continent that may reasonably be established by a preponderance of the evidence, and that Academy be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Academy may show itself to be justly entitled.

Respectfully Submitted,

By:    /s/ Lee H. Shidlofsky
        Lee H. Shidlofsky
        Texas Bar No. 24002937
        Southern District No. 22026
        Melissa L. Kelly
        Texas Bar No. 24055766
        Southern District No. 685892

**COUNSEL FOR DEFENDANTS**

---

[64] In its Motion for Partial Summary Judgment, Mid-Continent offers two methods of calculating the apportionment of defense costs amongst the policy periods–equal distribution or a pro-rata allocation based on the number of closings. *See* Pl.'s Mot. for Partial Summ. J., at para. 42–43 (Dkt. 37). As noted, if this Court chooses to adopt either of these theories, Academy contends that the same method of calculation should be applied to the deductibles. For example, if the defense costs are evenly distributed amongst the five policy periods triggered by the allegations in the Underlying Lawsuit, then Academy only should be responsible for 1/5 (20%) of that policy period's applicable deductible. If the defense costs were distributed among the four policy periods during which the Budiman Plaintiffs closed, the calculation for the 2003-2004 policy period, for example, would be the amount of the deductible times 26/70 closings (37%).

**OF COUNSEL:**
VISSER SHIDLOFSKY LLP
7200 N. Mopac Expwy., Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 FAX
Email: lee@vsfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of April, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to each counsel of record. To the extent any such counsel is not registered for such electronic delivery, the foregoing document will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Lee H. Shidlofsky
Lee H. Shidlofsky