# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUN 25 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY CLERK

MID-CONTINENT CASUALTY COMPANY,
Plaintiff,

v.

HOLLIMON OIL CORP., J. CHARLES HOLLIMON, LTD., MANDALAY GROUP, L.L.C. and LOYCE L. STRIEBECK,
Defendants.

§ § § § § § § § § § §

Civil Action No.
SA-05-CA-1164-WWJ

## MEMORANDUM OPINION

Before the Court for consideration is Plaintiff Mid-Continent Casualty Company's motion for summary judgment (docket no. 27), in the above-styled and numbered civil action. This is an insurance coverage dispute regarding Mid-Continent's duty to defend Defendant policyholders, Hollimon Oil Corporation and J. Charles Hollimon, Ltd., in a pending state court case. Mid-Continent seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that it has no duty to defend the aforementioned parties. For the reasons stated herein, Mid-Continent's motion for summary judgment will be denied.

## FACTUAL SUMMARY

In 2002, Defendant Loyce L. Striebeck ("Striebeck") conveyed certain hydrocarbon reservoirs on her estate in Live Oak County, Texas, to J. Charles Hollimon, Ltd. ("Hollimon, Ltd."), by way of an oil, gas, and mineral lease. The following year, Hollimon Oil Corporation ("HOC") obtained a permit from the Texas Railroad Commission to drill a well on the Striebeck lease. Defendant Unison Drilling, Inc. ("Unison") drilled the well. During the course of drilling, the well blew out,

"releasing natural gas and other substances from the earth in an uncontrolled fashion," and causing substantial damage.[1] At the time the well blew out, HOC and Hollimon, Ltd., were insured by a commercial general liability insurance policy issued by Mid Continent.

Following the blow out, Striebeck sued Hollimon, Ltd., HOC, Unison, and other related parties in Texas state court.[2] Striebeck contends that those defendants are jointly and severally liable for: (1) damages to her royalty share of the "value of her hydrocarbons, including gas and condensate, wrongfully lost or destroyed as a producing and or proximate cause of the Defendants' conduct;" (2) compensation for "all the damages occasioned to Plaintiff pursuant to the terms of the 'Oil, Gas, and Mineral Lease;'" (3) compensation for damages to the "producing reservoirs;" and (4) exemplary damages. In that case, Mid-Continent is currently defending the state court defendants (referred to collectively in this Memorandum Opinion as "the Hollimon Defendants"), under a reservation of rights. The state court case remains pending.

Almost a year and a half after the state court lawsuit began, Mid-Continent filed the instant civil action in this Court, seeking a declaratory judgment that it has no duty to defend the Hollimon Defendants in the state court case. Specifically, Mid-Continent contends that the commercial general liability policy that it issued: (1) covers only "property damage," and not "economic loss;" (2) does not cover—or an exclusion precludes recovery of—"actual damages;" and (3) does not cover "exemplary damages."

---

[1] The well was repaired, and now produces natural gas.

[2] The lawsuit is identified as *Loyce L. Striebeck v. Hollimon Oil Corp., J. Charles Hollimon, Ltd., Mandalay Group, LLC, Unison Drilling, Inc., Carolina Oil & Gas, Inc., and Scott Hinds Production Company*, pending under cause number L-05-0114-CV-A, in the District Court of Live Oak County, 36th Judicial District of Texas.

## JURISDICTION

The Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law underlying the claims in issue identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the moving party bears the burden of persuasion on an issue at trial, the burden is on the moving party to sustain that burden of persuasion as well as demonstrate the absence of a genuine dispute over a material fact. *See Celotex*, 477 U.S. at 331-32 (Brennan, J., dissenting). When the moving party does not bear the burden of persuasion on an issue at trial, the moving party may discharge his summary judgment burden by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party satisfies its summary judgment burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). When assessing a motion for summary judgment, the court must make all factual inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if the evidence presented by the non-moving party is

insufficient for a reasonable jury to deliver a verdict in favor of that party, summary judgment should be entered. *See Anderson*, 477 U.S. at 250-51.

## ANALYSIS

This case involves a dispute over an insurance policy. Insurance policies are contracts. *Harken Exploration Co. v. Sphere Drake Ins., PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). Thus, in diversity cases like the one at bar, courts construe insurance policies in light of applicable state law. *See id.* In this case, the parties agree that Texas law supplies the appropriate rules of contract interpretation.

