**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY COMPANY** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **CAUSE NO. 4:08-cv-00021** |
| **ACADEMY DEVELOPMENT, INC., CHELSEA HARBOUR, LTD., LEGEND CLASSIC HOMES, LTD., AND LEGEND HOME CORPORATION** | § § § § § § | |
| *Defendants.* | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation (collectively, "Academy"), Defendants herein, file this Reply to Mid-Continent Casualty Company's ("Mid-Continent") Response to Academy's Motion for Partial Summary Judgment and would respectfully show the following:

**I.
NATURE AND STAGE OF PROCEEDING**

Academy and Mid-Continent have filed cross-motions for partial summary judgment to which both parties have filed responses.[1] The parties' motions seek a declaration from this Court as to: (i) whether Mid-Continent has an obligation to defend Academy beyond the filing of the Ninth Amended Petition in the Underlying Lawsuit; and (ii) whether Mid-Continent is entitled to

---

[1] Academy incorporates into this reply brief all of its prior briefing regarding these cross-motions as if set forth fully herein. *See* Academy's Mot. for Partial Summ. J. (Dkt. 35) (hereinafter referred to as "Academy's Mot."); Academy's Resp. to Pl. Mot. for Partial Summ. J. (Dkt. 40) (hereinafter referred to as "Academy's Resp.").

pro-rate its defense obligation among its consecutively triggered policies or whether Academy is entitled to a complete defense under the triggered Mid-Continent policy of its choice. In addition, and depending on the Court's ruling as to the second issue, an issue also exists as to how to allocate the deductibles found in the Mid-Continent policies. A sub-issue, which only is relevant if the Court first concludes that Mid-Continent is entitled to a pro-rata application, relates to how many Mid-Continent policies are triggered. Mid-Continent, as evident from the illustrations in its briefing, concedes that four policies starting with the 2001–2002 policy are triggered.  Academy, on the other hand, believes that five policies starting with the 2000–2001 policy are triggered.

## II.
## ARGUMENTS & AUTHORITIES

**A.      Allegations in the Ninth, Tenth and Eleventh Amended Petitions Invoke Mid-Continent's Duty to Defend.**

Pursuant to the terms of the Mid-Continent policies, Mid-Continent is obligated to defend Academy "against any 'suit' seeking" "damages because of . . . 'property damage' to which this insurance applies."[2] A plain reading of the Budiman Plaintiff's Ninth, Tenth and Eleventh Amended Petitions makes clear that "damages because of . . . 'property damage'" were sought in the Underlying Lawsuit.[3] Thus, in accordance with terms of the Mid-Continent policies' insuring agreement, Mid-Continent had a duty to defend Academy in the Underlying Lawsuit beyond the filing of the Ninth Amended Petition.

Mid-Continent makes much of the Budiman Plaintiff's allegation seeking "cost of repair" as damages, seemingly asserting that since the Budiman Plaintiffs do not allege that they have personally suffered physical injury to their homes, there can be no duty to defend under the terms

---

[2] *See* **Joint Exhibit 13 at 00007.**
[3] *See* Academy's Mot. at 10–14.

of the policies.[4] Academy disagrees with Mid-Continent's contention that the "cost of repair" allegation necessarily refers only to the lake and common areas, as opposed to the Budiman Plaintiffs' properties. Mid-Continent, in fact, describes this allegation as "highly ambiguous."[5] "In case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor."[6] Therefore, even if Mid-Continent is correct and the allegation is ambiguous, any doubt should be resolved in favor of Academy.

