IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MID-CONTINENT CASUALTY COMPANY § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 4:08-cv-00021 |
| ACADEMY DEVELOPMENT, INC., § | |
| CHELSEA HARBOUR, LTD., LEGEND § | |
| CLASSIC HOMES, LTD., and LEGEND § | |
| HOME CORPORATION § | |

## MID-CONTINENT CASUALTY COMPANY'S
## RESPONSE TO DEFENDANTS' MOTION TO ALTER OR AMEND

TO THE HONORABLE JUDGE GRAY H. MILLER:

Mid-Continent Casualty Company ("Mid-Continent"), files its Response to Defendants' Motion to Alter or Amend under Federal Rule of Civil Procedure 59(e) and in support would show the Court the following:

### I.
### NATURE AND STAGE OF PROCEEDING

1. Mid-Continent concurs with the summary of the nature and stage of the proceedings found in the Defendants' Motion to Alter or Amend (Court Doc. 51).

### II.
### SUMMARY OF THE ARGUMENT

2. Defendants, Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation (collectively "Academy") incorrectly assert Mid-Continent never raised the "trigger issue". This issue was raised in Mid-Continent's First Amended Complaint for Declaratory Judgment filed on June 11, 2008 (Court Doc. 15). The issue was raised again in Mid-Continent's First Amended Answer filed on March 3, 2009. (Court Doc. 33). And finally contrary to Academy's assertion, the alleged failure by the

Budiman Plaintiffs to specify there was "property damage" during the relevant Mid-Continent policies was addressed in the Mid-Continent's Motion for Summary Judgment. (Court Doc. 37).

3. Academy's second argument that there were sufficient allegations in the Ninth, Tenth and Eleventh Amended Petitions in the underlying cause of action to trigger coverage is primarily a rehashing of their previous arguments in their Motion for Summary Judgment and their response to Mid-Continent's summary judgment. Academy has failed in not only its most recent pleading but its previous pleadings to point the Court to any allegations in the Ninth, Tenth and Eleventh Amended Petitions in the underlying lawsuit that would allow the Court to find a date of actual injury as required by *Don's Building Supply, Inc. v. OneBeacon Insurance Company*, 267 S.W.3d 20 (Tex. 2008). Without being able to determine the date of actual injury, the Court cannot find that any of the Mid-Continent policies have been triggered.

### III.
### ARGUMENTS AND AUTHORITIES

**A.  Mid-Continent Clearly Raised The Trigger In Its Pleadings and Its Motion for Summary Judgment.**

4. In Mid-Continent's First Amended Complaint (Court Doc. 15) Mid-Continent pointed out in paragraph 17 that the Insuring Agreement requires there be "property damage" "during the policy period." Later in the First Amended Complaint, at paragraphs 31 and 32, Mid-Continent seeks a declaration from this Court on the date when, if ever, the duty to defend was triggered by tendering to Mid-Continent a petition in the *Budiman* lawsuit alleging potentially covered losses. Mid-Continent continues in paragraph 32 to seek a declaration from the Court of the date when the duty to defend, if any existed, ceased due to the amendment of the petition in the lawsuit in which all allegations of potentially covered losses are omitted. The

above portions of the First Amended Complaint clearly ask the Court to make a determination of whether the duty to defend has been "triggered."

5. In Mid-Continent's First Amended Answer to Academy's counterclaim (Court Doc. 33) Mid-Continent once again raises the issue that the underlying petitions need to allege a date of injury within the policy period. (Court Doc. 33, Paragraph 27). In paragraph 35, Mid-Continent asserts as its second affirmative defense there is no allegation of "property damage" in the petitions in the underlying *Budiman* lawsuit.

6. Finally, in paragraph 17 of its Brief in Support of Mid-Continent's Motion for Partial Summary Judgment, Mid-Continent specifically addresses the need for Academy to show there has been an allegation of property damage during a particular policy to trigger coverage under that policy as set forth in *Don's Building Supply, Inc. v. OneBeacon Insurance Company*, 267 S.W.3d 20 (:Tex. 2008). Mid-Continent has raised the trigger issue and that issue was before the Court in the cross-motions for summary judgment.

### B. The Court Correctly Determined The Underlying Petitions Failed to Allege Facts To Establish There was Covered Property Damage That Occurred During Any of the Mid-Continent Policies.

7. Mid-Continent reserves the right to subsequently challenge the Court's determination that damage to the lakes constituted sufficient "property damage" to trigger coverage under the Mid-Continent policies. (Court Doc. 49 at page 10). Subject to the foregoing, the Court correctly determined that if the damage to the lakes does satisfy the requirements for "property damage", Academy has failed to meet its burden to show the Ninth, Tenth and Eleventh Petitions alleged "property damage" occurred during the Mid-Continent policy periods because Academy has failed to show where in the Ninth, Tenth and Eleventh Petitions facts are alleged sufficiently to establish the date of any "actual injury or damage" as

required by the Texas Supreme Court ruling in *Don's Building Supply, Inc., v. OneBeacon Insurance Company, supra.* At p. 31.

8.    The Court in reaching its decision in this matter cited to *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139 (Tex. 1997). *Merchants Fast Motor Lines* sets forth most, if not all of the relevant and guiding principles that should be applied in determining whether the allegations in the underlying Petitions state a covered claim. The Supreme Court points out in the *Merchants Fast Motor Lines* case that even though the pleadings will be liberally construed in favor of the insured, the Court is not allowed to read facts into the pleadings, look outside the pleadings, or imagine factual scenarios which might trigger coverage. *Id.* at 142. The allegations must state sufficient facts to "create that degree of doubt which compels resolution of the issue for the insured." *Id.* at 142.

