IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MID-CONTINENT CASUALTY COMPANY § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 4:08-cv-00021 |
| ACADEMY DEVELOPMENT, INC., § | |
| CHELSEA HARBOUR, LTD., LEGEND § | |
| CLASSIC HOMES, LTD., and LEGEND § | |
| HOME CORPORATION § | |

**SUPPLEMENTAL BRIEFING ON APPORTIONMENT OF
DEFENSE COSTS AND USE OF EXTRINSIC EVIDENCE**

TO THE HONORABLE JUDGE GRAY H. MILLER:

Mid-Continent Casualty Company ("Mid-Continent"), submits the following supplemental briefing on the issues of apportionment of defense costs and use of extrinsic evidence in determining duty to defend:

1. Academy Development, Inc. ("Academy") argues that each insurance policy that is triggered by claim in the petition has a duty to provide a complete defense to the entire lawsuit, and the insured is not required to prorate across the policies triggered. Academy relies upon *Texas Property and Casualty Insurance Guaranty Association/Southwest Aggregates, Inc. v. Southwest Aggregates, Inc.*, 982 S.W.2d 600, 606-607 (Tex. App.–Austin 1999, no pet.). In *Southwest Aggregates*, the Austin Court of Appeals specifically acknowledged the Fifth Circuit does not entirely agree with that position and has recognized the right to prorate the defense under certain circumstances. *Id.* at 607. The Austin Court of Appeals recognized the holdings in *Gulf Chemical and Metallurgical Corp. v. Associated Metals and Minerals Corp.*, 1 F.3d 365 (5th Cir. 1993) and *Lafarge Corp. v. Hartford Casualty Insurance Company*, 61 F.3d 389 (5th Cir. 1995) which hold in certain circumstances the duty to defend can be prorated across triggered

policy periods. *Id.* at 607. Both *Lafarge* and *Gulf Chemical* have not been overturned by the Fifth Circuit and remain controlling law in the Fifth Circuit.

2. *Gulf Chemical and Metallurgical Corp. v. Associated Metals and Minerals Corp.*, *supra*. addressed the duty to defend claims asserted by 5000 former employees of Lone Star Steel arising out of the use of cleaning chemicals between the years 1946 and 1990 at the Lone Star plant. Gulf only shipped chemicals to the plant for a limited period of time but was potentially responsible for the conduct of a predecessor company that had also shipped chemicals to the plant. Unlike the Austin Court of Appeals, the Fifth Circuit specifically adopted the reasoning of *Insurance Company of America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980), which recognized that defense costs can be apportioned between carriers when a ready basis for apportionment is apparent. *Id.* at 372. The Court acknowledged "the insured must bear its share of those costs determined by the fraction of time of injurious exposure in which it lacked coverage." *Id.* at 372.

3. Mid-Continent acknowledges there are sufficient allegations in the Plaintiff's First through Eighth Amended Petitions in the underlying lawsuit to invoke a duty to defend. In the Second Amended Petition, it is alleged at paragraph 17:

> Plaintiffs contend the failure of the original lakes directly affected the value of the homes in the community. Plaintiffs' experts will show the impact of the failed lakes, the extent of the construction process, and the impact of future repairs will have negative impact on the home values. Plaintiffs' property values have suffered diminution of value due to past, present and future conditions of the lakes… Experts will show the same lake water is raising the surrounding ground water levels to the point that lake water is flowing from multiple driveways, sidewalks and yards of Plaintiffs' homes throughout the subdivision. Water flowing from driveways, sidewalks and yards will negatively affect the value of their homes. The ground water level is too close to the foundations of the homes and is affecting the structures. This is typically evidenced by drywall cracks, joint separation and trim and windows, tiles breaking, mortar cracks, windows cracking without impact.

Similar allegations continue through the Eighth Amended Petition which alleges at paragraph 26:

> 26. Plaintiffs will show that the problems with the lake have affected the value of their property and their homes. Plaintiffs maintain a good faith belief that the condition of the lakes has in past, and continues, to cause damage to their residential properties.

The above pleadings allege two distinct injuries. The first injury is the allegation that the Plaintiffs in the underlying suit have suffered <u>economic damages</u> due to the diminution of value in their homes caused by the defective condition of the lakes. The second alleges that the Plaintiffs in the underlying lawsuit have suffered <u>actual physical damage</u> to their property as the result of water seeping from the lakes.

