# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY | § § § § | |
| *Plaintiff*, | § § § | |
| v. | § § § | CAUSE NO. 4:08-cv-00021 |
| ACADEMY DEVELOPMENT, INC., CHELSEA HARBOUR, LTD., LEGEND CLASSIC HOMES, LTD., AND LEGEND HOME CORPORATION | § § § § § § | |
| *Defendants*. | § | |

## DEFENDANTS' SUPPLEMENTAL BRIEF

Lee H. Shidlofsky
Texas Bar No. 24002937
Southern District No. 22026
VISSER SHIDLOFSKY LLP
7200 N. Mopac Expressway
Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 (fax)
lee@vsfirm.com

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendants, Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation (collectively, "Academy"), file this Supplemental Brief in response to the Court's Status Conference held on May 10, 2010, and would respectfully show the following:

## I.
## NATURE AND STAGE OF PROCEEDING

1. The parties filed cross-motions for summary judgment on March 27, 2009 (Dkt. 35, 36, 37).

2. The cross-motions were accompanied by Joint Exhibits, which consisted of (i) the underlying pleadings (Joint Exhibits 1-12); (ii) the relevant insurance policies (Joint Exhibits 13-17); and (iii) stipulations (Joint Exhibit 18).

3. The parties filed responses on April 20, 2009. (Dkt. 39, 40).

4. The parties filed replies on April 24, 2009. (Dkt. 41, 42).

5. Supplemental Briefing was filed April 27, 2010 (Dkt. 46) with a response on February 3, 2010 (Dkt. #47) and a reply on February 5, 2010 (Dkt. 48).

6. On March 24, 2010, this Court entered its Memorandum Opinion and Order (Dkt. 49).

7. The defendant filed its Motion to Alter or Amend on April 5, 2010. (Dkt. 51).

8. On April 21, 2010, this Court entered its Order denying defendant's motion to alter judgment. (Dkt. 53).

9. On May 10, 2010, this Court held a Status Conference and agreed to re-examine the policies triggered by the first eight petitions. (Dkt. 55).

## II.
## SUMMARY OF ARGUMENT

Having acknowledged that it owed a duty to defend under the Original Petition through the Eighth Amended Petition, Mid-Continent seeks to pro-rate its defense obligation under its consecutively issued policies. The sole purpose of the allocation is to charge Academy with multiple deductibles in an effort to reduce its defense obligation. The problem with Mid-Continent's theory, however, is that it is unsupported under Texas law and contrary to the well-established principle that each triggered policy owes a *complete* defense. Since each of the Mid-Continent policies owes a complete defense, Academy is entitled to pick the policy to provide a defense. Two of the relevant policies *do not* have a deductible that applies to defense costs. Accordingly, based on the theory that each policy owes a complete defense, Academy owes no deductible in connection with the defense of the underlying lawsuit.[1]

## III.
## ARGUMENT & AUTHORITIES

**A. Mid-Continent Admits Duty to Defend**

Mid-Continent has acknowledged that it had a duty to defend Academy under the Original Petition through the Eighth Amended Petition. The issue before the Court, however, is whether Mid-Continent is permitted to pro-rate its defense obligation among consecutively triggered policies.

The Court already has ruled that it is inappropriate to consider extrinsic evidence beyond the eight corners of the underlying petitions and insurance policies in this case. *See Mid-Continent Cas. Co. v. Academy Development, Inc.*, 2010 WL 1169950, *6 (S.D. Tex. March 24,

---

[1] The issue of the "number of occurrences," which already was fully briefed, becomes relevant only if this Court first determines that Mid-Continent is entitled to pro-rate its defense obligation. If the Court agrees with Academy's view, the number of occurrences issue becomes irrelevant because the Court will not have to allocate between policies that have a "per claim" deductible and policies that have a "per occurrence" deductible.

2010) ("And, the court cannot look to extrinsic evidence to establish this date."). Even so, and as the prior briefing established, the pleadings are *not* date deprived and establish a potential for coverage within each of the five consecutively issued Mid-Continent policies.[2] All Academy must show is that a *potential* for coverage exists within the one of the Mid-Continent policy periods in order to trigger a duty to defend. *See Wilshire Ins. Co. v. RJT Construction, LLC.*, 581 F.3d 222, 225 (5th Cir. 2009); *see also Employers Mut. Cas. Co. v. Northern Ins. Co.*, 2010 WL 850243 (N.D. Tex. March 11, 2010) (noting that although the petitions are not a model of clarity, all that is required is a potential for damage during the policy period).[3]

