**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION H-08-21 |
| ACADEMY DEVELOPMENT, INC. *et al.*, | § § § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

The court hereby VACATES its prior memorandum and order dated March 24, 2010 (Dkt. 49) and REISSUES this order in its place.

Pending before the court is defendants Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation's motion for partial summary judgment (Dkt. 35) and plaintiff Mid-Continent Casualty Company's cross motion for partial summary judgment (Dkt. 36). After review of the motions, the responses, the replies, and the applicable law, defendants' motion is GRANTED and plaintiff's motion is DENIED for the reasons stated below.

**BACKGROUND**

**The Underlying Lawsuit**

Defendants Academy Development, Inc., Chelsea Harbour, Ltd., Legend Classic Homes, Ltd., and Legend Home Corporation (collectively "Academy") were sued on or about May 23, 2005 by a group of plaintiffs (the "Budiman plaintiffs") that purchased homes from the defendants in the Chelsea Harbour subdivision of Fort Bend County, Texas. Dkt. 34, Ex. 12. The Chelsea Harbour subdivision was developed as a lake-front community and nearly all of the homes were constructed on lots connected to one of the lakes in the community. *Id.* The Budiman plaintiffs allege that

Academy knew at the time it sold the homes to the plaintiffs that the lake walls were failing and that water was leaking from the lakes onto the adjacent home sites. *Id.* The plaintiffs further allege that Academy did not disclose this information to them. *Id.* As a result, the Budiman plaintiffs brought claims of statutory fraud, negligence and negligent misrepresentation, and violations of the Deceptive Trade Practices Act against Academy. *Id.* The case went to trial and the jury returned a verdict for the defendants. Dkt. 37 at 6.

**The Policies**

Defendant Legend Classic Homes, Ltd. is a named insured under five consecutive Commercial General Liability ("CGL") policies issued by plaintiff Mid-Continent Casualty Company. Dkt. 35 at 2. The policies covered the period from August 1, 2000 to August 1, 2005. *Id.* The other defendants—Academy Development Inc., Chelsea Harbour, Ltd., and Legend Home Corporation—are listed as named insureds on each of the Mid-Continent policies via an endorsement. *Id.* The policies are as follows:

| Policy Effective Dates | Policy Number | Deductible |
|---|---|---|
| August 1, 2000—August 1, 2001 | 04-GL-000037547 | $1,000 per claim |
| August 1, 2001—August 1, 2002 | 04-GL-000060196 | $5,000 per claim |
| August 1, 2002—August 1, 2003 | 04-GL-000088658 | $5,000 per claim |
| August 1, 2003—August 1, 2004 | 04-GL-000123869 | $50,000 per occurrence |
| August 1, 2004—August 1, 2005 | 04-GL-000557144 | $100,000 per occurrence |

In addition to variations in the deductible amount per policy, some of the policies provide that the deductible also applies to defense costs. *See* Dkt. 34, Exs. 13–17. In all other respects, the policies are identical.

**The Declaratory Judgment Action**

Mid-Continent initially agreed to provide a defense to Academy in the Underlying Lawsuit under a reservation of rights. Dkt. 37 at 7. However, after the Budiman plaintiffs filed their ninth amended petition, Mid-Continent informed Academy that it would no longer pay for defense costs incurred after that filing. Dkt. 37 at 3. Mid-Continent based its decision on a determination that the Budiman plaintiffs no longer alleged "property damage" as that term is defined in the policies. Dkt. 35 at 7. On January 3, 2008, Mid-Continent filed this suit seeking a declaration that it owed no duty to defend or indemnify Academy upon the filing of the Budiman plaintiffs' ninth amended petition.[1] Academy filed a counterclaim seeking a ruling that Mid-Continent had a duty to defend, and in failing to provide that defense, breached its contract with Academy and violated the Prompt Payment of Claims Act of the Texas Insurance Code. Dkts. 1, 21. The parties agreed to file cross motions for summary judgment on two of the issues in this case: (1) whether Mid-Continent had a duty to defend after the filing of the Budiman plaintiffs' ninth amended petition and (2) with respect to those policies triggered, how the defense costs incurred by Academy should be allocated across the policies. Dkts. 35, 36.

ANALYSIS

**I. Summary Judgment**

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345

---

[1] Mid-Continent does not dispute that it had a duty to defend up through the eight amended petition. Also, as stated above, subsequent to the filing of the cross motions for partial summary judgment, the Underlying Lawsuit went to trial and the jury returned a verdict for the defendants. The duty to indemnify, therefore, is no longer an issue in the case.