### I. Whether the Striebeck Petition Potentially States a Case Within the Policy's Coverage

Mid-Continent contends that it has no duty to defend in the state court lawsuit, because Striebeck does not allege any facts in her state court petition that would trigger that duty. An insurance company's duty to defend under a liability policy is a question of law. *See Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1492 (5th Cir. 1992).

The "eight corners" rule governs an insurer's duty to defend. *See Harken Exploration Co.*, 261 F.2d at 471. Courts apply the "eight corners" rule by comparing the allegations made within the four corners of the underlying petition (here, the petition filed by Striebeck in state court) to the policy provisions and exclusions found within the four corners of the insurance policy. *See id.* ("Under Texas Law, an insurer's duty to defend is usually determined solely from the allegations in the most recent petition and the language of the insurance policy."). In making the comparison, the Court assumes that the facts alleged in the petition are true. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191 (Tex. 2002).

The Fifth Circuit considers an insurer's duty to defend to be "expansive." *See Snug Harbor*,

*Ltd. v. Zurich Ins.*, 968 F.2d 538, 545 (5th Cir. 1992). "The general rule is that the insurer is obligated to defend [its insured] if there is, *potentially*, a case under the complaint within the coverage of the policy." *Harken Exploration Co.*, 261 F.3d at 471 (quoting *Nat'l Union Fire Ins. Co. Of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)) (emphasis added). The insured bears the initial burden of showing that a potential claim exists. *Id.* (citing *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 945 (Tex.1988)). The duty to defend exists "if, and only if, the petition alleges facts construing a cause of action within the coverage of the policy." *Maryland Cas. v. Mitchell*, 322 F.2d 37, 39 (5th Cir. 1963) (footnote omitted). Any doubt "as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action," however, must be resolved in favor of the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh*, 939 S.W.2d at 141. Furthermore, "[o]nce coverage has been found for any portion of a suit, an insurer must defend the entire suit." *CU Lloyd's of Texas v. Main Street Homes, Inc.*, 79 S.W.3d 687, 692 (Tex. App.—Austin 2002, no pet.).

"If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies." *Id.* (citing *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim against her potentially within the scope of coverage under the insurance policy." *Id.*

**A. Whether the Striebeck Petition Alleges "Property Damage"**

The insurance policy provides that Mid-Continent has "the right and duty to defend the

insured against any 'suit' seeking" damages for "property damage" covered by the policy.[3] Thus, under the "eight corners" rule, Mid-Continent has a duty to defend if Striebeck's state court petition alleges "property damage." The policy defines the term "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."[4]

Mid-Continent contends that Striebeck's state court petition does not allege any such "property damage" because, Mid-Continent argues, Striebeck has no ownership interest in the property that she claims the blowout damaged. Mid-Continent reads the insurance policy's definition of "property damage" as limited only to damaged property in which Striebeck had an ownership interest. The policy, however, does not make Mid-Continent's duty to defend contingent upon Striebeck's (or anyone else's) ownership of the property alleged to be damaged.

Moreover, as Hollimon points out, Striebeck's state court petition clearly alleges physical injury to tangible property. Striebeck's state court petition alleges, for example:

> [O]n or about August 6, 2003, control of the well was lost during routine drilling operations. The well then blew out, releasing natural gas and other substances from the earth in an uncontrolled fashion. On information and belief, flames shot up some 50 feet feet [*sic*] into the air, substantially damaging Plaintiff's property located thereunder.

Striebeck's state court petition also alleges:

> The blowout drained one or more hydrocarbon reservoirs that was under the land and of which Plaintiff was an owner. The blowout caused drainage of hydrocarbons from and damage to reservoirs within Plaintiff's mineral estate.

Because the Court must assume that these facts are true for present purposes, *see King*, 85 S.W.3d

---

[3] *See* Response to Mot. Summ. J., Ex. 1-A, at App. 022, ¶ 1a.

[4] Mtn. Summ. J., Ex. A., at 35, ¶ 17.

at 191, the Court finds that the Striebeck petition alleges "property damage," as defined by the terms of the policy. This claim is potentially within the four corners of the policy.

**B. Whether the Striebeck Petition Alleges Purely Economic Damages**

Mid-Continent next argues that, to the extent Striebeck suffered any damages, those damages are "purely economic losses." Mid-Continent correctly points out that, under Texas law, purely economic damages do not constitute "property damage," within the meaning of a commercial general liability insurance policy. *See, e.g., State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 737 (Tex. App.—Fort Worth 1996, writ denied). In this context, Mid-Continent's argument that Striebeck alleges only economic damages is unpersuasive.