Indeed, even if this Court concludes that the "cost of repair" allegation relates only to the lake and common areas, this does not alter the fact that Academy was sued for "damages because of . . . 'property damage'." The "property damage" definition *does not* contain any requirement that the insured own the property that is damaged.[7] And, such a limitation simply cannot be "read into" the "property damage" definition.[8] The insuring agreement only requires that the insured be sued for damages *because of* "property damage." Mid-Continent has never disputed, and in fact cannot dispute, that all of the petitions allege physical injury to the lake in the form of cracking and breaking apart of lake walls (i.e., physical injury to tangible property). And, Mid-Continent has never disputed that the Budiman Plaintiffs allege that they suffered a diminution in value of their homes because of the "property damage."[9] Had Mid-Continent desired a coverage

---

[4] *See* Pl.'s Resp. to Academy's Mot. for Partial Summ. J., at para. 4–6 (Dkt. 39).

[5] *Id.* at para. 4 (Dkt. 39).

[6] See *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

[7] *See Mid-Continent Casualty Company v. Hollimon Oil Corp., et al.*, Civil Action No. SA-05-CA-1164-WWJ, slip op. at 6 (W.D. Tex. June 25, 2007) (interpreting the identical definition of "property damage" and holding that it did not make Mid-Continent's duty to defend contingent on ownership of the property alleged to be damaged).

[8] *See Lamar Homes v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 15 (Tex. 2007) (it is improper to read in requirements to the "property damage" definition that simply do not exist); *see also Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) ("We must give the policy's words their plain meaning, without inserting additional provisions into the contract").

[9] "Where diminution in value is the measure of damages but the injury nonetheless presents physical manifestations

---

limitation based on ownership of the damaged property, it should have included such a limitation in the "property damage" definition.

In fact, contrary to Mid-Continent's position, the Dallas Court of Appeals recently recognized that ownership is not required in order to state a claim for "property damage."[10] Interpreting identical policy language as in *Don's Building Supply* and in the instant case, the court in *Union Insurance Co. v. Don's Building Supply, Inc.*, found the insurer had a duty to defend where the homeowners' alleged "a continuing injury for which they are entitled to recover all of their damages, regardless of when they purchased the home."[11] The insurer's "contractual obligation is to defend 'any' suit "seeking those damages."[12]

Further, Mid-Continent's attempts to distinguish the case law cited by Academy are unavailing. For example, Mid-Continent attempts to distinguish *Nautilus Insurance Company v. ABN-AMRO Mortgage Group, Inc.*,[13] on the basis that ABN-AMRO had an insurable property interest in property that had been physically damaged whereas the Budiman Plaintiffs do not have such interest.[14] Once again, it appears that Mid-Continent confuses a liability defense with a coverage defense. Nothing in the petitions suggests that the Budiman Plaintiffs do not have an insurable interest in the lakes and common areas. Quite to the contrary, as even Mid-Continent points out, the Budiman Plaintiffs sought repair costs.[15] And, in the pleadings, the Budiman

---

the loss is covered." 4 BRUNER & O'CONNOR CONSTRUCTION LAW § 11:31 – 11:32 (May 2008).

[10] *See Union Ins. Co. v. Don's Building Supply, Inc.*, 266 S.W.3d 592, 596 (Tex. App.—Dallas 2008, pet. denied). Moreover, Mid-Continent's argument that ownership is required would, in effect, eliminate the second prong of the "property damage" definition. The classic example of a "loss of use of tangible property that is not physically injured" case involves ingress / egress cases where an insured shop owner sues for lost profits due to a road closure or some form of physical damage to other property that causes an economic loss to the insured. *See, e.g., Guerin Contractors, Inc. v. Bituminous Cas. Corp.*, 636 S.W.2d 638, 641 (Ark. App. 1982).

[11] *See Union Ins. Co.*, 266 S.W.3d at 595–96.

[12] *Id.* at 596.

[13] 2006 WL 3545034 (S.D. Tex. Dec. 8, 2006).

[14] *See* Pl.'s Resp. to Academy's Mot. for Partial Summ. J., at para. 9 (Dkt. 39).