9.    In *Don's Building Supply,* the Court was able to determine that the pleadings alleged actual damage/injury to the property based on an allegation which allowed the court to pinpoint a potential date within the time period during which OneBeacon's insurance coverage was in place. The plaintiffs in the underlying litigation in *Don's Building Supply* alleged the houses were built on specified date and then went on to allege the damage to the houses began to occur within six months to one year after that date which would have fallen within the policy period of the OneBeacon policies. *Id.* at 23.

10.   In the Ninth, Tenth and Eleventh Amended Petitions in the *Budiman* suit, the relevant allegations are:

4

- Paragraph 20 – At the time Defendants sold the homes to the public, Defendants knew that the lakes were failing and the walls of the lakes were breaking apart and the water was leaking from the lakes.

- Paragraph 20 – Previously Defendants had filed a lawsuit in Harris County against the engineers and companies who constructed the original lakes in which it was alleged that the lakes leaked and the wall was breaking apart.

- Paragraph 27 – Plaintiffs will show that the problems of the lakes have affected the value of the property and their homes. Plaintiffs maintain a good faith belief that the condition of the lakes has in the past, and continues to cause damage to the value of their residential properties.

- Paragraphs 28 and 29 – Defendants made misrepresentations or failed to advise the Plaintiffs of the full extent of the problems in letters and meetings that took place between February 2004 and June 2005.

- Paragraph 33 – Upon information and belief, continuous and excessive water leakage from the lakes that flow laterally and under the Plaintiffs' homes and properties may cause structural damage to the Plaintiffs' homes and foundation.

11.    In this Court's ruling, the Court determined the "property damage" that triggered a potential obligation to pay damages to the *Budiman* Plaintiffs was not the economic damages to their homes but was the physical injury to the lakes. The allegedly defective condition of the lakes was claimed to have caused the economic damages to the *Budiman* Plaintiffs in the form of diminished value to their properties. As such, in order to trigger the duty to defend under the policy, their must be allegations against the insured which allow the Court to pinpoint the date

when the lakes suffered physical injury. The date the *Budiman* plaintiffs suffered an economic loss as a result of the allegedly defective condition of the lakes should not be considered the date of trigger.

12. The filing of suit in 2002 does nothing to assist the Court in pinpointing the date of the injury to the lakes. The only thing that can be inferred from the filing of the lawsuit is Academy had discovered the injury to the lakes and had taken action to seek damages for the claimed injury as of 2002. It does not, however, indicate the date when the injury occurred. *Don's Building Supply, supra.* expressly holds the date of discovery is not the date of trigger.

13. In paragraph 20 of the relevant *Budiman* petitions, it is alleged the Academy Defendants knew the lakes were failing at the time they sold the homes to the public but fails to identify when those sales took place or when, or at what point in time, Academy first knew the lakes had begun the process of breaking apart resulting in water leaking into the adjacent properties. Once again, the fact the Academy Defendants have knowledge of the injury does not establish the date when the injury occurred. Similarly, in paragraphs 28 and 29, the allegations Academy knew of the condition of the lake and the problems caused thereby but failed to reveal them in meetings that occurred between February 2004 and September 2005, once again establishes the problem had come to the attention of Academy but does nothing to establish the date of the injury.

14. Academy next argues that the Ninth, Tenth and Eleventh Amended Petitions alleged continuing deterioration and damage to the lake and walls surrounding the lake. They cite to paragraph 20 which states: "At the time that the Defendant sold homes to the public, Defendant knew that the lakes were failing. And particularly, Defendants knew that the walls of the lake were breaking apart and that water was leaking from the lakes into the adjacent

6

properties upon which the Plaintiffs' homes were located." Later in the Petition at paragraph 33, it is alleged: "Upon information and belief, continuous and excessive water leakage from the lakes that flow laterally and under the Plaintiffs' homes and properties may cause structural damage to the Plaintiffs' homes and foundation. Over time, this will cause Plaintiffs to incur excessive repair cost to the foundation and structures of the homes." The allegation in paragraph 20 fails to identify any date the Academy Defendants first knew the lakes were failing or breaking apart much less when this process began for purposes of establishing the date of the injury. And, the allegation in paragraph 33 does not state a claim for current damages but instead references the potential for the *Budiman* Plaintiffs to incur expenses to repair damage to their homes and foundations that may occur at some unknown date in the future.

15. Even the most liberal interpretation of these allegations does not allow the Court to identify a date of injury to the lakes for purposes of trigger the policies.

## IV.
## CONCLUSION

16. The Court correctly determined even the most liberal and pro-insured reading of the allegations in the Ninth, Tenth and Eleventh Petitions does not allow the Court to identify a date of injury to the lakes for purposes of triggering the duty to defend under any of the Mid-Continent policies. Repeated references to the point that the Academy Defendants knew of the injury does not establish when the injury occurred. Subsequent allegations that are characterized by Academy as being injuries that continue to occur and thus must have flowed into the Mid-Continent policy periods cannot be construed as making that type of allegation. The Court should deny the motion to alter or amend as the previous order is correctly decided.

Respectfully submitted,

**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

_____
Christopher W. Martin
Texas State Bar No. 13057620
Federal I.D. 13515
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
MID-CONTINENT CASUALTY COMPANY

OF COUNSEL:
Robert G. Dees
Texas State Bar No. 05716430
Federal I.D. 13899
Todd Lonergan
Texas State Bar No. 12513700
Federal I.D. 7769
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been served by certified mail, on this the _20_ day of April, 2010 to:

Mr. Lee H. Shidlofsky
Visser Shidlofsky, LLP
7200 N. Mopac Expressway, Suite 430
Austin, Texas 78731

_____
Todd Lonergan