4. Although Mid-Continent respectfully disagrees with the Court's former ruling that economic damage to the Plaintiffs' home caused by damage to the lakes constitutes covered property damage, Mid-Continent has previously acknowledged that the allegation Plaintiffs suffered actual physical damage to their own property would constitute a sufficient allegation to invoke the duty to defend under the policies. Under the second scenario involving actual physical damage to the Plaintiffs' property, the Mid-Continent policy which would be invoked and would be subject to the duty to defend is the insurance policy that was in place when the property suffered actual injury. *Don's Building Supply, Inc. v. OneBeacon Insurance Company*, 267 S.W.3d 20 (Tex. 2008).

5. Each Plaintiff in the underlying suit would therefore have a distinct injury which would potentially occur at a separate time since it is highly unlikely the water causing the damage reached each of the homes simultaneously and simultaneously caused injury to each of the individual homes. And, the *Budiman* Plaintiffs and Academy treated each Plaintiff as having a separate and distinct claim during the discovery and trial of the underlying lawsuit. Each claim

3

required distinct discovery prior to trial and distinct proof of the claim as well as the defenses pertaining to each claim at the trial. As such, there is a means to readily apportion the defense costs to the individual claims and to the separate policies triggered by the individual claims.

6. The need to apportion the defense costs is further supported by the fact Academy contractually agreed to bear a portion of the defense costs on a per claim or per occurrence basis in some of the Mid-Continent policies. As cited above, the *Gulf Chemical* case has specifically held that under those circumstances, "the insured must bear its share of those costs determined by the fraction of time of injurious exposure in which it lacked coverage." *Gulf Chemical v. Associated Metals and Minerals Corporation, supra.* at 372.

7. Texas courts have not recognized self insurance as collectible insurance for purposes of enforcing "other insurance" causes. *Travelers Lloyds Insurance Company v. Pacific Employers Insurance Company,* 2010 WL 1290722 (C.A. 5 (Tex.)). But, the Fifth Circuit recently held in *Trinity Universal Insurance Company v. Employers Mutual Casualty Company,* 592 F.3d 687 (5th Cir. 2010) the duty to defend is not subject to the "other insurance" clauses of the policy but is based upon the **common obligation** to provide a defense between the various parties that are contractually obligated to provide a defense. In that case, the Court allowed a subrogation claim against an insurance carrier that refused to participate in the defense. In the present case, Academy has contractually agreed to participate in its defense by agreeing to policies with deductibles that apply to not only the indemnity obligations but the duty to defend. Although Academy's self-insured obligation under the deductible may not be insurance for purposes of enforcement of the "other insurance" causes in the policy, under the reasoning in *Trinity Universal Insurance Company v. Employers Mutual Casualty Company,* Academy's decision to self-insure for a portion of the defense costs imposes a common obligation to

participate in the defense. Academy should not be able to escape this contractually agreed to duty to defend by attempting to assert that the making of one distinct claim during a particular policy period allows Academy to shift the entire burden of defending the lawsuit to one policy where there are clearly separate and distinct claims that occurred during other policy periods.

8. The use of extrinsic evidence in making coverage decisions has not been completely ruled out by the Fifth Circuit. In *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469 (5th Cir.), the Court renewed its previous holding in *Northfield Insurance Company v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004) and found there remains an exception to the eight corner's rule where "readily ascertainable facts, relevant to coverage, do not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."

9. In the present case, it has previously been suggested the date of purchase of the homes could be used to establish the potential dates for triggering the various policies. The Court appears to disagree the date of purchase would be instructive based upon its belief the property could conceivably have been damaged prior to the purchase date. As an alternative, the date of construction of the homes would potentially provide the earliest date the structures could have been damaged as alleged by the Plaintiffs since the structures could not have been damaged before they were built. Use of either the purchase date or the construction date would not, however, conflict with the liability issues in the underlying suits and would therefore conveniently fit within the exception to the eight corner's rule for use of extrinsic evidence under those limited circumstances.

10. There is a means to apportion the losses across the respective policies using either the date of purchase or the date of construction and the use of such extrinsic evidence is not precluded under the current authority in the Fifth Circuit.

Respectfully submitted,

**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

_____
Christopher W. Martin
Texas State Bar No. 13057620
Federal I.D. 13515
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
MID-CONTINENT CASUALTY COMPANY

OF COUNSEL:
Robert G. Dees
Texas State Bar No. 05716430
Federal I.D. 13899
Todd Lonergan
Texas State Bar No. 12513700
Federal I.D. 7769
808 Travis, Suite 1800
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the above and foregoing instrument has been served by certified mail, on this the 21 day of May, 2010 to:

Mr. Lee H. Shidlofsky
Visser Shidlofsky, LLP
7200 N. Mopac Expressway, Suite 430
Austin, Texas 78731

_____
Todd Lonergan