The only difference between the first eight petitions and the subsequent petitions is that the later petitions removed any reference to physical injury to the homes themselves. Accordingly, Mid-Continent denied a duty to defend under the later petitions based on its contention that the later petitions failed to allege "property damage." This Court, however, correctly ruled that the later petitions still alleged "property damage" and, more specifically, that the later petitions sought damages because of "property damage" *Academy Development*, 2010 WL 1169950, at *5. Although Academy is mindful that this Court already has denied its Motion to Alter or Amend, it is difficult to reconcile Mid-Continent's admission that the first eight petitions trigger a duty to defend with this Court's holding that the subsequent petitions do not trigger a duty to defend when the only difference between the earlier petitions and the subsequent petitions is a reference to physical injury to the homes themselves. In other words, since this Court already concluded that the later petitions also allege "property damage," Mid-

---

[2] Academy incorporates its prior briefing and, for the sake of brevity, will not rehash all of the arguments contained therein.

[3] This Court has recognized that it may draw reasonable inferences from underlying pleadings. *See Gilbane Building Co. v. Empire Steel Erectors, L.P.*, 2010 WL 707378 (S.D. Tex. Feb. 23, 2010). The prior briefing establishes that the Underlying Pleadings allege a potential for coverage within the applicable Mid-Continent policy periods. By way of example only, the pleadings allege "that the condition of the Lakes has in the past, and continues, to cause damage . . . " **Joint Exhibit 10 at** ¶27. The same or similar allegation exists in all of the Underlying Pleadings.

Continent's admission seemingly results in the inescapable conclusion that the later petitions also trigger a duty to defend.[4]

### B. Texas Case Law Provides for a Complete Defense

Having established that a duty to defend exists, at least with respect to the first eight petitions, Mid-Continent is now required to provide a complete defense under each triggered policy. Texas law on this point is clear as Texas courts consistently have held that any triggered policy must provide a *complete* defense. At the same time, Texas courts consistently have rejected application of a pro-rata defense.

The proper defense cost allocation method is the "all sums" method developed in *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981) and first applied in Texas by the Supreme Court in *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994). The *Keene* Court ruled that each triggered insurer was jointly and severally liable for the indemnity and defense costs of the underlying lawsuits and that the policyholder could seek indemnification from any of the triggered policies it chose, with the stipulation that only one policy's limits could apply to each injury. *Keene*, 667 F.2d 1049–50. The *Keene* court also held that because the duty to defend was broader than the duty to indemnify, "only the insurer that Keene selects will defend Keene." *Id.* at 1050.

In *Garcia*, the Supreme Court of Texas held:

> If a single occurrence triggers more than one policy, covering different policy periods, then different limits may have applied at different times. In such a case, the *insured's indemnity limit should be whatever limit applied at the single point in time during the coverage periods of the triggered policies when the insured's*

---

[4] As noted in the Motion to Alter or Amend, Mid-Continent admitted that the petitions were not date-deprived and, more importantly, admitted that the alleged damage to the Lakes potentially occurred during one of its policy periods. *See* Doc. 51 at 6–7. Moreover, Mid-Continent once again urges this Court to resort to extrinsic evidence. Should this Court decide to do so, which would be contrary to the great weight of authority, Academy should be able to proffer its own extrinsic evidence to demonstrate that the Lakes were damaged within the applicable policy periods so as to trigger a defense obligation under the later petitions.

>  *limit was highest*. The insured is generally in the best position to identify the policy or policies that would maximize coverage. Once the applicable limit is identified, all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights.

*Id.* at 855 (emphasis added).

Relying on *Garcia*, the Austin Court of Appeals adopted this approach in a case involving the duty to indemnify, *CNA Lloyd's of Tex. v. St. Paul Ins. Co.*, 902 S.W.2d 657 (Tex. App.–Austin 1995, writ dism'd) and later extended the holding to the duty to defend. *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 605 (Tex. App.—Austin 1998, no pet.). The implication is that "[U]nder Texas law, an insurer's duty to defend its insured on a claim occurring partially within and partially outside of the policy period is not reduced pro rata by the insurer's 'time on the risk' or by any other formula." *Id*. at 607. Stated otherwise, the insurer has a duty to defend its insured, not a duty to provide a pro-rata defense. *Id.* at 606.