(5th Cir. 2008). Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**II. Contract Interpretation**

"Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. Apr. 22, 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

"If the insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous. If the policy is not ambiguous, then the court construes the policy as a matter of law." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, — S.W.3d —, 2009 WL 4856782, at *35 (Tex. App.—Houston [1st Dist.] Dec. 17, 2009, no pet. h.) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)) (internal citation omitted). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties. "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 932; *see also Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App.—Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded"). And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931.

## III. Application

The court finds that based on the summary judgment record before it, Mid-Continent owed Academy a duty to defend after the filing of the Budiman plaintiffs' ninth amended petition.

Additionally, Academy is entitled to select which of the triggered policies under which to claim a defense.

**A.      Duty to Defend**

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Nautilus Ins. Co.*, 566 F.3d at 454. "The duty to defend does not depend upon the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend . . . .'" *Id.* (internal citations omitted).

"The insured bears the initial burden of showing that the claim . . . is potentially within the insurance policy's scope of coverage." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to *any* claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931; *see also Am. Auto, Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex. 2003).

Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

In the Underlying Lawsuit, the first eight petitions clearly allege that the Budiman plaintiffs suffered property damage to their homes. For instance, the seventh amended petition states that the water leaking from the lakes is "raising the surrounding ground water levels to the point that Lake water is escaping from multiple driveways, sidewalks and yards." Dkt. 34, Ex. 8, ¶ 34. Additionally, "the ground water level is too close to the foundations of the homes and is now and in the future going to affect the foundations and structural integrity of the Plaintiffs' homes. *Id.* Further, the homes are experiencing "drywall cracks, joint separation in trim and windows, tiles breaking, mortar cracks, and windows cracking without impact." *Id.* In light of these allegations, Mid-Continent recognizes they had a duty to defend Academy in the lawsuit up through the eight amended petition.

Beginning with the ninth amended petition, however, Mid-Continent contends that the Budiman plaintiffs no longer allege "property damage" as that term is defined in the policies because the plaintiffs omit the above allegations of physical damage to the homes and instead allege diminution of value and possible future damage to the homes. *See* Dkt. 34, Exs. 10–12. Mid-Continent contends that because diminution of value is an economic loss and not property damage as a matter of law, the duty to defend is not triggered. *See* Dkt. 36 at 15. Additionally, possible future damage does not trigger coverage; only actual damage during the policy period. *Id.* In response, Academy argues first that the ninth, tenth, and eleventh petitions do allege property damage to the plaintiffs' homes; and, second, the policy's definition of property damage requires only physical injury to some tangible property, not necessarily physical injury to the plaintiffs' homes. *See* Dkt. 40 at 7.

**B.     The Policies**

The policies state that Mid-Continent will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Mid-Continent] will have the right and duty to defend the insured against any 'suit' seeking those damages." Dkt. 34, Ex. 13.[2] Additionally, the insurance policy applies to bodily injury and property damage only if: (1) "the 'bodily injury' or 'property damage' is caused by an 'occurrence' and takes place in the 'coverage territory'"; and (2) "the 'bodily injury' or 'property damage' occurs during the policy period." *Id.* Property damage is defined as:

> a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.*

     **1.     "Property Damage"**

The ninth, tenth, and eleventh petitions allege diminution of value to the Budiman plaintiffs' homes as a result water leaking from the lake walls. *See* Dkt. 34, Exs. 10–12. The petitions further allege that seepage from the lake "may cause structural damage to Plaintiffs' homes and foundations". Dkt. 34, Ex. 10, ¶ 33. Additionally, the petitions state that "Defendants breached [their duties of care] and that such acts and/or omissions constitute the proximate cause of Plaintiffs' damages *including cost of repair and diminution of value to their homes*." Dkt. 34, Ex. 10, ¶ 47 (emphasis added). Academy argues that this last statement alleges physical damage to the plaintiffs' homes. *See* Dkt. 35 at 11–12. A closer reading of the petitions, however, makes clear that the "cost of repair" is

---

[2]The five policies are identical with respect to these provisions. For simplicity, only the August 1, 2000—August 1, 2001 policy is referenced in the citations.

referencing the cost of repairing the lakes, not the homes. This is evident from the preceding paragraph, which states in relevant part:

> Defendants owed Plaintiffs multiple duties of care regarding the disclosure of relevant facts, construction of the Lakes, and the protection of Plaintiffs' property interests, including but not limited to *the repair work performed on the Lakes*. Defendants owed Plaintiffs duties of care related to the disclosure of information relating to the condition of the premises that they were selling (including the Lakes), the potential for water intrusion onto the premises and into the improvements, the condition of the common areas and the long-term costs and effect of the Lakes on the community that they were marketing to the public. Defendants owed a duty of care to all Plaintiffs not to misrepresent facts that they knew or should have known to be false that would be reasonably relied upon by Plaintiffs.