Texas courts have construed claims for negligence and destruction of minerals asserted by royalty interest owners like Striebeck as more than mere contractual claims for economic damages. *See, e.g., Exxon Corp. v. Miesch*, 180 S.W.3d 299, 319 (Tex. App.—Corpus Christi, 2005, no pet.). A review of Striebeck's state court petition shows that Striebeck alleges more than pure economic damages; the petition also seeks "actual and punitive damages" for alleged violations of statutory and common law tort claims for negligent waste and destruction of minerals.[5] These claims potentially fall within the four corners of the policy.

**II. Whether Policy Exclusions Apply**

Having concluded that the allegations in the underlying suit potentially fall within the four

---

[5] Ptf.'s Original Petition in *Striebeck v. Hollimon Oil Corp. et al.*, Cause No. L-05-0114-CV-A, in the District Court of Live Oak County, 36th Judicial District Court of Texas, at ¶¶ 19-20, attached as Ex. 2-A to Response to Mtn. Summ. J.

corners of the policy, the Court must now examine the question of whether any policy exclusions apply. *See Federated Mut. Ins. Co.*, 197 F.3d at 723. Mid-Continent argues that several exclusions apply to this case. The Texas Insurance Code supplies the proper burden of proof for establishing that a policy exclusion applies:

> In a suit to recover under an insurance . . . contract, the insurer. . . has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded. Language of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense.

Tex. Ins. Code Ann. § 554.002. Thus, Mid-Continent bears the burden of proving that one of the policy exclusions merits summary judgment in its favor. If Mid-Continent is successful, the burden shifts back to Hollimon to show that an exception to the exclusion applies. The Court considers each exclusion in turn.

### A. Exclusion 2.b

Mid-Continent first seeks summary judgment under Exclusion 2.b. Exclusion 2.b excludes coverage for any "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[6] The Fifth Circuit interpreted a nearly identical exclusion in *Federated Mutual Insurance Co. v. Grapevine Excavation*, 197 F.3d at 726. In that case, the Court explained that the exclusion "operates to deny coverage when the insured assumes responsibility for the conduct of a third party." *Id.* Striebeck's state court petition alleges that Hollimon defendants are liable for their own conduct. As the state court petition does not allege

[6] Mtn. Summ. J., Ex. A, at 22, ¶ 2.b.

that any of the Hollimon defendants have assumed the liability of a third-party, pursuant to a contract or agreement, Mid-Continent cannot meet its burden to show that exclusion 2.b applies.

**B. Exclusion 2.j(5)**

Mid-Continent next seeks summary judgment pursuant to Exclusion 2.j(5). That provision excludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."[7] Mid-Continent asserts that this clause excludes from coverage damage to real property arising out of the performance of "operations," which, in this case, means the drilling of a well.

The Defendants disagree with this position. The Defendants appear to contend that the exclusion is inapplicable because the Striebeck petition does not allege that the damage is to "that particular part of real property" on which Unison drilled the well. The Court notes that the oil, gas, and mineral estate leased by Striebeck consists of "180 acres of land, more or less."[8] The summary judgment record is devoid of evidence regarding the location of the well on this large plot of land. There is also no evidence as to the location of the damaged hydrocarbon reservoirs, in relation to the location of the well. Thus, the Court cannot determine, especially at the summary judgment stage, whether the Striebeck petition alleges property damage to "*that particular part* of real property" on which Unison performed drilling operations.

---

[7] Mtn. Summ. J., Ex. A, at 24, ¶ 2.j(5). "You" means the "Named Insured." Mtn. Summ. J., Ex. A., at 21.

[8] Ptf.'s Original Petition, at 3, ¶ 12, attached as Ex. 2-A to Response to Mtn. Summ. J.

Even if the Court were able to make this determination, Mid-Continent has not met its burden to show that Unison was a subcontractor of (or contractor for) any of the insured parties. Exclusion 2.j(5) applies only to contractors or subcontractors working on behalf of one of the insured parties. The Striebeck petition alleges that Unison "is *either* a lessee and/or subcontractor of lessee or lessees" (emphasis added).[9] That is, Unison may have either a lessee-lessor relationship or a subcontractor-contractor relationship with Hollimon, Ltd., the lessee of Striebeck's oil, gas, and mineral estate. Because Mid-Continent has failed to establish Unision's relationship to the insured parties, Exclusion 2.j(5) is inapplicable.