[15] *See* **Joint Exhibits 10–12 at ¶ 47.**

Plaintiffs specifically allege that Academy owed them "duties of care related to the disclosure of information relating to the condition of the premises that they were selling (including the Lakes), the potential for water intrusion onto the premises and into the improvements, the condition of the common areas and the long-terms costs and effect of the Lakes on the community that they were marketing to the public."[16] Therefore, whether legally correct or not, it certainly appears that the Budiman Plaintiffs believed that they had an insurable property interest in the lakes and common areas. Accordingly, since Mid-Continent has not raised any exclusions or other defenses to coverage, Mid-Continent's duty to defend continued to be triggered by the allegations of damage because of "property damage" and thus a duty to defend was owed under the Ninth Amended Petition and subsequent petitions.[17]

**B.    A Pro-Rata Allocation of Defense Costs is Contrary to Established Texas Law.**

In support of its argument that a pro-rata allocation of defense costs is consistent with Texas law, Mid-Continent cites a number of cases that rely on the reasoning of the Sixth Circuit in *Insurance Company of North America v. Forty-Eight Insulations, Inc.*[18] The pro-rata reasoning of the *Forty-Eight Insulations* decision, however, has been rejected by the Supreme Court of Texas, a point recognized by federal courts applying Texas law.[19] The point also has

---

[16] *Id* at ¶ 46 (parenthesis in original).

[17] Additionally, to the extent that Mid-Continent argues that the Budiman Plaintiffs allege only future damages in their pleadings, this is blatantly incorrect. The Ninth, Tenth and Eleventh Amended Petitions contain allegations that the Budiman Plaintiffs already have experienced a diminution in value of their properties. *See* **Joint Exhibits 10–12 at ¶¶ 27 & 34.**

[18] 633 F.2d 1212 (6th Cir. 1980).

[19] *See American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994) (adopting the reasoning in *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981)); *See, e.g., N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 560 n.14 (5th Cir. 2008) (while discussing defense costs, the court noted that, under *Garcia*, the insured is entitled to select the policy that provides the most coverage); *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 525 F.3d 359, 363 (5th Cir. 2008) (citing *Sw. Aggregates* for the proposition that a complete defense is owed even when a claim falls partially within and partially outside of a coverage period); *Guar. Nat'l Ins. Co. v. Azrock*, 211 F.3d 239, 252 n.55 (5th Cir. 2000) (noting that Texas law does not require pro-rata allocation of defense costs) (citation omitted); *RLI Ins. Co. v. Philadelphia Indem. Ins. Co.*, 421 F. Supp. 2d 956, 964–65 (N.D. Tex. 2006) (making an *Erie* guess that the Supreme Court of Texas would not adopt a pro-rata

been explicitly recognized by state appellate courts.[20] Mid-Continent may not like the law—hence the citation to cases from the Second Circuit—but it is nonetheless the law in Texas. Further, the Second Circuit cases relied upon by Mid-Continent both acknowledge that where there is only one insurer on the risk, the joint and several approach should be applied to avoid the unintended consequence of a multiplication of deductibles.[21]

Here, the language of the Mid-Continent policies simply does not support a pro-rata allocation of defense costs. The policies' insuring agreement states that Mid-Continent will "pay *those sums* that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[22] Texas courts have spoken clearly on this issue and Mid-Continent's argument that Academy's position is "inconsistent with Texas Law" is just plain wrong. This Court should reject Mid-Continent's invitation for it to create new law.

Mid-Continent's desire to apply a pro-rata application is fueled solely by the application of deductibles. To that end, Mid-Continent characterizes the deductible endorsements as a "contractual obligation in the policies to share in the expense of providing a defense and indemnity for claims that rose during the last three policies issued by Mid-Continent."[23] Academy does not dispute that the deductible endorsements exist. And, under the proper circumstances, Academy undoubtedly would be liable to pay an applicable deductible. For example, if a claimant sued Academy for a slip and fall that took place during August 1, 2003 to

---

allocation rule to determine policy limits where policy periods overlapped since the court had already adopted the *Keene* approach where policy periods did not overlap in *Garcia*).