The Fifth Circuit, as well as federal district courts, also has recognized that Texas law follows the *Keene* approach. *See, e.g., N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 560 n.14 (5th Cir. 2008) (while discussing defense costs, the court noted that, under *Garcia*, the insured is entitled to select the policy that provides the most coverage); *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 525 F.3d 359, 363 (5th Cir. 2008) (citing *Sw. Aggregates* for the proposition that a complete defense is owed even when a claim falls partially within and partially outside of a coverage period); *Guar. Nat'l Ins. Co. v. Azrock*, 211 F.3d 239, 252 n.55 (5th Cir. 2000) (noting that Texas law does not require pro-rata allocation of defense costs) (citation omitted); *RLI Ins. Co. v. Philadelphia Indem. Ins. Co.*, 421 F. Supp. 2d 956, 964–65 (N.D. Tex. 2006) (making an *Erie* guess that the Supreme Court of Texas would not adopt a pro-rata allocation rule to determine policy limits where policy periods overlapped since the court had already adopted the *Keene* approach where policy periods did not overlap in *Garcia*).

Even so, Mid-Continent continues to rely heavily on *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.* 1 F.3d 365 (5th Cir. 1993), a case that predated *Sw. Aggregates* and was specifically rejected by that court as "irreconcilable with *Keene's* holding that each insurer is fully liable to the insured for defense costs." *Sw. Aggregates,* 982 S.W.2d at 607.  Recently, the Fifth Circuit cited *Southwest Aggregates* with approval. *See Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010).  Besides citing *Southwest Aggregates* and other cases that post-date *Gulf Chemical* for the proposition that an insurer owes a *complete* defense, the Fifth Circuit also noted that the "other insurance" clause applies only to the duty to indemnify—not to the duty to defend.  *See Trinity*, 592 F.3d at 695. Accordingly, no basis exists within the Mid-Continent policies to pro-rate the defense obligation among consecutively issued policies.

Here, because Texas courts have rejected the pro-rata approach to allocation, the established case law plainly indicates that Academy is not only entitled to a complete defense, but also may choose which of the triggered policies is required to provide a complete defense against the allegations in the Underlying Lawsuit.

### C. Academy Gets to Pick the Policy

Pursuant to *Garcia* and its progeny, Mid-Continent owes a complete defense to the Underlying Lawsuit under each of the policies that are triggered by the allegations in the pleadings. As discussed in the briefing already on file with this Court, the allegations pleaded in the Underlying Lawsuit potentially trigger coverage under *all* of the Mid-Continent policies. Accordingly, Academy can choose which policy is required to provide a complete defense against the allegations in the Underlying Lawsuit. Here, Academy designates Policy Number 04-GL-000037547 as responsible for providing a complete defense to the Underlying Lawsuit. That

policy has a $1,000 per claim deductible. *See* **Joint Exhibit 13 at 00005**. Importantly, and in contrast to some of the other policies that follow it, defense costs are *outside* of the deductible. *See id.* In other words, by its own terms, the Deductible Liability Endorsement in Policy No. 04-GL-000037547 applies only to the duty to indemnify.

## IV.
## CONCLUSION

Under the liberal standards for determining the duty to defend, Academy need only demonstrate a *potential* for coverage. The actual injury or "injury in fact" trigger does not change that result. Accordingly, Academy need only show a potential for damage within the Mid-Continent policy periods. The Underlying Pleadings allege that the leaking lakes potentially caused property damage during the relevant Mid-Continent policy periods and Mid-Continent has admitted that the first eight petitions trigger a duty to defend. Given the Underlying Pleadings, as well as Mid-Continent's admission, the only question for this Court is whether Mid-Continent is entitled to pro-rate its defense obligation among its consecutively issued policies. Texas courts have rejected a pro-rata allocation and instead have clearly and consistently ruled that each triggered policy must provide a *complete* defense. Accordingly, Mid-Continent essentially asks this Court to create new law. Academy, on the other hand, simply requests that the Court follow established precedent.

**WHEREFORE, PREMISES CONSIDERED,** Academy prays that, upon final hearing of this case, this Court rules that Mid-Continent is not entitled to pro-rate its admitted defense obligation among its consecutively triggered policies. Academy further prays that, based on Mid-Continent's admission and this Court's conclusion that the later policies also allege "property damage," this Court alter its interlocutory order such that Mid-Continent has a duty to defend under the Ninth Amended Petition and subsequent petitions as well.

Respectfully submitted,

By: /s/ Lee H. Shidlofsky
Texas Bar No. 24002937
Southern District No. 22026

VISSER SHIDLOFSKY LLP
7200 N. Mopac Expressway, Suite 430
Austin, Texas 78731
(512) 795-0600
(866) 232-8709 (fax)
lee@vsfirm.com

**COUNSEL FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to each counsel of record. To the extent any such counsel is not registered for such electronic delivery, the foregoing document will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Lee H. Shidlofsky
Lee H. Shidlofsky