Dkt. 34, Ex. 10, ¶ 46 (emphasis added).

Although the Budiman plaintiffs do not allege physical damage to their homes in the ninth, tenth, or eleventh petitions, this does not mean that they have not alleged "property damage" per the terms of the policies. The plain language of the policies state that coverage is provided for "damages because of property damage," or in other words, "damages because of physical injury to tangible property." There is no requirement in the policy that the tangible property *belong* to the Budiman plaintiffs, and the court cannot read into the policy terms that are not there.[3] *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) ("[W]e must give the policy's words their plain meaning, without inserting additional provisions into the contract."). The plain meaning of the phrase "because of" means "caused by." *See, e.g.*, *Nautilus Ins. Co. v. ABN-AMRO Mortgage Group, Inc.*, 2006 WL 3545034, at *6 (S.D. Tex. Dec. 8, 2006) ("The plain meaning of [the

---

[3] Mid-Continent cites several cases in support of their proposition that the Budiman plaintiffs' must have an ownership interest or existing use in the tangible property that suffers physical injury. *See, e.g.*, *Myers v. Cuevas*, 119 S.W.3d 830 (Tex. App.—San Antonio 2002, no pet.); *Mitchell v. LaFlamme*, 60 S.W.3d 123 (Tex. App.—Houston [14th] 2000, no pet.). The court, however, agrees with Academy that these cases are inapposite: whether someone has standing to sue or a meritorious claim for damages is different from the question of whether there is a duty to defend. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008) ("By purchasing the policy, [the insured] acquired a contractual right to a defense against both meritorious and nonmeritorious claims for property damage.").

10

because of] provision is that all damages caused by 'property damage' are covered by the policy . . . ."). The Budiman plaintiffs' later petitions state that the diminution in value of their homes is caused by the lakes leaking water onto their property. *See* Dkt. 34, Ex. 10, ¶ 47. This is an allegation of damages caused by physical damage to tangible property (the lake) and is sufficient to allege property damage per the terms of the policies.

### 2. During the Term of the Policies

In addition to showing that the Budiman plaintiffs' petitions allege property damage, Academy has the burden to show that the property damage occurred during the policy period. The policies cover only property damage that "occurs during the policy period." Dkt. 34, Ex. 10. As discussed in the preceding section, the property damage alleged in the Budiman plaintiffs' ninth, tenth, and eleventh petitions is physical damage *to the lakes*; not physical damage to the plaintiffs' homes. Thus, the proper inquiry for the court is to ask whether *the lakes* suffered actual damage during the term of one or more of the Mid-Continent policies. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008) ("[T]he insurer's duty to defend [the insured] depends on whether the homeowners' pleadings allege property damage that occurred during the policy term.").

Texas has adopted the actual-injury rule in determining whether an insurer has a duty to defend. *Id.* at 26. The actual injury rule deems property damage occurred for purposes of the policy "when actual physical damage to the property occurred." *Id.* at 24. In the present case, it is not clear from the face of the Budiman plaintiffs' petitions when the lakes were damaged. Nor do the petitions specify when the lakes were constructed. However, the petitions are not entirely date deprived: the petitions mention letters sent to the Budiman plaintiffs in February 2004 and September 2005, and also reference a lawsuit filed by defendants in 2002 regarding the faulty construction of the lakes. *See, e.g.*, Dkt. 34, Ex. 10, ¶¶ 20, 29. Moreover, the petitions allege that at the time the defendants

11

sold the homes to the Budiman plaintiffs, the defendants "knew that the walls of the Lakes were breaking apart and that water was leaking from the Lakes into the adjacent properties upon which Plaintiffs' homes were located." *Id.* at ¶ 20. Therefore, at some point prior to 2002, the lakes were constructed and began leaking; the continuous leaking causing damage to the Budiman plaintiffs. Construing the petitions liberally and resolving all doubts in favor of coverage, these allegations are sufficient to trigger the duty to defend under the Mid-Continent policies. *See Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) ("An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim." (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008)). Thus, Mid-Continent owed a duty to defend after the filing of the Budiman plaintiffs' ninth amended petition.

**C.     Apportionment of Defense Costs**

The parties disagree as to how Academy's defense costs should be allocated across the multiple triggered policies. Academy argues that it is entitled to pick which of the triggered policies provides a complete defense and Mid-Continent contends that the defense costs should be apportioned pro rata across the triggered policies. *See* Dkts. 35, 36, 56, 57.