C. **Exclusion 2.j(6)**

Mid-Continent also seeks summary judgment based upon Exclusion 2.j(6). That provision excludes coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."[10] The Defendants contend that Mid-Continent's reading of Exclusion 2.j(6) is so expansive that it renders meaningless the policy's express grant of coverage for damage to underground gas and hydrocarbon reservoirs. This Court must "strictly" construe policy exclusions against the insurer, and "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not

---

[9] Ptf.'s Original Petition, at 4, ¶ 17, attached as Ex. 2-A to Response to Mtn. Summ. J.

[10] Mtn. Summ. J., Ex. A, at 24, ¶ 2.j(6). "Your work" means: "(1) [w]ork on operations performed by you on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." The definition of "your work" includes: "(1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,' and (2) [t]he providing of or failure to provide warnings or instructions." Mtn. Summ. J., Ex. A, at 36, ¶ 22.

itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *See Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977) (citing *Continental Cas. Co. v. Warren*, 254 S.W.2d 762 (Tex. 1953)). Because the Defendants' construction of the exclusion as overly broad is not unreasonable, Mid-Continent cannot meet its burden to show that Exclusion 2.j(6) applies. *See Glover*, 545 S.W.2d 761 (Court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.").

**D. Exclusion 2.m**

Mid-Continent also points to Exclusion 2.m as a possible grounds for summary judgment in its favor. Exclusion 2.m excludes coverage for:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in. . . "your work;" or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.[11]

The policy defines "impaired property" as

> tangible property, other than. . . 'your work,' that cannot be used or is less useful because: (a) [i]t incorporates. . . 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or (b) [y]ou have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by (a) [t]he repair, replacement, adjustment or removal of. . . 'your work;' or (b) [y]our fulfilling the

[11] Mtn. Summ. J., Ex. A, at 25, ¶ 2.m.

terms of the contract or agreement.[12]

Mid-Continent has failed to establish that Exclusion 2.m applies. Mid-Continent cannot show that there is "property damage" to "impaired property," as that term is defined in the policy. Property is "impaired" only if it "can be restored to use" by repair, replacement, adjustment, removal of Mid-Continent's work, or by fulfilling the terms of a contract or agreement. Mid-Continent has submitted no summary judgment evidence to show that it can "restore" the damaged property. This is not surprising; indeed, the Court cannot imagine a scenario in which Mid-Continent might be able to do so. As Mid-Continent cannot prove that the Striebeck petition alleges "property damage" to "impaired property," Exclusion 2.m does not obviate Mid-Continent's duty to defend.

**E. Exclusion 2.a**

The last exclusion Mid-Continent urges the Court to adopt is Exclusion 2.a. That provision excludes coverage for "'property damage' expected or intended from the standpoint of the insured."[13] Mid-Continent asks the Court to find that Exclusion 2.a bars coverage because the Striebeck petition "alleges that acts or omissions by the Hollimon Defendants were the result of malice."[14] Mid-Continent notes that "malice" requires "specific intent," under the Texas Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) ("'Malice' means a specific intent by the defendant to cause substantial injury or harm to the claimant.").

Even though "malice" requires "specific intent" under Texas law, the mere fact that

---

[12] Mtn. Summ. J., Ex. A, at 33, ¶ 8.

[13] Mtn. Summ. J., Ex. A, at 22, ¶ 2.a.

[14] Mtn. Summ. J., at 9.

Striebeck's petition alleges malice on the part of the Defendants is not enough to preclude coverage, under Exclusion 2.a. In addition to malice, the petition also alleges negligence and "negligent waste" on the part of the Defendants. Negligence, by its very nature, requires no intent. Because this claim potentially falls within the four corners of the petition, summary judgment for Mid-Continent is inappropriate.

Mid-Continent also argues that Exclusion 2.a applies because Striebeck "seeks exemplary damages to punish the Hollimon Defendants." As the Defendants correctly point out, however, such a claim "does not warrant an inference that [the Defendants] expected or intended the injuries alleged by Ms. Striebeck." Accordingly, Exclusion 2.a does not operate to exclude Mid-Continent from providing a defense in the underlying state court lawsuit.

## CONCLUSION

Mindful of an insurer's "expansive" duties to defend an insured, the Court finds that Striebeck's state court petition potentially states a case within the coverage of the policy. Furthermore, the Court finds that Mid-Continent has not meet its burden to prove than an exclusion to the policy applies. Accordingly, Mid-Continent's motion for summary judgment shall be, and is hereby,

**DENIED.**

**SIGNED** this 25th day of June, 2007.

William Wayne Justice
Senior United States District Judge