[20] *See* Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc., 982 S.W.2d 600, 607 (Tex. App.—Austin 1998, no pet.); *Maryland Casualty Co. v. South Texas Medical Clinics, P.A.*, 2008 WL 98375 (Tex. App.—Corpus Christi 2008, pet denied.). It should be noted that the Supreme Court of Texas denied the petition for review in *South Texas Medical Clinics*.

[21] *See Olin Corp. v. Insurance Co. of North America*, 221 F.3d 307, 324 (2nd Cir. 2000); *Prudential Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.*, 158 F.3d 65, 85 (2nd Cir. 1998).

[22] *See* **Joint Exhibit 13 at 00007** (emphasis added).

[23] *See* Pl.'s Resp. to Academy's Mot. for Partial Summ. J., at para. 12 (Dkt. 39).

August 1, 2004 policy period, Academy would owe the first $50,000 in defense and indemnity costs. Likewise, Academy does not dispute that if it got sued for a collapse or some other boom event that caused property damage during a single period of time, Academy would owe the applicable deductible for that policy period. But, the facts of the instant case are different. Here, Mid-Continent is being sued by multiple plaintiffs for damages that occurred over a period of time. By Mid-Continent's own admission, as evident from its proposed pro-rata allocation of the deductibles—four of its policies are triggered (including the policy that begins on August 1, 2001 and goes through August 1, 2002). That policy has a $5,000 per claim deductible that *does not* apply to defense costs.[24] Accordingly, even if Mid-Continent is correct that the first potentially triggered policy is the 2001–2002 policy, the result for Academy is the same (i.e. Academy does not owe any deductible for the defense costs incurred since the deductible in the 2001–2002 policy, like the 2000–2001 policy before it, does not apply to defense costs / allocated loss expenses).[25]

Further, Mid-Continent's formula for pro-rata allocation is based on extrinsic evidence in the form of a chart that sets forth the closing dates.[26] While Academy does not dispute the accuracy of the chart, Academy does dispute whether the chart can be utilized by this Court. In particular, to date, the Supreme Court of Texas has not recognized any exception to the "eight-corners" rule.[27] Further, it appears that Mid-Continent confuses the injury-in-fact trigger adopted

---

[24] **Joint Exhibit 14 at 00006**.

[25] As set forth in Academy's prior briefing, Academy believes that the 2000 to 2001 policy also is triggered by the allegations. *See* Academy's Mot. at 14–16.

[26] *See* Pl.'s Resp. to Academy's Mot. for Partial Summ. J., at para. 14–15 (Dkt. 39).

[27] *See, e.g.*, *Empire Indem. Ins. Co. v. Allstate County Mut. Ins. Co.*, 2009 WL 909436, *3 (5th Cir. Apr. 6, 2009) ("To determine whether the insurer owed a duty to defend, we apply the 'eight corners rule.' Under this rule, '[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy.'") (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Mary Kay Holding Corp. v. Federal Ins. Co.*, 2009 WL 290485 (5th Cir. Feb. 6, 2009) ("While appreciating the arguments for a limited 'coverage' exception to the 'eight-corners rule,' we recognize that Texas has yet to adopt such an exception."); *Pine*

---

by the Supreme Court of Texas with an ownership requirement that exists neither in the Mid-Continent policies nor under Texas law. Further, Mid-Continent appears to believe that the pleadings are date-deprived when, in fact, there are sufficient allegations of dates so as to trigger all of the consecutively-issued Mid-Continent policies. Even focusing on the Ninth through the Eleventh Amended Petitions—since those are the ones that Mid-Continent disputes—there are several allegations of dates from which the Court can conclude that all of the Mid-Continent policies are triggered.[28] Moreover, when construing dates in a pleading, courts have routinely and correctly applied a liberal interpretation in terms of triggering policies.[29]