In *Keene Corp. v. Insurance Co. of North America*, the D.C. Circuit held that once coverage under an insurance policy is triggered, each insurer is independently liable to fully indemnify the insured up to the policy's limit, subject to "other insurance" clauses. 667 F.2d 1034, 1047–49 (D.C. Cir. 1981). Further, it is the insured's right to select which of the triggered policies provides indemnification. *Id.* at 1050. The court reasoned that only this solution provides the insured "the security it purchased with each policy." *Id.* Additionally, the court noted that the duty to defend is broader than the duty to indemnify, and because each insurer is fully liable for indemnification, it follows that each insurer is also fully liable for defense costs. *Id.* at 1050.

In *American Physicians Insurance Exchange v. Garcia*, the Texas Supreme Court adopted the *Keene* reasoning and held that an insured may select from multiple consecutive insurance policies the one under which it is to be indemnified. 876 S.W.2d 842 (Tex. 1994). The Austin Court of Appeals extended *Keene* even further and held that an insurer's duty to indemnify is not reduced when there is concurrent coverage among multiple insurers. *CNA Lloyds of Tex. v. St. Paul Ins. Co.*, 902 S.W.2d 657, 661 (Tex. App.—Austin 1995, writ dism'd by agr.). The Austin Court of Appeals later extended this holding to the duty to defend. *Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregators, Inc.*, 982 S.W.2d 600 (Tex. App.—Austin 1998, no pet.).

Academy argues that Texas has adopted the *Keene* reasoning, and, therefore, it should be allowed to select which one of the triggered policies is fully liable for the defense costs. Although the policies are similar, they differ in the amount and type of deductible—some are occurrence based, others claims based; some have defense costs outside the deductible, others include defense costs. *See* Dkt. 34, Exs. 13–17. Mid-Continent acknowledges that the Texas courts have adopted *Keene*'s reasoning, but contends that the Fifth Circuit has not. Specifically, Mid-Continent points to *Gulf Chemical and Metallurgical Corp. v. Associated Metals and Minerals Corp.*, 1 F.3d 365 (5th Cir. 1993), and *Lafarge Corp. v. Hartford Casualty Insurance Co.*, 61 F.3d 389 (5th Cir. 1995), which hold that in ceratin circumstances the duty to defend can be prorated across triggered policies. Dkt. 56 at 1–2. Further, Mid-Continent contends that the need to apportion the defense costs is further supported by the fact that Academy contractually agreed to bear a portion of the defense costs through those policies that contain deductibles applying to defense costs. *Id.* at 4. This contention, Mid-Continent argues, is supported by the Fifth Circuit's reasoning in *Trinity Universal*, in which the court held that one insurer could seek contribution for defense costs from another non-paying insurer, not

13

because of the "other insurance" clause in the policy, but because of a "common obligation" to provide a defense that exists between the insurers. 592 F.3d at 695.

Mid-Continent's reliance on *Gulf Chemical* and *Lafarge* is misplaced because both cases pre-date *Southwest Aggregators*. More recent Fifth Circuit cases have acknowledged that Texas has adopted the *Keene* reasoning and have cited *Southwest Aggregators* approvingly. *See, e.g.*, *Trinity Universal*, 592 F.3d at 695; *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 363 (5th Cir. 2008). Furthermore, *Trinity Universal* is distinguishable from the present case because it held that an insurer could seek *contribution* for defense costs from another non-paying triggered insurer. This holding was based on the common obligation each triggered insurer owed the insured to provide a complete defense. To hold, however, that because Academy has a deductible in some of the policies that applies to defense costs it is obliged to provide its own complete defense would absolutely negate the insurer's duty to defend. The better rule, therefore, under the *Keene/Garcia* line of cases, is that Academy is entitled to select the policy from among the triggered policies that will provide a complete defense. Academy chooses policy GL-000037547 (effective August 1,2000–August 1, 2001) as providing a complete defense to the underlying lawsuit; that policy has a $1,000 per claim deductible and the deductible does not apply to defense costs. Dkt. 57 at 7–8.

## CONCLUSION

For the reasons above, Academy's motion for summary judgment is GRANTED and Mid-Continent's motion for summary judgment is DENIED. Mid-Continent owed Academy a duty to defend after the filing of the ninth amended petition. Additionally, Academy is entitled to select which of the triggered policies provides a complete defense.

It is so ORDERED.

Signed at Houston, Texas on August 24, 2010.

_____
Gray H. Miller
United States District Judge