In addition, no support exists for Mid-Continent's alternative argument that if one policy is adopted, it should be one of the later ones. The Underlying Lawsuit is a single lawsuit that involves multiple plaintiffs. Mid-Continent was not asked to defend seventy separate lawsuits—it was asked to defend one. Even assuming it were true that some of the Budiman Plaintiffs—even a majority of the Budiman Plaintiffs—could not have been damaged until a later policy period, that finding does not in any way result in the conclusion that an earlier Mid-Continent policy did not have a duty to provide a complete defense. Simply put, it only takes one covered allegation in order to trigger a complete defense and the inclusion of additional plaintiffs that would not otherwise trigger coverage *does not* alter this well-established rule.[30]

---

*Oak Builders, Inc. v. Great American Lloyds Ins. Co.*, ---S.W.3d---, 2009 WL 353526, at *3–4 (Tex. 2009); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) ("[W]e follow the eight-corners rule, also known as the complaint-allegation rule: 'an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.'") (quoting *GuideOne*, 197 S.W.3d at 308).

[28] **Joint Exhibits 10 – 12 at ¶¶ 20 & 29.**

[29] *See, e.g., Thos. S. Byrne, Ltd. v. Trinity Universal Ins. Co.*, 2008 WL 5095161 (Tex. App.—Dallas Dec 4, 2008, no pet. h.).

[30] *Nokia*, 268 S.W.3d at 495–96.

### III.
### <u>CONCLUSION</u>

Academy has established that the Ninth Amended Petition and subsequent petitions allege damages because of "property damage" within the meaning of the Mid-Continent policies. Accordingly, since Mid-Continent has raised no exclusions or other defenses to coverage, Mid-Continent owes a duty to defend past the filing of the Ninth Amended Petition.

Mid-Continent already has conceded that four out of its five consecutively-issued policies are triggered by the allegations in the Underlying Lawsuit. Academy contends that the 2000 – 2001 policy also is triggered by the allegations in the Underlying Lawsuit. Regardless of who is right, however, the issue boils down to whether Mid-Continent is entitled to pro-rate its defense obligation or whether Academy gets to choose which of the triggered policies has to provide a complete defense. Texas courts, including the Fifth Circuit, have concluded that an insurer is *not* entitled to pro-rate its defense obligation simply because part of the loss occurs within and part of the loss occurs outside of its policy period.

Following these holdings, Academy opts for a defense under the 2000–2001 policy. Nevertheless, even if this Court believes that only four policies are triggered (i.e., starting with the 2001–2002 policy as Mid-Continent contends), the result does not change as both the 2000–2001 and 2001–2002 policies have per claim deductibles that do not apply to defense costs.[31] Mid-Continent may not like this result, but it is mandated under the terms of the policies and the existing law.

WHEREFORE, PREMISES CONSIDERED, Academy prays that, upon final hearing of the case, this Court declare and adjudge the contractual obligations of Mid-Continent, and that

---

[31] In fact, this Court need only determine whether four policies or five policies are triggered *if* this Court first concludes that Mid-Continent is entitled to a pro-rata allocation. Otherwise, such a determination is irrelevant to the outcome of this matter.

Academy recover all damages from and against Mid-Continent that may reasonably be established by a preponderance of the evidence, and that Academy be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Academy may show itself to be justly entitled.

Respectfully Submitted,

By:     /s/ Lee H. Shidlofsky
        Lee H. Shidlofsky
        Texas Bar No. 24002937
        Southern District No. 22026
        Melissa L. Kelly
        Texas Bar No. 24055766
        Southern District No. 685892

**COUNSEL FOR DEFENDANTS**

**OF COUNSEL:**
VISSER SHIDLOFSKY LLP
7200 N. Mopac Expwy., Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 FAX
Email: lee@vsfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to each counsel of record. To the extent any such counsel is not registered for CM/ECF, the foregoing document will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Lee H. Shidlofsky
Lee H. Shidlofsky